DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
(kdunn@dirllp.com)
JESSICA E. PHILLIPS (*pro hac vice*)
(jphillips@dirllp.com)
KYLE N. SMITH (*pro hac vice*)
(ksmith@dirllp.com)
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 240-2900

COOLEY LLP
BOBBY GHAJAR (SBN 198719)
(bghajar@cooley.com)
COLETTE A. GHAZARIAN (SBN 322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

Attorneys for Defendant
*Meta Platforms, Inc.*

KATHLEEN R. HARTNETT (SBN 314267)
(khartnett@cooley.com)
JUDD D. LAUTER (SBN 290945)
(jlauter@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222

MARK R. WEINSTEIN (SBN 193043)
(mweinstein@cooley.com)
ELIZABETH L. STAMESHKIN (SBN 260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 3:25-cv-09579-VC<br><br>**DEFENDANT META PLATFORMS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:     March 19, 2026<br>Time:     10:00 a.m.<br>Dept:     Courtroom 4 – 17th Floor<br>Judge:    Vince Chhabria<br><br>Trial Date:           None<br>Date Action Filed:  November 6, 2025 |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

SUMMARY OF PLAINTIFF'S ALLEGATIONS .................................................................... 2

LEGAL STANDARD.................................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

    I.    Plaintiff Fails to State a Claim for Contributory Copyright Infringement....................... 4

        A.    Plaintiff Fails to Plausibly Allege Any Act of Direct Infringement by a Third Party ................................................................................................................... 4

        B.    Even Assuming Third-Party Infringement, Plaintiff Fails to Allege Meta's Knowledge of Specific Infringing Acts ............................................................... 6

        C.    Plaintiff Fails to Plausibly Allege Material Contribution or Inducement............. 8

    II.   Plaintiff Fails to Plausibly State a Claim for Violation of § 1201(b)(1) and (b)(3) of the DMCA (Claim III) ........................................................................................................ 9

        A.    Plaintiff Fails to State a Claim Under Section 1202(b)(1)................................. 10

        B.    Plaintiff Fails to State a Claim Under Section 1202(b)(3)................................. 13

    III.  Amendment Would Be Futile ....................................................................................... 14

CONCLUSION............................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ........................................... 6

*Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853 (N.D. Cal. 2023) .................................... 9, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 4, 11, 13, 14

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ................................................................................................................................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 3

*Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) ................................ 9

*Concord Music Group, Inc. v. Anthropic PBC*, 2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) ................................................................................................................................ 5, 6

*Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013) .................................................................... 3

*Daniels-Hall v. National Education Association*, 629 F.3d 992 (9th Cir. 2010) .................... 3, 10

*Epikhin v. Game Insight North America*, 2015 WL 2412357 (N.D. Cal. May 20, 2015) .... 6, 7, 9

*Johnson v. American Airlines, Inc.*, 834 F.2d 721 (9th Cir. 1987) ............................................. 14

*Kadrey v. Meta Platforms, Inc.*, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025) ............................ 10

*Kadrey v. Meta Platforms, Inc.*, 2025 WL 1786418 (N.D. Cal. June 27, 2025) .......................... 1

*Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026 (N.D. Cal. 2025) .................................... 1

*Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013) .............................. passim

*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ........................................................... 8

*Mills v. Netflix, Inc.*, 2020 WL 548558 (C.D. Cal. Feb. 3, 2020) .............................................. 12

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, 2017 WL 5664996 (C.D. Cal. Sept. 14, 2017) ........................................................................................................................................ 6

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022) ............................................ 12

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ................................................ 8

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856 (N.D. Cal. 2012) ........................................................................................................................................ 4

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .................................................................. 12

*Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719 (S.D.N.Y. 2021) ....................................... 13

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ..................................................................... 3

*Stevens v. CoreLogic*, 899 F.3d 666 (9th Cir. 2018) .............................................. 9, 11, 12, 13, 14

*VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723 (9th Cir. 2019) ................................................. 8, 9

*Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313 (11th Cir. 2022) .................. 12

*YZ Productions, Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756 (N.D. Cal. 2021) ..................... 6, 7

**STATUTES**

17 U.S.C. § 1202(b) ........................................................................................................................ 9

**PLEASE TAKE NOTICE THAT**, on March 19, 2026 at 10:00 a.m., Defendant Meta Platforms, Inc. ("Meta") will and hereby does move, under Fed. R. Civ. P. 12(b)(6), to dismiss Claims II and III of the Complaint (Dkt. 1) with prejudice.

