HUESTON HENNIGAN LLP
Moez M. Kaba (#257456)
mkaba@hueston.com
Michael M. Purpura (#338216)
mpurpura@hueston.com
Lee Linderman (#280743)
llinderman@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340

Attorneys for Plaintiff
Entrepreneur Media, LLC

NEWMEYER & DILLION LLP
Michael B. McClellan (#241570)
Michael.McClellan@ndlf.com
Benjamin P. Pugh (#202025)
benjamin.pugh@ndlf.com
Jason L. Morris (#295271)
Jason.Morris@ndlf.com
Harlye S. Carlton (#261641)
Harlye.Carlton@ndlf.com
895 Dove Street, Second Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Entrepreneur Media, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>Meta Platforms, Inc.,<br><br>                    Defendant. | Case No.: 3:25-cv-09579-VC<br><br>**PLAINTIFF ENTREPRENEUR MEDIA, LLC'S OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS COMPLAINT**<br><br>Date: March 19, 2026<br>Time: 10:00 a.m. |

# **TABLE OF CONTENTS,**

**Page**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ........................................................................................................................ 1

LEGAL STANDARD ................................................................................................................. 2

ARGUMENT .............................................................................................................................. 2

    A.   Entrepreneur States a Claim for Contributory Copyright Infringement ............................ 2

    B.   Entrepreneur States a Claim Under the DMCA ................................................................ 4

    C.   Leave to Amend ................................................................................................................. 5

CONCLUSION ........................................................................................................................... 6

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 2, 3

*Concord Music Group, Inc. v. Anthropic PBC*,
  2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) ..................................................... 2, 3

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ...................................................................................... 4

*Epikhin v. Game Insight N. Am.*,
  2015 WL 2412357 (N.D. Cal. May 20, 2015) ........................................................... 4

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ........................................................................................................ 2

*Kadrey v. Meta Platforms, Inc.*,
  788 F. Supp. 3d 1026 (N.D. Cal. 2025) ..................................................................... 5

*Kadrey v. Meta Platforms, Inc.*,
  2025 WL 744032 (N.D. Cal. Mar. 7, 2025) .......................................................... 1, 4, 5

*Luvdarts, LLC v. AT & T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) ..................................................................................... 3

*ME2 Prods., Inc. v. Does 120*,
  2017 WL 11144624 (D. Haw. July 11, 2017) ........................................................... 4

*In re Napster, Inc. Copyright Litig.*,
  377 F. Supp. 2d 796 (N.D. Cal. 2005) ................................................................... 1, 3

*New York Times Co. v. Microsoft Corp.*,
  777 F. Supp. 3d 283 (S.D.N.Y. 2025) .................................................................... 1, 5

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  167 F. Supp. 2d 1114 (C.D. Cal. 2001) ................................................................. 2, 3

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ........................................................................................ 2

*YZ Prods., Inc. v. Redbubble, Inc.*,
  545 F. Supp. 3d 756 (N.D. Cal. 2021) ....................................................................... 4

-iii-

**Statutes**

17 U.S.C. § 1202(b)(1)....................................................................................................... 1, 4, 5, 6

17 U.S.C. § 1202(b)(3)............................................................................................................... 1

**Other Authorities**

Pouwelse, J.A. et al., THE BITTORRENT P2P FILE-SHARING SYSTEM:
    MEASUREMENTS AND ANALYSIS (2005)....................................................................... 2

Case No. 3:25-cv-09579-VC
ENTREPRENEUR MEDIA, LLC'S OPPOSITION TO MOTION TO DISMISS

**INTRODUCTION**

Meta does not challenge Entrepreneur's direct copyright infringement claim and challenges only Entrepreneur's contributory infringement and DMCA claims. Both challenges fail on straightforward grounds.

Entrepreneur's contributory infringement claim rests on a simple premise: torrenting necessarily involves uploading. When Meta used peer-to-peer file-sharing networks to torrent copyrighted works, it simultaneously redistributed those works to other network participants. This is the same theory of contributory liability courts have recognized since *Napster*. *In re Napster, Inc. Copyright Litig.*, 377 F. Supp. 2d 796, 806 (N.D. Cal. 2005) ("There is no doubt that these 'uploading' and 'downloading' theories are legally sufficient to establish defendants' liability for secondary copyright infringement."). Meta's authorities are inapposite because they involve platforms where infringement was merely possible; here, third-party infringement is mechanically inherent to the system Meta chose to use.

The DMCA claim is even more straightforward: this Court already found materially identical allegations sufficient to state a claim under 17 U.S.C. § 1202(b)(1).[1] *Kadrey v. Meta Platforms, Inc.*, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025); *accord New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 315–17 (S.D.N.Y. 2025). Meta offers no basis to depart from the Court's ruling and instead asks the Court to prejudge the merits—an argument that may be appropriate for summary judgment, but not a motion to dismiss.

Meta's motion should be denied.

