DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900


CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN (260865)
lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
BOBBY A. GHAJAR (198719)
bghajar@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
PHILLIP MORTON (*pro hac vice forthcoming*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> META PLATFORMS, INC., <br><br> Defendant. | Case No. 3:25-cv-09579-VC <br><br> **DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** <br><br> Date: March 19, 2026 <br> Time: 10:00 a.m. <br> Dept: Courtroom 4 – 17th Floor <br> Judge: Vince Chhabria <br><br> Trial Date: None <br> Date Action Filed: November 6, 2025 |

**INTRODUCTION**

Plaintiff's Opposition does not cure the defects in its Complaint identified in Meta's opening brief.  On contributory infringement, Plaintiff relies solely on the bare premise that BitTorrent entails some uploading to excuse the absence of any allegations that Plaintiff's specific works were uploaded to—and infringed by—third parties.  Plaintiff relies on a chain of inferences that the Complaint does not plausibly support.  On the DMCA claims, Plaintiff abandons one of its theories, and as to the other, offers speculative causal chains that do not address the failure to plead the statutory nexus between the alleged removal of CMI and the facilitation or concealment of infringement, as well as the requisite scienter.  Because Plaintiff's Opposition confirms that these ancillary claims rest on conjecture rather than plausible factual allegations, Counts II and III should be dismissed.

**ARGUMENT**

**I.   Plaintiff's Opposition Confirms That Count II Fails to State a Claim**

Plaintiff's Opposition confirms that its contributory infringement claim (Count II) rests on an inferential leap the Complaint does not plausibly support.  Plaintiff asserts that its allegation that the process of torrenting inherently involves some uploading is a sufficient substitute for facts plausibly establishing direct infringement of Plaintiff's works by a third party.  *See, e.g.*, Opp. at 3 ("[T]he Complaint does not allege that torrenting *could* result in redistribution; it alleges that redistribution necessarily occurred because it is mechanically inherent to how torrenting functions.  Every download necessarily involves uploads." (emphasis in original)).  That allegation is not sufficient, and cannot excuse Plaintiff's failure to plead third-party direct infringement, Meta's knowledge of that infringement, and material contribution to or inducement of that infringement—each of which is essential to maintain a claim for contributory infringement.  Plaintiff's contributory infringement claim should be dismissed.

**A.   Allegations About BitTorrent's Mechanics Do Not Plausibly Plead Any Completed Act of Third-Party Infringement**

Plaintiff concedes that it must plead direct infringement as a necessary element of a contributory infringement claim, and acknowledges that the Complaint does not allege that any third party downloaded any Entrepreneur work that Meta allegedly made available through seeding or leeching, identify any

downloader or downloaded work, or plead any completed infringing transaction. Opp. at 2–3. Stated simply, Plaintiff fails to identify a single work that was downloaded or infringed by anyone. Instead, Plaintiff asserts that it is excused from pleading such facts because "[t]orrenting systems function through reciprocal file-sharing: downloaders simultaneously upload chunks of the same file to other participants" such that "[t]hird-party infringement is inherent to the system." Opp. at 2. But this assertion is belied by the allegations in the Complaint and fails on its own terms. As Plaintiff alleges, Meta torrented "hundreds of terabytes" of data. Compl. ¶ 1. The 71 works Plaintiff identifies in its Complaint thus comprise, at most, a minuscule fraction of the overall volume of material allegedly torrented. Plaintiff does not allege (because it cannot) that uploading and downloading via BitTorrent happen on a one for one ratio. Rather, the Complaint alleges that BitTorrent users may upload only subsets of the data downloaded. *See, e.g.*, Compl. ¶ 64; *see also* Opp. at 2 ("[D]ownloaders simultaneously upload *chunks* of the same file to other participants." (emphasis added)). The general proposition that BitTorrent involves some uploading does not plausibly establish *what subset* of the data that Meta allegedly downloaded was uploaded, whether any fragments of Plaintiff's works were uploaded at all, whether any uploaded fragments were large enough to constitute actionable copying, or whether any third party in the swarm downloaded any portion of Plaintiff's works, let alone enough to constitute direct infringement. Plaintiff's theory therefore depends on a chain of missing inferences:

(1) that Meta uploaded fragments of Plaintiff's works (as opposed to fragments of the overwhelming bulk of other data allegedly torrented);

(2) that any such fragments were sufficiently substantial to constitute material contribution to infringement; and

(3) that unidentified third parties actually downloaded those fragments in infringing amounts.

None of these inferences follows from the bare assertion that "torrenting necessarily involves uploading." Opp. at 1. Absent factual allegations showing that Plaintiff's works were actually uploaded, Plaintiff's reliance on BitTorrent's general mechanics does not plausibly plead any act of third-party infringement. *See Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 1487988, at *3–4 (N.D. Cal. Mar. 26, 2025).