## INTRODUCTION

In *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026 (N.D. Cal. 2025), the Court granted summary judgment to Meta on the basis of fair use "because Meta's use of the works" of the thirteen named plaintiff authors to train its Llama large language models ("LLMs") was "highly transformative" and plaintiffs "presented no meaningful evidence on market dilution at all," regarding fair use factor four. *See id.* at 1060 (regarding Copyright Act copying claim); *Kadrey v. Meta Platforms, Inc.*, 2025 WL 1786418, at *1 (N.D. Cal. June 27, 2025) (same, regarding Digital Millennium Copyright Act claim). Plaintiff Entrepreneur Media, LLC ("Entrepreneur") which claims ownership rights in various business-focused books and magazines, hopes it can establish the factor four market harm that the *Kadrey* plaintiffs failed to demonstrate. Whether Plaintiff is able to overcome Meta's fair use defense with regard to LLM training is an issue that will be resolved after discovery.

This motion addresses Plaintiff's meritless ancillary theories: contributory infringement and violation of the copyright management information provisions of the DMCA. These theories are legally unsustainable based upon the facts pled, and thus should be dismissed with prejudice at the outset of the case.

**Count II (Contributory Infringement):** Contributory infringement is a theory of secondary liability, and the Complaint fails to plead the elements necessary to invoke it. According to Plaintiff, in the course of allegedly torrenting book datasets containing Plaintiff's works, Meta aided the infringement of those works by third parties who downloaded the works. But the Complaint does not identify any completed act of third-party direct infringement, which is a prerequisite to secondary liability. It also fails to plausibly allege that Meta knew of such an act or materially contributed to or induced infringement by others. Because Plaintiff's contributory infringement claim is untethered from the facts required to support liability, that claim should be dismissed under Rule 12(b)(6).

**Count III (Digital Millennium Copyright Act ("DMCA")):** Plaintiff advances two theories of purported DMCA violation, neither of which is supported by plausible, non-conclusory factual allegations. *First*, Plaintiff contends that Meta removed copyright management information ("CMI") with knowledge that doing so would "conceal" Meta's alleged infringement of Plaintiff's works in violation of Section 1202(b)(1). Compl. ¶¶ 33, 73–74. But Plaintiff provides no basis for the Court to infer that removing CMI from training data causes concealment, let alone that Meta knew or had reason to know that CMI removal could have that effect. *Second*, Plaintiff contends that Meta "distributed" CMI-less versions of Plaintiff's works in violation of Section 1202(b)(3), *id.* ¶ 75, but this makes no sense. Meta could not have "seeded" datasets without CMI at the same time it was allegedly acquiring those same datasets via torrent with CMI intact. And Plaintiff's conclusory allegations that Meta "distributed" CMI-less datasets internally and to its vendors are devoid of factual support, and lack any plausible connection to Plaintiff's theory that CMI removal made it "more difficult to detect" Meta's alleged infringement, *id.* ¶ 76. Both DMCA theories fail.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff Entrepreneur is a publisher of books and magazines focused on business and entrepreneurship. *Id.* ¶¶ 2, 13. Plaintiff alleges that Meta infringed its copyrights during the development and training of a series of Meta LLMs known as Llama. *Id.* ¶¶ 1–9.

Plaintiff alleges that Meta trained Llama using large datasets that included books and articles obtained from online repositories, including Library Genesis ("LibGen"). *Id.* ¶¶ 6, 17, 27–30. Plaintiff alleges that some of its copyrighted books and magazine articles appear in those repositories and therefore were included in Meta's training data. *Id.* ¶¶ 37–43. Plaintiff asserts a claim for direct copyright infringement (Count I) based on Meta's alleged downloading, storage, and processing of copyrighted works for training purposes, as well as its alleged distribution of the copyrighted works "during the download process." *Id.* ¶¶ 53–58.