**BACKGROUND**

Entrepreneur publishes business and entrepreneurship books and magazines. (Complaint ("Compl.") ¶ 2.) As alleged, Meta obtained copies of Entrepreneur's copyrighted works by downloading them from "shadow library" repositories using peer-to-peer torrenting networks. (*Id.* ¶¶ 31–32, 39–41.) Torrenting requires participants to upload data while downloading—a reciprocal "tit-for-tat" system. (*Id.* ¶ 31.) Meta then used preprocessing software that removed copyright

---

[1] To promote efficiency and focus the litigation, Entrepreneur withdraws its DMCA claim under 17 U.S.C. § 1202(b)(3) and proceeds solely under section 1202(b)(1).

-1-

management information ("CMI") from the downloaded works before using them to train its Llama AI models. (*Id.* ¶¶ 33, 70–72.)

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## ARGUMENT

### A.    Entrepreneur States a Claim for Contributory Copyright Infringement

Contributory infringement requires: (1) a third party's direct infringement; (2) the defendant's knowledge of that infringement; and (3) material contribution to or inducement of the infringement. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). The Complaint satisfies each element.

*Third-Party Infringement.* Meta argues that Entrepreneur has not identified a specific third-party infringer. But no such identification is required at the pleading stage. *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) ("[B]ecause of the user-dependent nature of this copyright infringement, the number [of infringing acts] could vacillate hour-to-hour, day-to-day."). The Complaint alleges that Meta used torrenting networks to obtain copyrighted works. (Compl. ¶¶ 31–32.) Torrenting systems function through reciprocal file-sharing: downloaders simultaneously upload chunks of the same file to other participants. (*Id.* ¶ 31; Pouwelse, J.A. et al., THE BITTORRENT P2P FILE-SHARING SYSTEM: MEASUREMENTS AND ANALYSIS (2005), *available at* pdos.csail.mit.edu/archive/6.824-2007/papers/pouwelse-btmeasure.pdf.) This is not speculation about what *might* occur—it is a description of how the technology works. Third-party infringement is inherent to the system.

Meta's reliance on *Concord Music Group, Inc. v. Anthropic PBC*, 2025 WL 1487988 (N.D. Cal. Mar. 26, 2025), is misplaced. In *Concord*, plaintiffs alleged that an AI chatbot *could* output copyrighted lyrics if prompted by users. The court dismissed the contributory claim because the

-2-

allegations described only a *potential* for infringement—users "can" or "might" request lyrics. *Id.* at *4–5. Here, the Complaint does not allege that torrenting *could* result in redistribution; it alleges that redistribution necessarily occurred because it is mechanically inherent to how torrenting functions. Every download necessarily involves uploads.

Meta's reliance on *Luvdarts* and similar "platform" cases likewise misunderstands the nature of the conduct alleged here. Those cases involved intermediaries whose systems merely enabled infringement by others, requiring plaintiffs to plead knowledge of specific downstream infringing acts. *See Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072–73 (9th Cir. 2013). By contrast, Entrepreneur alleges that Meta itself participated in the infringing act by uploading copyrighted works through a peer-to-peer protocol designed to redistribute data to other users. Where the defendant is the uploading actor, and redistribution is an inherent and unavoidable feature of the technology, contributory liability does not depend on advance notice of particular recipients or titles. *Perfect 10*, 167 F. Supp. 2d at 1121 (question on a motion to dismiss "boils down to whether or not [the defendant] has fair notice of the allegations against it … The ever-shifting nature of the Internet and the potential scale of the allegations involved undercut [defendant's] arguments").

*Knowledge.* Meta possessed actual knowledge that its participation in the torrenting network would cause redistribution of copyrighted works. The Complaint alleges Meta deliberately chose torrenting to acquire "hundreds of terabytes" of data from shadow libraries. (Compl. ¶¶ 1, 31–32.) Any user of BitTorrent understands that downloading requires uploading—that is the system's core design. *Iqbal*, 556 U.S. at 679 (courts are required to draw on "experience and common sense" in determining whether a claim is plausible). Meta's knowledge was not "generalized" awareness of potential infringement; it was certain knowledge of an unavoidable consequence.

*Material Contribution.* By uploading copyrighted works to other network participants, Meta materially contributed to those participants' ability to obtain the works. Courts have consistently held that participation in peer-to-peer networks supports contributory liability. *See In re Napster*,

Case No. 3:25-cv-09579-VC
ENTREPRENEUR MEDIA, LLC'S OPPOSITION TO MOTION TO DISMISS

377 F. Supp. 2d at 806 ("There is no doubt that these 'uploading' and 'downloading' theories are legally sufficient to establish defendants' liability for secondary copyright infringement."); *ME2 Prods., Inc. v. Does 120*, 2017 WL 11144624, at *2 (D. Haw. July 11, 2017) (finding allegations that the defendants participated in a "peer-to-peer file-sharing protocol" sufficient to state a claim for contributory copyright infringement); *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004) ("[A] reasonable trier of fact could conclude that AOL materially contributed to the copyright infringement by storing infringing copies of Ellison's works on its USENET groups and providing the groups' users with access to those copies.").