That failure is dispositive.  "[T]he existence of direct infringement is a necessary element of a claim for contributory infringement."  *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 867 (N.D. Cal. 2012).  Courts in this District have rejected secondary liability claims that rely on abstract descriptions of what technologies do rather than allegations of what any third party actually did.  Contrary to Plaintiff's urging, Opp. at 2–3, *Concord Music* is instructive here for dismissing contributory infringement claims.  There, the plaintiffs failed to plead any completed act of third-party infringement attributable to the defendant's conduct because the AI chatbot at issue *could* output copyright lyrics.  2025 WL 1487988, at *3–4.  Plaintiff alleges that *Concord Music* is distinguishable because here the Complaint alleges that redistribution necessarily occurred.  But as explained above, the Complaint only alleges that some uploading occurred and contains no details about what any third party allegedly downloaded via the BitTorrent process, let alone that Plaintiffs' works were any part of any uploaded material.  As in *Concord Music*, Plaintiff relies on architectural possibility rather than pleaded facts.

Plaintiff also cites *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001), for the proposition that a plaintiff need not "identif[y] a specific third-party infringer . . . at the pleading stage."  Opp. at 2.  But *Perfect 10* involved a direct rather than contributory infringement claim.  167 F. Supp. 2d at 1120–22.  It does not speak to the pleading requirements of contributory infringement.  Moreover, although the plaintiff in *Perfect 10* did not name specific third-party infringers, it did plead specific, representative instances of third-party infringement.  *Id.* at 1121 ("[T]he complaint specifically identifies websites where infringing conduct can be found, and alleges that some of this infringing conduct still carries Perfect 10's identification.").  *Perfect 10* therefore does not support the proposition that one can plead contributory infringement without pleading a single predicate instance of third-party infringement.  Courts within the Ninth Circuit have held that where, as here, a complaint lacks "allegations of even representative infringements, [it] fails to provide notice as a matter of law."  *MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017); *see also Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175–76 (N.D. Cal. 2015) (dismissing claim lacking allegations identifying "representative acts of infringement").

The absence of any allegation of direct infringement by a third party is fatal to Plaintiff's contributory infringement claim.

### B. Knowledge That Redistribution Can Occur Is Not Knowledge of Specific Infringing Acts

Plaintiff asserts that Meta had "actual knowledge" of redistribution because "[a]ny user of BitTorrent understands that downloading requires uploading," and thus Meta allegedly knew that its participation in torrenting "would cause redistribution of copyrighted works." Opp. at 3.

But the Complaint alleges no facts whatsoever supporting its conclusory allegation that Meta knew that downloading through BitTorrent "requires uploading." *See* Compl. ¶ 66 ("Meta knew or had reason to know that its conduct constituted infringement of Entrepreneur's rights."). And Plaintiff's statement in its Opposition that "[a]ny user of BitTorrent" would have that knowledge is equally conclusory, and is neither plausible nor true.

Moreover, this threadbare allegation fails for the same reason as Plaintiff's failure to plead third-party infringement. Knowledge that some uploading allegedly had to occur does not imply the "actual knowledge of specific acts of infringement" the Ninth Circuit requires. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (quoting *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001)). Nor does it support even an inference that Plaintiff's particular works were among any data uploaded.

Plaintiff further urges the Court to ignore the Ninth Circuit's requirement "to plead knowledge of specific downstream infringing acts," arguing without supporting authority that it should apply only to platform operators rather than individual users.[1] Opp. at 3. But this Court need not reach the question of whether the Ninth Circuit implicitly intended to limit its statements of the knowledge requirement to

---

[1] Plaintiff's Opposition again cites *Perfect 10*, 167 F. Supp. 2d at 1121, for the proposition that "[w]here the defendant is the uploading actor, and redistribution is an inherent and unavoidable feature of the technology, contributory liability does not depend on advance notice of particular recipients or titles," Opp. at 3, but the case holds no such thing. *Perfect 10* was neither about torrenting nor about the knowledge requirement for contributory infringement. Instead, it discussed whether the plaintiff's allegations of copyright infringement were sufficient to give the defendant notice of the claims against it even though the plaintiff did not state "every copyright relied on, every individual image . . . that is being infringed, every image on specific web pages that does infringe, or the dates of any infringement." 167 F. Supp. 2d at 1120.

platform operators. *See Luvdarts*, 710 F.3d at 1072; *Napster*, 239 F.3d at 1020–21. Even assuming that Meta had "certain knowledge" that some third-party infringement was occurring in connection with its torrenting, Opp. at 3, that would not support an inference that Meta knew—or had reason to know—that Plaintiff's at-issue works were being infringed.