Plaintiff also asserts a claim for contributory copyright infringement (Count II) based on Meta's alleged use of torrenting to acquire training data. *Id.* ¶¶ 61–67. The Complaint alleges that torrenting systems involve simultaneous uploading and downloading, and that by using such systems Meta

"necessarily" uploaded portions of copyrighted works to other users. *Id.* ¶¶ 31–32, 62–64. The Complaint does not identify any third party who downloaded an Entrepreneur work from Meta, any specific Entrepreneur work that Meta is alleged to have uploaded, or any completed act of third-party infringement attributable to Meta's conduct.

Finally, Plaintiff asserts a claim under the DMCA (Count III), alleging that Meta removed CMI during preprocessing of training data in order to conceal the purportedly infringing contents of its training data from the public. *Id.* ¶¶ 69–78. According to Plaintiff, Meta removed "front-matter copyright notices" and metadata when prepping texts for ingestion during AI training and such removal made it more difficult for the public to trace the sources of Meta's training data. *Id.* ¶¶ 71–76. The Complaint does not explain how or why CMI removal purportedly causes concealment. The Complaint further alleges that Meta violated the DMCA by "distribut[ing]" copies of the allegedly infringed works "without CMI" by "seeding CMI-less files during BitTorrent acquisition and by sharing CMI-less training datasets and derivatives within Meta and with third-party service providers." *Id.* ¶ 75. The Complaint does not allege any facts identifying whom Meta allegedly shared CMI-less datasets with, or how sharing such datasets internally or with its vendors would facilitate or conceal infringement.

## LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The court need not "accept as true allegations that contradict . . . matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) ("[I]t is within our wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development."); *Twombly*, 550 U.S. at 555 (courts need not "accept as true a legal conclusion couched as a factual allegation"). "Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## ARGUMENT

### I. Plaintiff Fails to State a Claim for Contributory Copyright Infringement

To state a claim for contributory copyright infringement, a plaintiff must plausibly allege: (1) direct infringement by a third party; (2) the defendant's knowledge of that infringement; and (3) that the defendant "induced, caused, or materially contributed to the infringing conduct." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). Failure to adequately plead any one of these elements requires dismissal. *See id.*; *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 867 (N.D. Cal. 2012). Here, Plaintiff's contributory infringement claim fails for three independent reasons. First, the Complaint does not plausibly allege any act of direct infringement by a third party. Second, even if the Complaint did adequately allege direct infringement, it separately fails to allege that Meta had knowledge of the infringement. Finally, the Complaint contains no allegations that Meta materially contributed to or induced such infringing activity. Each deficiency is independently fatal to Plaintiff's claim for contributory infringement.

### A. Plaintiff Fails to Plausibly Allege Any Act of Direct Infringement by a Third Party

"[T]he existence of direct infringement is a necessary element of a claim for contributory infringement." *Petroliam Nasional*, 897 F. Supp. 2d at 867. The Complaint fails to satisfy that foundational requirement.

Plaintiff alleges that Meta's conduct "ma[de] the Infringed Works available through peer-to-peer file-sharing networks," thereby "materially contribut[ing] to and induc[ing] further infringement." Compl. ¶ 63. It further alleges that Meta "necessarily seed[ed] substantial portions" of copyrighted works by using default torrenting configurations. *Id.* ¶ 64. These allegations describe, at a high level, how certain file-sharing systems can operate. The Complaint, however, fails to identify a single third party who downloaded any Entrepreneur work from Meta, any specific Entrepreneur work that Meta

allegedly uploaded, any completed infringing download traceable to Meta's alleged seeding, any instance in which Meta's conduct caused or enabled a third party to infringe, or whether and how a third party supposedly infringed Entrepreneur's copyrights. Moreover, it is irrefutable that Plaintiff's list of 71 allegedly infringed works is a miniscule portion of the "hundreds of terabytes" of data that Meta allegedly downloaded. Compl. ¶ 1 & Ex. A at 2–8. The bare allegation that downloading by torrent "necessarily" involves some uploading does not amount to a plausible allegation that Meta uploaded any part of any of Plaintiff's alleged "Infringed Works." Nor does it amount to a plausible allegation that any specific third party downloaded a substantial portion of any of those works from Meta and used those works in a way that would constitute copyright infringement.