Meta's other cases are distinguishable because they involved platforms where infringement was possible but not inherent. *Epikhin v. Game Insight N. Am.*, 2015 WL 2412357 (N.D. Cal. May 20, 2015), involved a mobile game with no allegation of any third-party infringement. *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756 (N.D. Cal. 2021), involved an e-commerce website that *could* facilitate sales of infringing goods. Neither case involved a system where infringement is structurally required for the system to function—precisely what Entrepreneur alleges here.

**B.    Entrepreneur States a Claim Under the DMCA**

Section 1202(b)(1) prohibits the intentional removal of copyright management information with knowledge that such removal will "induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b)(1).

Entrepreneur alleges that Meta's preprocessing pipeline systematically removed CMI from Entrepreneur's Infringed Works to prevent Llama from revealing that it had been trained on copyrighted works. (Compl. ¶¶ 71–74, 76.) This Court already addressed materially identical allegations in *Kadrey*, finding that "plaintiffs have adequately alleged that Meta intentionally removed CMI to conceal copyright infringement." 2025 WL 744032, at *2. Entrepreneur's allegations mirror *Kadrey*: Meta's preprocessing pipeline removed CMI from copyrighted works to prevent Llama from memorizing and outputting information that would reveal its training sources. (Compl. ¶¶ 71–74.)

-4-

Meta does not argue that Entrepreneur's allegations differ from *Kadrey*.[2] Instead, Meta asserts that *Kadrey* plaintiffs were unable "to develop a coherent theory of CMI removal" during discovery. (Mot. at 10.) That is a merits argument (focused on a different set of plaintiffs) that should be addressed on a motion for summary judgment, once Entrepreneur has taken the discovery to which it is entitled. At this stage, the Court must determine whether the allegations state a plausible claim—and this Court has already held that they do.

Meta's remaining arguments—that Entrepreneur cannot show how Llama's outputs would differ with CMI intact, and that removal of CMI does not "conceal" infringement—similarly go to the merits. *New York Times*, 777 F. Supp. 3d at 315–16 ("[P]laintiffs have plausibly alleged both that OpenAI's removal of CMI conceals its *own* infringement, and that that removal enables and facilitates third-party infringement."). Entrepreneur is mindful of its burden to substantiate this claim with facts, but Meta cannot cut off its ability to do so at the motion to dismiss stage.

## C.    Leave to Amend

Should the Court identify any pleading deficiency, Entrepreneur requests leave to amend to add further allegations supporting its claims as to Meta's use of torrenting networks and Meta's knowledge.

///

///

///

---

[2] Meta's reliance on the Court's summary judgment order in *Kadrey* (Mot. at 10 n.3) underscores why dismissal is inappropriate. Because Entrepreneur's DMCA theory is that CMI removal concealed Meta's copying infringement—not its distribution—a predicate question is whether copying constitutes infringement or fair use. The Court granted summary judgment on the *Kadrey* plaintiffs' DMCA claim solely because the Court had determined, based on a full evidentiary record, that Meta's copying was fair use. *Kadrey*, Dkt. 601 at 1. That determination turned on factor four, where the *Kadrey* plaintiffs "presented no meaningful evidence on market dilution at all." *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1060 (N.D. Cal. 2025). Entrepreneur has alleged precisely the market harm the *Kadrey* plaintiffs failed to prove. (Compl. ¶¶ 45–52.) Whether Entrepreneur can substantiate those allegations is a question for discovery and summary judgment, not a motion to dismiss. Similarly, even if the Court were to take judicial notice of materials from the *Kadrey* record (Mot. at 12), those materials would at most present competing inferences about Meta's intent and the effects of CMI removal. Resolving such inferences based on a partial or extrinsic record is improper on a motion to dismiss, particularly where this Court has already held that materially identical allegations plausibly state a claim under § 1202(b)(1).

-5-

## **CONCLUSION**

Entrepreneur's Complaint plausibly pleads that Meta's decisions on how to train its models and treat the copyrighted materials on which its models are built support claims for contributory copyright infringement and DMCA liability. Meta believes the facts will ultimately not support these claims. Entrepreneur disagrees. This Court may have to decide which side is right at summary judgment (with a full factual record), not on a motion to dismiss.

Dated:  February 2, 2026

HUESTON HENNIGAN LLP

By: _____
Moez M. Kaba

HUESTON HENNIGAN LLP
Moez M. Kaba
Michael M. Purpura
Lee Linderman

NEWMEYER & DILLION LLP
Michael B. McClellan
Benjamin P. Pugh
Jason L. Morris
Harlye S. Carlton

*Attorneys for Plaintiff*
*ENTREPRENEUR MEDIA, LLC*