### C. Without Any Identified Infringement of Plaintiff's Works, There Can Be No Material Contribution or Inducement

Plaintiff asserts that "[b]y uploading copyrighted works to other network participants, Meta materially contributed to those participants' ability to obtain the works." Opp. at 3. Again, the Complaint fails to establish that any network participant actually "obtain[ed]" any work as a result of Meta's conduct, much less that its works were among those uploaded and "obtain[ed]." The premise that some third-party infringement must have occurred does not plausibly establish that Plaintiff's works were among those infringed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts must reject complaints that rest on unwarranted inferences and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief"'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007))). That failure is fatal, and none of Plaintiff's authorities suggest otherwise. *See In re Napster, Inc. Copyright Litig.*, 377 F. Supp. 2d 796, 801 (N.D. Cal. 2005) ("[P]roof of direct infringement by the primary infringer is a necessary precondition to establishing . . . contributory . . . liability under the Copyright Act."); *ME2 Prods., Inc. v. Does 1 through 20*, 2017 WL 11144624, at *1–2 (D. Haw. July 11, 2017) (allowing limited early discovery into alleged contributory infringement involving Doe participants in a peer-to-peer file-sharing protocol where the plaintiff had identified the IP addresses used and the date and time of each alleged infringement); *Ellison v. Robertson*, 357 F.3d 1072, 1074 (9th Cir. 2004) (identifying a specific primary infringer who "posted copies of some of [the plaintiff's] copyrighted short stories on a peer-to-peer file sharing network").

\* \* \*

Because Plaintiff has not plausibly alleged any completed act of third-party infringement of its works—let alone Meta's knowledge of such infringement or conduct that materially contributed to it—Count II should be dismissed.

## II.  Plaintiff Fails to State a Plausible Claim under Section 1202(b)(1)

In response to Meta's motion, Plaintiff dropped its Section 1202(b)(3) claim[2] and failed to meaningfully respond to arguments supporting dismissal of its Section 1202(b)(1) claim.  The core defects observed by Meta remain unchallenged: the Complaint does not, as it must, plausibly allege a connection between Meta's removal of "front-matter copyright notices" and knowing concealment of purported infringement.

Under *Iqbal* and *Twombly*, courts must reject complaints that rest on unwarranted inferences—*i.e.*, speculative leaps not grounded in well pleaded facts.  *Iqbal*, 556 U.S. at 678.  *All* claimants—including Plaintiff—are required to plead sufficient factual content "to draw the reasonable inference" that the other party is liable for the conduct alleged.  *Id*.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id*. (quoting *Twombly*, 550 U.S. at 557).  For example, in *Moss v. U.S. Secret Service*, 572 F.3d 962, 965 (9th Cir. 2009), the Ninth Circuit reversed the denial of a motion to dismiss a viewpoint discrimination claim where protesters alleged that Secret Service agents escorted them away from a presidential dinner venue while allowing supporters to remain, but the complaint pleaded no facts excluding the equally plausible explanation that the agents acted for security reasons.  Without more, it was improper for the district court to infer that the differential treatment reflected viewpoint animus.  *Id.* at 965, 971–72.

For claims under Section 1202(b)(1), a complaint must include plausible "allegations as to how identifiable infringements 'will' be affected by [d]efendants' alleged removing or altering of CMI."  *Mills v. Netflix, Inc.*, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3, 2020) (quoting *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018)).  Plaintiffs do not have to *prove* that "removal of CMI metadata from their

---

[2] Meta's motion established that Plaintiff's Section 1202(b)(3) claim is based on faulty reasoning and lacks sufficient factual allegations to state a plausible claim.  Unable to defend the claim, Plaintiff withdrew it.  Opp. at 1 n.1.  Meta's motion should be granted as to this claim.

[works] will impair their policing of infringement" at the pleading stage, *Stevens*, 899 F.3d at 675, but they must *plausibly allege* it. That is where Plaintiff's Complaint, and its arguments, fail.