Courts in this District have rejected similar attempts to plead secondary liability based on abstract descriptions of what a system might enable, rather than allegations of concrete infringing acts. *See Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 1487988, at *3–4 (N.D. Cal. Mar. 26, 2025) (dismissing contributory infringement claim where plaintiff failed to plausibly allege third-party infringement). In *Concord Music,* a group of music publishing companies sued Anthropic PBC for alleged direct and secondary copyright infringement and violations of the DMCA in connection with Anthropic's use of song lyrics to train its large language model, "Claude." *Id.* at *1. The publishers pursued a claim for contributory infringement based on allegations that Anthropic's website permitted individual users to "request and obtain through Claude verbatim or near-verbatim copies of lyrics," and that, when prompted, Claude's chatbot would "provide responses that contain all or significant portions of those lyrics." *Id.* at *3 (internal quotation marks and citations omitted). The publishers further alleged that "because Claude is available to users in a variety of ways, individual users could and would direct Claude to deliver copies of Publishers' lyrics" and that Anthropic's customers might "seek copyrighted lyrics in the process of prompting Claude to generate creative output." *Id.* (internal quotation marks and citations omitted). Because the publishers' allegations merely "assert[ed] what unidentified[1] users 'can'

---

[1] Although the publishers included "numerous examples of output containing copyrighted lyrics generated by Claude in response to prompts" in their complaint, the court noted that none of their allegations attributed an author to the prompts and declined to consider the prompts as evidence of direct third-party infringement. *Id.* at *4.

do when prompting Claude," provided "no facts regarding direct third-party infringement," and were otherwise conclusory, the court held that they failed to adequately allege a predicate act of direct third-party infringement and granted Anthropic's motion to dismiss the contributory infringement count. *Id.* at *4–5.

To be sure, a plaintiff need not plead "each and every instance of infringement at the pleadings stage." *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020) (quoting *MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017)). But it must plead specific acts of infringement. Here, Plaintiff pleads none. Its theory rests solely on the assumption that infringement must have occurred because torrenting systems can involve some uploading. But allegations concerning what unidentified third parties might or can do are not a substitute for pleading actual infringement by those third parties. *Concord Music*, 2025 WL 1487988, at *4.

Because the Complaint does not plausibly allege any predicate act of third-party infringement, Count II fails at the threshold and should be dismissed.

### B. Even Assuming Third-Party Infringement, Plaintiff Fails to Allege Meta's Knowledge of Specific Infringing Acts

Even if the Court were to assume that unidentified third parties supposedly infringed Plaintiff's works, the Complaint still fails to allege that Meta knew of any such infringement. The Ninth Circuit requires more than "generalized knowledge . . . of the possibility of infringement." *Luvdarts*, 710 F.3d at 1072. "[A]ctual knowledge of specific acts of infringement" is required. *Id.* (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001)). This means, at a minimum, actual knowledge of "which . . . titles were infringed, who infringed them, [and] when the infringement occurred." *Id.* at 1073.

Here, the Complaint merely restates the element of the claim and alleges only that Meta "knew or had reason to know" that its conduct constituted infringement. Compl. ¶ 66. Courts have repeatedly held that such conclusory assertions are insufficient. *See Luvdarts*, 710 F.3d at 1072; *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 763–64 (N.D. Cal. 2021); *Epikhin v. Game Insight N. Am.*, 2015

WL 2412357, at *4 (N.D. Cal. May 20, 2015). In *Epikhin*, for example, the plaintiffs alleged that the defendants were liable for contributory copyright infringement in connection with the distribution of a mobile application plaintiffs claimed to own. 2015 WL 2412357, at *4. The court granted the defendants' motion to dismiss the contributory copyright infringement claim in part because the plaintiffs failed to "allege any facts in support of the threadbare assertion" in their complaint that the defendants "'had knowledge of the infringing acts relating to Plaintiffs' copyrighted works.'" *Id.* (quoting the complaint). In doing so, the court noted that the plaintiffs had not "even identif[ied] the alleged third party infringers." *Id.*

Similarly, in *YZ Productions*, the court granted the defendant's motion to dismiss a contributory copyright infringement claim based on the defendant's operation of an e-commerce system that allegedly facilitated the sale of infringing goods by third parties. 545 F. Supp. 3d at 761. The court first clarified that a plaintiff who alleges a defendant had "reason to know" of third-party infringement must allege that the defendant had "'reason to know' of *specific* acts of infringement." *Id.* at 763 (emphasis in original). The court then concluded that the allegation that "Defendant had 'specific knowledge of the Infringing Goods advertised or sold' through Defendant's system" was not supported by any factual allegations and was, therefore, conclusory and insufficient to state a claim. *Id.* at 764 (quoting the complaint).[2]

The Complaint here does not allege that Meta knew that any specific Entrepreneur work was included in any of the datasets that Meta torrented (let alone was uploaded), that any particular third party was infringing Entrepreneur's rights (much less how), or that any infringement occurred as a result of Meta's conduct. Plaintiff's allegation that Meta "had reason to know" that its conduct infringed Plaintiff's rights does not satisfy its obligation to identify specific acts of third-party infringement. *See id.* at 763.