Plaintiff's theory of CMI-removal-as-concealment is premised upon question-begging speculation. Mot. at 10–12. At most, Plaintiff plausibly alleges that removing "front-matter copyright notices" from LLM training data reduces the likelihood that the contents of those notices will be memorized by the model. Compl. ¶¶ 70–74. But it does not necessarily follow that reduced memorization causes concealment. Connecting the two requires one to assume, among other things, that "removal of certain CMI is the difference between a model memorizing identifying information about training data contents, or not," Mot. at 10, notwithstanding that there are countless other references to authors and publishers throughout the works that were not removed, Dkt. No. 39-1 (Decl. of J. Lauter ISO Mot. to Dismiss) ¶¶ 2–8, *and* that "but-for Meta's removal of copyright notices, Plaintiff would somehow be able to determine from Llama's outputs that Plaintiff's works were used as training data," Mot. at 10. The Complaint cites no academic literature or technical research tying CMI to disclosure, no examples of CMI removal (or inclusion) affecting training data disclosure in other contexts, and alleges no facts concerning how CMI removal made it "more difficult," Compl. ¶ 76, for Plaintiff to determine what Meta's models were trained on. The only documents that it cites—"[p]ublic filings in *Kadrey*," Compl. ¶ 72—*contradict* Plaintiff's concealment theory, in particular with respect to scienter and Meta's purported knowledge that CMI removal "conceals" infringement, Mot. at 12 (*e.g.*, quoting a declaration from the Meta engineer referenced in the Complaint, in which he attested that there was no basis to infer that CMI removal "could have the effect of concealing information about Meta's training data"). Plaintiff's Opposition ignores these points.

If Plaintiff had a plausible explanation of how CMI removal causes concealment, it would have been a simple enough matter to say what that is. It is telling that Plaintiff declined to use its Opposition brief as an opportunity for clarification. Instead, it deflected. Citing this Court's decision in *Kadrey* and the roughly contemporaneous decision in *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 315 (S.D.N.Y. 2025), Plaintiff attempts to shield its theory from scrutiny by asserting that the issue has

1 already been decided and Meta's concerns should be addressed on the merits, after full discovery. Opp. at 4–5. But the decisions in *Kadrey* and *New York Times* do not relieve Plaintiff of its pleading burden.

First, the *New York Times* opinion is inapposite, as the plaintiffs in that case had alleged an altogether different concealment theory premised on purported concealment regarding infringing *outputs*, not training data. *Id*. at 316. According to the *New York Times* plaintiffs, OpenAI had publicly acknowledged that its models were trained on copyrighted works and "are capable of distributing unlicensed copies of copyrighted works." *Id*. The plaintiffs further alleged that specific outputs from ChatGPT "'regurgitate' or reproduce large portions of plaintiff's works, verbatim or nearly verbatim, that [were] 'memorized' during training . . . ." *Id*. at 301. And the underlying complaints included pages of "verbatim" outputs of New York Times and Daily News articles, in part to demonstrate examples of allegedly infringing outputs that lacked plaintiffs' CMI.[3] Plaintiff includes no similarly specific factual allegations in the Complaint here. Thus, the court's denial of OpenAI's motion to dismiss concerned a different legal theory from the one advanced by Plaintiff, and it was supported by significantly more extensive factual allegations.

Second, although this Court permitted a similar claim to proceed in *Kadrey,* it did so with reservations, *Kadrey*, Dkt. No. 387 (Jan. 9, 2025 Hr'g. Tr.) at 4, and now has the benefit of knowing how that claim played out. Despite having had years to articulate a coherent theory of CMI-removal-as-concealment, the *Kadrey* Plaintiffs were unable to do so. Now, months later—and relying exclusively on the *Kadrey* record—Plaintiff cannot simply point to *Kadrey* to defend a theory that it also cannot explain. If anything, the parties' and the Court's experience in *Kadrey* underscores the need to scrutinize, as a threshold matter, the unwarranted assumptions and speculative leaps underpinning Plaintiff's CMI-removal-as-concealment theory. At bottom, there's no plausible basis to assume that CMI removal caused Meta's LLMs to conceal their training data from Plaintiff or, conversely, that the models would have revealed that they were trained on Plaintiff's works if certain "front-matter" CMI had not been removed. Before inviting months of unnecessary and expensive discovery over another fishing

---

[3] Compl., *N.Y. Times Co. v. Microsoft Corp.*, 1:23-cv-11195, ECF No. 1 ¶¶ 99–101 & Ex. J (S.D.N.Y. Dec. 27, 2023); Compl., *Daily News LP v. Microsoft Corp.*, 1:24-cv-03285, ECF No. 1 ¶¶ 99–113 (S.D.N.Y. Apr. 30, 2024).

expedition premised on half-baked conjecture, Plaintiff should be required to do the bare minimum under Rule 8 by alleging a plausible story about how removal of CMI concealed Meta's alleged infringement from it. Because it has not and cannot, the Court should dismiss the Section 1202(b)(1) claim.

Dated: February 16, 2026

Respectfully submitted,

By: */s/ Karen L. Dunn*
Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: khartnett@cooley.com
mweinstein@cooley.com
lstameshkin@cooley.com

Bobby A. Ghajar
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Phillip Morton (*pro hac vice forthcoming*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*