---

[2] The court also rejected the argument that the plaintiff adequately pleaded knowledge by alleging it had "notified Defendant of its infringement," because the plaintiff failed to allege that it notified the defendant of "specific acts of infringement, namely specific infringing products." *Id.*

Nor does the Complaint allege willful blindness. It does not claim that Meta "subjectively believed specific infringement was likely occurring" and "took deliberate steps to avoid learning about [it]." *Luvdarts*, 710 F.3d at 1073. Allegations of recklessness or acting with "indifferen[ce] to the risk of copyright infringement" are insufficient. *Id.*

Absent plausible allegations of knowledge of "specific acts of infringement," *id.* at 1072, contributory liability cannot attach.

### C. Plaintiff Fails to Plausibly Allege Material Contribution or Inducement

Finally, the Complaint fails to plausibly allege that Meta materially contributed to or induced any third-party infringement.

*No Material Contribution.* A computer system operator materially contributes to infringement only where "it has *actual* knowledge that *specific* infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017) (emphasis in original) (citation omitted).

The Complaint does not allege that Meta had actual knowledge of specific infringing acts by third parties, nor does it allege that Meta could have taken simple measures to prevent such acts. Instead, it relies on the generalized assertion that Meta's use of torrenting protocols "necessarily" involved seeding. Compl. ¶ 64 ("To achieve the rapid, large-scale acquisition of millions of works, Meta used the default BitTorrent configuration to maximize bandwidth, necessarily seeding substantial portions of the Infringed Works to third parties without authorization."). That allegation, even if accepted, does not establish material contribution absent knowledge of specific infringement and continued facilitation of such infringement.

*No Inducement.* Inducement requires "active steps . . . taken to encourage direct infringement," such as advertising infringing uses or instructing users how to infringe. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745–46 (9th Cir. 2019) (quoting *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)).

Again, the Complaint contains no allegations that Meta encouraged, promoted, or instructed anyone to infringe Plaintiff's works. *See Epikhin*, 2015 WL 2412357, at *4 (dismissing contributory infringement claim where plaintiffs failed to "allege any facts to suggest that [defendants] 'induced, caused, and materially contributed to the infringing acts of others'" (quoting the complaint)). The mere use of a file sharing protocol that entails the possibility of upload does not constitute inducement. *See VHT*, 918 F.3d at 746 (inducement liability requires "an object of promoting" copyright infringement, which "must be plain and must be affirmatively communicated through words or actions" (quoting *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032, 1034 (9th Cir. 2013))). Inducement also presupposes the existence of infringing conduct to induce, which Plaintiff has not plausibly alleged here.

\* \* \*

Because Plaintiff fails to plausibly allege third-party direct infringement, Meta's knowledge of specific infringing acts by third parties, or material contribution or inducement, Count II should be dismissed.

## II. Plaintiff Fails to Plausibly State a Claim for Violation of § 1201(b)(1) and (b)(3) of the DMCA (Claim III)

To state a claim under Section 1202(b)(1) and (b)(3), Plaintiff was required to plausibly plead facts showing that Meta (i) intentionally removed CMI from Plaintiff's works and/or distributed those works knowing that CMI had been removed, and that (ii) Meta knew or had "reasonable grounds to know" that such removal or distribution would "induce, enable, facilitate, or conceal [copyright] infringement." 17 U.S.C. § 1202(b)(1). Further, Plaintiff was also obligated to allege facts "from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal" of CMI. *Stevens v. CoreLogic*, 899 F.3d 666, 675 (9th Cir. 2018).

As detailed below, Plaintiff pleads neither a plausible causal link between CMI removal and concealment nor a coherent, non-conclusory theory of distribution—let alone the culpable scienter that both provisions require. *See Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 871 (N.D. Cal. 2023) (holding that a plaintiff "must plead facts plausibly showing that the alleged infringer had th[e] required mental state" "[a]t the pleading stage").

### A. Plaintiff Fails to State a Claim Under Section 1202(b)(1)

In its "removal-focused" theory of DMCA violation, Plaintiff refers to allegations and "public filings" from *Kadrey*, Compl. ¶ 72. to allege that Meta stripped CMI from Llama training data in order to conceal its own infringement, *id.* ¶ 73.[3] This theory fails because it is premised on the unwarranted, unexplained, and implausible assumption that had Meta not removed certain CMI from training data, Plaintiff would have been able to identify training data contents; and also because Plaintiff's allegations concerning scienter are contradicted by "public filings" from *Kadrey*, *id.* ¶ 72, which are incorporated by reference.

Although this Court allowed the same theory to survive a motion to dismiss in *Kadrey v. Meta Platforms, Inc.*, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025), it expressed "skeptic[ism]" about the merits of the claim, *Kadrey*, Dkt. 387 (Jan. 9, 2025 Tr. at 4). Ultimately, the Court's skepticism was warranted: despite having years to develop a coherent theory of CMI removal-as-concealment, the *Kadrey* plaintiffs were unable to do so. *See Kadrey*, Dkt. 601. Here, Plaintiff's piggy-backing on implausible theories from *Kadrey*, and the unnecessary fact and expert discovery it would invite, should not be indulged, particularly given that Plaintiff has made no allegations in its Complaint explaining how CMI removal allegedly caused concealment of Meta's alleged infringement.

***First***, Plaintiff's contention that removal of "front-matter copyright notices," Compl. ¶ 70, reduces models' "'memorization' of identifying information that could expose [Meta's] infringement," *id.* ¶ 74, thereby concealing the infringement, begs the question. Translating these allegations into an explanation of how CMI removal causes concealment demands multiple unwarranted and unreasonable inferences. *Daniels-Hall*, 629 F.3d at 998. In particular, Plaintiff's theory assumes that removal of certain CMI is the difference between a model memorizing identifying information about training data contents, or not; and, but-for Meta's removal of copyright notices, Plaintiff would *somehow* be able to determine from Llama's outputs that Plaintiff's works were used as training data. But Plaintiff offers

---

[3] Plaintiff does not appear to allege that its removal-as-concealment theory relates to its allegation that Meta distributed Plaintiff's works. Nor could it. As this Court previously observed, there is no logical basis to suggest that the presence or absence of CMI in a model's training data would "in any way reveal" whether that material was "redistributed to other computer systems via a torrenting network." *Kadrey*, Dkt. 601 at 1–2 n.1.

1  no allegations about how Llama outputs would be meaningfully different had CMI been left intact. And
2  Plaintiff cites no factual support for these assumptions, which are at odds with common sense as well as
3  the documents incorporated in the Complaint. *See Iqbal*, 556 U.S. at 679 ("Determining whether a
4  complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing
5  court to draw on its judicial experience and common sense."). Anyone who has read a book or a
6  magazine knows that titles, author names, and other indicia of ownership typically appear throughout
7  the work and Plaintiff's works are no exception. For example, in "Elephants Before Unicorns:
8  Emotionally Intelligent HR Strategies to Save Your Company" (Compl., Ex. A at 7), the author's name
9  appears no fewer than eight times, none of which are in a copyright notice, while "Entrepreneur Press"
10 appears at least three times outside of the "front-matter copyright notice," and "Entrepreneur Media,
11 Inc." appears four times outside of the "front-matter copyright notice." Decl. of J. Lauter at ¶¶ 2–7. The
12 book title, meanwhile, appears on all 208 pages, sometimes more than once. *Id*. ¶¶ 2, 8. Accordingly,
13 for Plaintiff's theory to be plausible, "front-matter copyright notices" must somehow possess special
14 characteristics lending themselves to disclosure in Llama outputs that these other references (to say
15 nothing of other book and magazine contents) do not. The Complaint makes no such allegations, nor
16 could it.

17    The Ninth Circuit's decision in *Stevens* is instructive. 899 F.3d at 675. There, the Ninth Circuit
18 affirmed summary judgment in the defendant's favor due to a similar failure by the plaintiff to plausibly
19 connect CMI removal to facilitation of infringement. *Id*. The court emphasized that Section 1202's
20 prohibitions are "limit[ed] . . . to instances in which the defendant knows or has a reasonable basis to
21 know that the removal or alteration of CMI or the distribution of works with CMI removed *will* aid
22 infringement." *Id.* (emphasis in original). But the plaintiffs "ha[d] not offered *any* specific evidence
23 that removal of CMI metadata from their [works] will impair their policing of infringement," and,
24 further, failed to explain "how they would" have used the CMI to prevent or detect copyright
25 infringement. *Id*. (emphasis in original).

26    Although *Stevens* affirmed a ruling on summary judgment, pleading a claim under 1202(b)
27 requires "specific allegations as to how identifiable infringements will be affected by Defendants'
28

1  alleged removing or altering of CMI." *Mills v. Netflix, Inc.*, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3,
2  2020) (internal quotation marks and citations omitted); *see also Victor Elias Photography, LLC v. Ice
3  Portal, Inc.*, 43 F.4th 1313, 1325 (11th Cir. 2022) ("[T]he statute's plain language requires some
4  identifiable connection between the defendant's actions and the infringement or the likelihood of
5  infringement."). Plaintiff fails to meet this burden.

6        ***Second***, Plaintiff fails to plausibly plead "non-conclusory" facts supporting scienter. *Mills*, 2020
7  WL 548558, at *3 (quoting *Stevens* and dismissing DMCA claim because scienter was inadequately
8  pleaded); *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287–88 (C.D. Cal. 2022) (same). The basis
9  of Plaintiff's CMI-removal theory is the "public filings" from the *Kadrey* litigation. Compl. ¶ 72. Those
10 filings detail how CMI removal was undertaken as a part of a broader effort to cull immaterial redundant
11 text, such as boilerplate, from training corpuses. *See* Meta's Reply In Supp. of its Mot. for Partial Summ.
12 J., *Kadrey v. Meta Platforms, Inc.*, No. 3:23-CV-03417-VC (N.D. Cal. Apr. 17, 2025), Dkt. 543 at 28.
13 These same "public filings" include a declaration from the "Meta engineer" referenced in the Complaint,
14 Compl. ¶ 72, in which he attested that "the [data processing] team had no intent to hide or obscure any
15 information" about Meta's training data, Decl. of Nikolay Bashlykov In Support of Meta's Mot. for
16 Partial Summ. J., *Kadrey v. Meta Platforms, Inc.*, No. 3:23-CV-03417-VC (N.D. Cal. Mar. 24, 2025),
17 Dkt. 494 ¶ 10, and there was no basis to infer that CMI removal "could have the effect of concealing
18 information about Meta's training data," *id*. ¶ 11. These materials, which Plaintiff incorporates by
19 reference in the Complaint, flatly contradict Plaintiff's removal-focused theory. *See United States v.*
20 *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (explaining that a document is "incorporated by reference
21 into a complaint if . . . the document forms the basis of the plaintiff's claim").

22       But even ignoring Plaintiff's self-serving, selective invocation of the *Kadrey* record, Plaintiff's
23 failure to plausibly articulate a causal relationship between CMI removal and concealment forecloses
24 any inference that Meta knew or had reason to know that such a relationship exists. *See Stevens*, 899
25 F.3d at 675. In the absence of a plausible theory of concealment via removal of CMI, culpable scienter
26 cannot be inferred.

### B. Plaintiff Fails to State a Claim Under Section 1202(b)(3)

Plaintiff also fails to plausibly plead that Meta, in violation of Section 1202(b)(3), distributed and made available copies of the Infringed Works without CMI by either (1) "seeding CMI-less files during BitTorrent acquisition," or (2) "sharing CMI-less training datasets and derivatives within Meta and with third-party service providers." Compl. ¶ 75. This "distribution-focused" DMCA claim—which was not asserted in *Kadrey* and is relegated to a single paragraph of the Complaint—is a hodgepodge of conclusory and contradictory allegations (based entirely on "information and belief") that warrants dismissal. *See Iqbal*, 556 U.S. at 681 (explaining that conclusory allegations are "not entitled to be assumed true" on a motion to dismiss).

*First*, the assertion that Meta "seed[ed] CMI-less files during BitTorrent acquisition" of Plaintiff's works is nonsensical. Compl. ¶ 75. Plaintiff alleges both that the copies of Plaintiff's works that Meta allegedly downloaded "carried" CMI and that CMI was removed by Meta sometime later as a part of Meta's "preprocessing" of training data. *See id.* ¶¶ 70, 71–72, 32–33. Thus, as a matter of basic logic, it is not possible for Meta to have "seed[ed] CMI-less files" when it was downloading the CMI-intact versions of those files. Based on the allegations in the Complaint, BitTorrent operates by enabling computer systems to upload and download chunks of the same file. *Id.* ¶ 31. To the extent any alleged seeding or distribution of a file took place via BitTorrent, therefore, the data seeded or distributed could only have been data from the *original* file as it existed before any post-download processing by Meta—in other words, the file with all original CMI intact. The Complaint does not contain any plausible allegations suggesting that Meta, after completing the acquisition/download of files containing Plaintiff's works, and after completing the alleged removal of CMI from those works, went back onto the BitTorrent network to distribute the CMI-removed versions of those works via seeding.

*Second*, Plaintiff does not—and cannot—plausibly allege that Meta internally shared CMI-less datasets and derivatives in a manner that facilitated or concealed infringement, let alone that Meta did so with culpable scienter. *See Andersen*, 700 F. Supp. 3d at 871. The "point of CMI" is to provide information to "the public," *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 737 (S.D.N.Y. 2021), in order to facilitate "policing of infringement," *Stevens*, 899 F.3d at 675. Meta's alleged private,

internal circulation of AI training datasets after certain CMI had been removed bears no plausible relationship to Plaintiff's use of CMI to prevent "future" infringement, and the Complaint does not articulate any. *Id*.

***Third***, the claim that Meta allegedly shared CMI-less datasets with "third-party service providers," Compl. ¶ 75, is similarly lacking any corresponding allegations that Meta acted with knowledge or reason to know that such sharing would facilitate or conceal infringement. This claim is also deficient for the additional reason that it is devoid of *any* factual support. There are no allegations identifying *who* Meta is purported to have shared datasets with, *when* the sharing occurred, and *why*, or *how* the material was shared. Without more, Plaintiff's threadbare allegations fall well short of what Rule 8 requires. *Iqbal*, 556 U.S. at 678–79.

### III.   Amendment Would Be Futile

The deficiencies of Plaintiff's contributory infringement and DMCA claims cannot be cured with additional details but are instead rooted in the absence of any plausible factual basis to satisfy the elements of these ancillary claims. Plaintiff relies on conclusory allegations and abstract descriptions of how peer-to-peer file sharing works in an attempt to plead contributory infringement because there are no plausible or concrete allegations of any third party infringing any of Plaintiff's 71 purportedly infringed works, let alone of Meta's knowledge of such an act or conduct by Meta that supposedly materially contributed to or induced the act. *See Luvdarts*, 710 F.3d at 1073 (district court properly dismissed complaint, including contributory infringement claim, with prejudice where plaintiff failed to adequately plead specific knowledge of third-party infringement). As to the DMCA claim, Plaintiff's theories suffer from baseless, inferential leaps and logical fallacies that, in some instances, are contradicted by the public record in the *Kadrey* litigation upon which the claim is premised. Those defects cannot be remedied through amendment. Accordingly, because amendment would be futile, these claims should be dismissed with prejudice. *Cf. Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987) (district court did not abuse its discretion in denying leave to amend where amendment would be futile due to reliance on an inference that was insufficient to state a claim); *id.* ("[F]utility includes the inevitability of a claim's defeat on summary judgment.").

# CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court dismiss Counts II and III of the Complaint without leave to amend.

| | |
|---|---|
| Dated: January 12, 2026 | DUNN ISAACSON RHEE LLP |
| | By: */s/ Karen L. Dunn*_____ |
| | Karen L. Dunn |
| | Jessica E. Phillips |
| | Kyle N. Smith |
| | |
| | COOLEY LLP |
| | Kathleen R. Hartnett |
| | Bobby A. Ghajar |
| | Mark R. Weinstein |
| | Elizabeth Lee Stameshkin |
| | Judd D. Lauter |
| | Colette Ani Ghazarian |
| | |
| | *Attorneys for Defendant Meta Platforms, Inc.* |