**LEE LINDERMAN**   llinderman@hueston.com   523 West 6th Street
D: 213-788-4053   Suite 400
T: 213 788 4340   Los Angeles, CA 90014
F: 888 866 4825

# HUESTON HENNIGAN LLP

August 4, 2026

Magistrate Judge Thomas S. Hixson
Phillip Burton Federal Building
450 Golden Gate Avenue
Courtroom E – 15th Floor
San Francisco, CA 94102

Re:   *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, Case No. 3:25-cv-09579-VC

Dear Judge Hixson:

## INTRODUCTION

Pursuant to the referral of discovery matters to Magistrate Judge Hixson (Dkt. 19) and the discovery status conference set for August 5, 2026, Plaintiffs Entrepreneur Media, LLC ("Entrepreneur"), Chicken Soup for the Soul, LLC ("Chicken Soup"), Cognella, Inc. ("Cognella"), and Cambronne, et al. ("Cambronne") submit this Joint Plaintiffs' Discovery Status Statement.

The Court directed the parties to submit a joint statement. Entrepreneur circulated its portions to Defendant Meta Platforms, Inc. ("Meta") at 8:35 p.m. PT on August 3, 2026. Meta circulated its portions at 10:41 a.m. PT on August 4, 2026, setting forth new affirmative requests for relief, and thereafter declined to authorize the filing of a joint statement. Plaintiffs accordingly submit this statement setting out Plaintiffs' positions only. Plaintiffs do not oppose Meta filing a separate statement, and understand that it intends to do so. Plaintiffs' positions here address the disputes as framed in the parties' conferrals; to the extent Meta's separate filing raises matters Plaintiffs have not had occasion to address, Plaintiffs will address them at the conference.[1]

**Entrepreneur's Position**:  Meta does not dispute that its productions and designations are incomplete. The dispute is about *when*. Meta's answer, across nearly every category, is the second half of August—a window that closes four days before the September 4 fact-discovery cutoff and eighteen days before opening expert reports. Discovery produced on August 28 cannot be used at a deposition, in an interrogatory follow-up, or by an expert.

Entrepreneur's principal requests are as follows:

(1) **Deposition Dates**. Meta offers September 4 for Karthik Sankararaman and September 3 for Han Fang—the last two days of fact discovery. Entrepreneur requests that both depositions be ordered to occur on or before August 26, with custodial files produced four days in advance; or, if Meta's stated unavailability is genuine, that Entrepreneur have leave to take both after the cutoff, with custodial files produced no later than August 21.

---

[1]Plaintiffs met and conferred in good faith in an effort to resolve the disputes below before this filing.  The discovery requests and responses at issue are attached as Exhibits 1-3 (Entrepreneur Media) and Exhibits A & B (The Three Cs).

# HUESTON HENNIGAN LLP

(2) **Dates certain for outstanding custodial files**. Entrepreneur requests August 12, 2026 for Damon Civin, Ranjan Subramanian, Didem Foss, and Affonso Reis.

(3) **Two Rule 30(b)(6) rulings**. That Meta may not limit any designation on the ground that the knowledgeable individual is a former employee, and that Meta must prepare designees on the full noticed scope rather than "generally."

(4) **A sworn answer on preservation**. Not documents—answers. Five yes/no questions, set out in Part IV.B.ii, none of which requires disclosure of privileged material.

(5) **A withholding statement**. As to the omitted clauses of RFP Nos. 60 and 61, whether Meta is withholding responsive material and on what basis.

**Three Cs' Position**: The Three Cs have conferred with Meta regarding its failures to produce and deficient written discovery responses and shares Entrepreneur's request for expedited timelines to allow for meaningful discovery. The Three Cs joins in Entrepreneur's request for resolution of the five issues outlined above as they each relate to the Plaintiffs' cases and as discussed in more detail below.

**Master Timeline**

| Date | Event |
|---|---|
| November 6, 2025 | Entrepreneur Complaint filed |
| December 22, 2025 | Cambronne Complaint filed |
| March 17, 2026 | Chicken Soup Complaint filed |
| March 30, 2026 | Order denying Meta's motion to dismiss in the *Entrepreneur* case |
| May 4, 2026 | Cognella Complaint filed |
| June 5, 2026 | Chicken Soup Amended Complaint (operative complaint) filed |
| June 5, 2026 | Cambronne Second Amended Complaint (operative complaint) filed |
| September 4, 2026 | Close of fact discovery |
| September 18, 2026 | Opening expert reports due |
| October 16, 2026 | Rebuttal expert reports due |
| October 30, 2026 | Reply expert reports due |

**HUESTON HENNIGAN** LLP

| November 20, 2026 | Close of expert discovery |
|---|---|
| December 11, 2026 | Opening summary judgment brief due |
| May 11, 2027 | Final pretrial conference |
| May 24, 2027 | Trial |

## I.  DEPOSITION STATUS

Set forth below is the status of the depositions of Meta's witnesses, Entrepreneur's witnesses, the Three C's witnesses, and third-party witnesses as of the date of this statement.

**Meta's Witnesses**

| *Depositions Taken* | | |
|---|---|---|
| 1. | Melanie Kambadur | July 14, 2026 |
| 2. | Frank Zhang | July 16, 2026 |
| 3. | Damon Civin | July 17, 2026 |
| 4. | Ranjan Subramanian | July 21, 2026 (Rule 30(b)(1)) |
| 5. | Didem Foss | July 22, 2026 |
| 6. | Britt Montalvo | July 28, 2026 (Rule 30(b)(1)) and Rule 30(b)(6)) |
| 7. | Thomas Scialom | July 29, 2026 |
| *Depositions Scheduled* | | |
| 8. | Nikolay Bashlykov | August 7, 2026 |
| 9. | Britt Montalvo (continued session) | August 7, 2026 (Rule 30(b)(1) and Rule 30(b)(6)) |
| 10. | Xiaolan Wang | August 10–11, 2026 |
| 11. | Shelley Venus | August 18, 2026 |
| 12. | James Beldock | August 26–28, 2026 (Rule 30(b)(1) and Rule 30(b)(6)) |

# HUESTON HENNIGAN LLP

| Depositions To Be Scheduled | | |
|---|---|---|
| 13. | Mark Zuckerberg | No date provided |
| 14. | Lauren Scissors | No date provided |
| 15. | Wenting Lu | No date provided |
| 16. | Karthik Sankararaman | September 4 offered by Meta; Plaintiffs seek earlier date |
| 17. | Han Fang | September 3 offered by Meta; Plaintiffs seek earlier date |

## Entrepreneur's Witnesses

| Depositions Taken | | |
|---|---|---|
| 1. | Michael Frazier | July 29, 2026 |
| 2. | Ryan Shea | July 30, 2026 |
| 3. | Sean Strain | July 31, 2026 |
| Depositions Scheduled | | |
| 4. | Charles Muselli | August 6, 2026 |
| 5. | Jessica Thomas | August 13, 2026 |
| 6. | Chris Damore | August 17, 2026 |
| 7. | Brittany Robins | August 18, 2026 |
| 8. | Bill Shaw | August 19, 2026 |
| 9. | Lucy Gekchyan | August 20, 2026 |
| 10. | Jason Feifer | August 25, 2026 |

## Third-Party Witnesses

| 1. | Affonso Reis | August 25, 2026 |
|---|---|---|
| 2. | Anna Grosul | Subpoena not served |

# HUESTON HENNIGAN LLP

| 3. | Stephen Roller | August 26, 2026 |
|----|----------------|-----------------|

**Three Cs' Witnesses**

| *Depositions Scheduled* | | |
|------|------------------|------------------------------------|
| 1. | Amy Newmark | August 11, 2026 |
| 2. | William Rouhana | August 12, 2026 |
| 3. | John Carreyrou | August 17, 2026 |
| 4. | Matthew Sacks | August 18, 2026 |
| 5. | Jane Adams | August 20, 2026 |
| 6. | Lisa Barretta | August 21, 2026 |
| 7. | Michael Kochin | August 26, 2026 |
| 8. | Josh Perigo | TBD: Week of August 24–28, 2026 |
| 9. | Alia Bales | TBD: Week of August 24–28, 2026 |
| 10. | Chelsey Rogers | TBD: Week of August 24–28, 2026 |
| 11. | Dave Wilson | TBD: Week of August 24–28, 2026 |
| 12 | Alexa Lucido | TBD: Week of August 24–28, 2026 |
| 13. | Ivey Preston | TBD: Week of August 24–28, 2026 |
| 14. | Ryan Bailey | TBD: Week of August 24–28, 2026 |
| 15. | Natalie Piccotti | TBD: Week of August 24–28, 2026 |
| 16. | Kassi Graves | Not scheduled |
| 17. | Bassim Hamedeh | Not scheduled |

**Entrepreneur's Position:**  Several of the depositions for Meta witnesses remain unscheduled.  *First*, on July 23, 2026, Entrepreneur requested Lauren Scissors's availability.  On July 27, 2026, Meta responded that it is still "inquiring about dates."  A day later, Meta advised that Ms. Scissors is on paid time off until August 10, 2026 and that it will confirm a date after her return.  At the July 31, 2026 case management conference (the "7/31 Conference"), Meta committed to providing a date when Ms. Scissors returns from paid time off on August 10, 2026.  Judge Chhabria pressed Meta to provide a date, but stopped short of ordering them to do so.

# HUESTON HENNIGAN LLP

*Second*, as for Wenting Lu, Meta has advised that she will "imminently" begin medical leave.[2] The parties subsequently conferred.  Entrepreneur offered several proposals to accommodate Ms. Lu's medical situation.  Rather than providing Ms. Lu's availability, Meta repeatedly asked Entrepreneur for a written topic list and has proposed no concrete alternative.  At the 7/31 Conference, the Court directed Meta to produce Ms. Lu's custodial file by August 12, 2026.  From there, Entrepreneur will confer with Meta about a potential other deponent, if necessary.

*Third*, Entrepreneur is still waiting on deposition dates for Mark Zuckerberg.  On July 28, 2026, Meta advised that it was still inquiring and would revert as soon as possible. At the 7/31 Conference, Meta informed the Court that it may file a motion to prevent Mr. Zuckerberg's deposition.  The Court stated that it would be "shocked" if it were to agree that Mr. Zuckerberg could not be deposed.  The Court ordered Meta to provide a deposition date by the next conference on August 14, 2026, and directed that the deposition occur no later than August 26, 2026.

*Finally*, on July 30, 2026, Entrepreneur also requested the depositions of Han Fang and Karthik Sankararaman.  Meta has not yet provided either witness's availability.

Entrepreneur seeks relief as to two witnesses. Meta states that the only date it can offer for Mr. Sankararaman is September 4 and that Mr. Fang is available September 3—the final two days of fact discovery. Both were requested on July 30. Under the Court's four-day rule, their custodial files would land on August 30 and August 31, leaving no opportunity to review them, no opportunity for follow-up written discovery, and no opportunity to route the testimony to experts before the September 18 report deadline. A deposition on the last day of fact discovery is a deposition in name only.

Entrepreneur requests that the Court order these depositions to proceed on or before August 26, 2026, with custodial productions four days in advance. In the alternative, if Meta's unavailability is genuine, Entrepreneur requests leave to take both depositions after the September 4 cutoff, with custodial files produced no later than August 21, 2026, so that Entrepreneur can prepare.

As to Ms. Scissors, Mr. Zuckerberg, and Ms. Lu, Judge Chhabria has set deadlines and Entrepreneur seeks no relief here.

**Three Cs' Position**:  The Court has directed that these related actions proceed on the same trial schedule and that discovery be coordinated and used across the *Kadrey*, *Entrepreneur*, and *Three Cs* cases.  As a result, depositions are jointly noticed and each party has one opportunity to examine a witness during a single deposition, such that the concerns identified above by Entrepreneur apply with equal force to the Three Cs.  Accordingly, the Three Cs join in the requested relief.

On July 28, 2026, the Chicken Soup plaintiffs served a deposition subpoena on former Meta employee Stephen Roller, setting his deposition for August 26, 2026 in New York.  The *Kadrey* plaintiffs have advised that they intend to seek leave to participate in that deposition.  (Dkt. 88 at 43:1–4.)

---

[2] Ms. Lu was identified in Mr. Civin's and Mr. Subramanian's depositions as the data-engineering lead for the issues Entrepreneur is exploring through discovery.

# HUESTON HENNIGAN LLP

### II.    CUSTODIAL PRODUCTIONS

#### A.    Meta's Productions

**Entrepreneur's Position**:  The Court ordered on July 20, 2026 that documents for any deponent who was not a *Kadrey* document custodian must be produced no later than four calendar days before any scheduled deposition.  The Court made clear that, even if a party deviated from this four-day rule for any given deposition, that deposition should proceed regardless and would be subject to being reopened following production of that deponent's custodial documents. 7/20/26 Tr. at 22:20–23:8 (Dkt. 88); *see also* Dkt. 87 (minute order). Meta's aggregate production figure does not answer the question before the Court, which is not how many documents Meta has produced overall but when the files of specific deposed and noticed witnesses will be produced.

Four custodial files remain outstanding, and Meta has committed to a date for none of them.

*Mr. Civin*, deposed on July 17, 2026. Meta has produced no custodial documents for him in this case or in *Kadrey*. Meta's statement, circulated August 4, 2026, do not mention Mr. Civin and offer no date.

*Mr. Subramanian*, deposed on July 21, 2026, without a custodial file, with Entrepreneur reserving its rights on the record. Meta states it is producing his materials "as quickly as possible" and will "endeavor" to produce them four days before his Rule 30(b)(6) session. No date is given, and Meta has not identified when that session will occur.

*Ms. Foss*, deposed July 22, 2026, without a custodial file, with Entrepreneur reserving its rights on the record. Meta will take "all reasonable efforts" to produce by August 28, 2026.

*Mr. Reis*. Designated as a Meta custodian on May 20, 2026, and personally served with an Entrepreneur deposition subpoena. Meta has produced nothing and takes the position that his documents "are not due until four days before" a deposition that has not been scheduled. That conflates two separate obligations. Mr. Reis has been a designated custodian for over ten weeks; his files are within Meta's possession, custody, and control and are responsive to requests served months ago. The Court's four-day rule is a floor for deponents, not a substitute for the underlying production obligation.

The common feature of these four is timing. August 28 is four business days before the September 4 fact discovery cutoff and twenty-one days before opening expert reports are due on September 18. A custodial file produced on August 28 cannot support a reopened deposition, a follow-up interrogatory, or an expert analysis. That is true whether or not the production is complete when it arrives.

With respect to Ms. Montalvo, Meta made three productions within three days of her July 28 deposition, conceded the day before that the productions were incomplete, and produced a single record from her email account spanning a three-year period. With respect to Mr. Scialom, Meta produced 1,455 documents from his custodial file less than 36 hours before his July 29 deposition, followed by nine more documents the evening before. Entrepreneur proceeded in both instances and noted the circumstances on the record. Entrepreneur asked Meta to confirm that it would not oppose a continued session if review of those productions made one necessary. Meta has not responded, and has not confirmed whether either custodial production is now complete.

## HUESTON HENNIGAN LLP

Entrepreneur has extended Meta the accommodation it seeks here. As to its own custodians, Entrepreneur has stated that it will not oppose reopening the affected depositions and that any reopened examination should not be charged against the time already used. Dkt. 97 at 10. Meta has declined to reciprocate.

On July 27, 2026, Entrepreneur asked Meta to produce all responsive documents for each upcoming deponent four days in advance or to confirm in writing that none exist. Meta responded the next day that it was taking all reasonable efforts to comply, but declined to represent that productions would be complete for any future deposition. A confirmation of completeness costs Meta nothing and would eliminate the need to litigate each deposition after the fact.

Entrepreneur respectfully requests that the Court order:

1. Production of the custodial files of Damon Civin, Ranjan Subramanian, Didem Foss, and Affonso Reis by August 12, 2026;

2. That Meta confirm in writing by August 11, 2026, for each Meta witness already deposed, whether that witness's custodial production is complete, and if not, what remains and when it will be produced;

3. That, for each remaining deposition, Meta confirm in writing four calendar days beforehand either that the witness's custodial production is complete or, if it is not, what remains outstanding; and

4. That any deposition affected by an untimely or incomplete custodial production may be reopened without further leave of Court, with the reopened examination not charged against the time already used—the same accommodation Entrepreneur has extended to Meta.

Entrepreneur is not pursuing Mr. Heafield's deposition and does not seek relief as to his file. Entrepreneur will raise Ms. Grosul's custodial documents once she has been served.

**Three Cs' Position**: For the reasons articulated above, the Three Cs join in the requesting relief.

### B.    Entrepreneur's Productions

**Entrepreneur's Position**:   Meta has raised concerns regarding the completeness of Entrepreneur's custodial productions, its Section 4(a) disclosures, and the collection of non-email communications. Entrepreneur addresses each.

The three custodians whose productions the Court ordered completed by July 23, 2026—Mr. Frazier, Mr. Shea, and Mr. Strain—held a combined 380.11 GB of data, comprising more than 2,000,000 documents, in their mailboxes.  Entrepreneur made substantial productions for all three custodians beginning July 23, 2026, all more than four calendar days before the depositions for those custodians.

On July 24, 2026, during a telephonic meet and confer between counsel for Meta and Entrepreneur, Meta identified an issue concerning the dates with Mr. Frazier's production.  Entrepreneur immediately coordinated with DISCO, its e-discovery platform, and asked DISCO to investigate and identify the source of the issue.  On July 28, 2026, Entrepreneur was informed by DISCO that a technical error during DISCO's collection of Mr. Frazier's mailbox resulted in the omission of numerous items from Mr. Frazier's collection.

# HUESTON HENNIGAN LLP

DISCO has since rectified the problem, conducted a proper collection, and reingested the items into DISCO for review.  Entrepreneur will supplement Mr. Frazier's production as soon as the newly collected and ingested items have been reviewed.

On July 27, 2026, Meta identified via email potential deficiencies in Entrepreneur's production for Mr. Shea.  Entrepreneur immediately investigated the issue and determined that a tag had been misapplied during its review process.  Entrepreneur rectified this issue, made a substantial supplemental production, and anticipates one more small supplemental production.  Entrepreneur will not oppose reopening the affected depositions and agrees that any reopened examination should not be charged against the time already used.

On August 3, 2026, Entrepreneur produced a complete custodial file for Charles Muselli, comprised of 65,320 documents. On August 4, 2026, Entrepreneur disclosed its Section 4(a) search protocol for Mr. Muselli's production. Entrepreneur will serve 4(a) disclosures for each remaining custodian as that custodian's production is completed. Disclosing a search protocol for a collection that is being re-run would document a process Entrepreneur has already superseded; disclosing it upon completion gives Meta the operative protocol.

Finally, regarding non-email communications, Entrepreneur has collected and produced Slack messages, and did so in response to specific requests rather than as an undifferentiated custodial sweep. Entrepreneur is confirming the scope of Google Chat and SMS use identified in recent testimony and will report to Meta by August 10, 2026 on collection scope and timing for those channels. To the extent Meta contends the ESI Protocol requires a different collection methodology for non-email channels, Entrepreneur is prepared to confer.

## III.   RULE 30(b)(6) DESIGNATION COVERAGE

**Entrepreneur's Position**:  Entrepreneur served its Rule 30(b)(6) notice on July 2, 2026, identifying twenty-one topics.  Meta served responses and objections on July 24, 2026.  To date, Meta has designated witnesses on only three of the twenty-one topics.

Entrepreneur remains concerned about two limiting principles Meta has imposed across Entrepreneur's noticed topics:  (1) disclaiming knowledge of former employees, and (2) testifying "generally" about the topics.  *First,* Meta asserts, in nineteen of the twenty-one topics, that information is no longer within its possession because certain individuals are no longer employed by Meta.  But a Rule 30(b)(6) designee must testify to information known or reasonably available to the organization, including information drawn from documents and former employees.  *Second,* Meta has agreed only to prepare its witnesses to testify "generally" about the topics noticed by Entrepreneur.  For example, Meta's written response agrees to designate a witness on Topic 18 while offering a narrower construction of the Topic.  Specifically, Meta carves out "press releases or public statements by Meta executives"—two categories that Meta's written response had agreed to cover.  Entrepreneur has twice asked Meta to identify a designee and a date for the excepted portion and has received no response.

Instead, on July 28, 2026, Meta stated that it is "working to identify 30(b)(6) designees and will roll them out as they are determined," and that it "currently expect[s] that the bulk of EM's 30(b)(6) topics will be

## HUESTON HENNIGAN LLP

addressed by Mr. Beldock at the end of August." Mr. Beldock is scheduled for August 26–28, 2026, seven days before the close of fact discovery, and Meta has not identified which topics he will cover.[3]

At the 7/31 Conference, the Court directed Meta to identify, by Thursday, August 6, 2026, all of its Rule 30(b)(6) designees and the scope of the topics each designee will address. The Court directed the parties to raise any outstanding issues after the August 6, 2026 deadline.

Two questions of scope are ripe now and are independent of who is designated:

1. Meta asserts across nineteen of twenty-one topics that information is unavailable because individuals are no longer employed. A designee must testify to information known or reasonably available to the organization, which includes information drawn from documents and from former employees. Entrepreneur requests an order that Meta may not limit any designation on that basis.

2. Meta has agreed to prepare witnesses to testify only "generally." Rule 30(b)(6) requires preparation on the matters described with reasonable particularity in the notice. Entrepreneur requests an order that Meta prepare each designee on the full noticed scope of the topics designated.

Entrepreneur further requests that any time spent examining a designee who is unprepared, or who is prepared only as to a portion of any designated topic, not be charged against Entrepreneur's allotted 14 hours of Rule 30(b)(6) testimony, including the 42 minutes spent learning that Ms. Montalvo was not prepared on the full scope of Topic 18. Entrepreneur also requests leave, after the September 4, 2026 cutoff, to take the deposition of any designee Meta has not identified by August 6, 2026.

**Three Cs' Position**: The Three Cs join in Entrepreneur's requested relief. In particular, the Three Cs served their own 30(b)(6) notice to Meta on July 31, 2026 and understand the Court's August 3, 2026 minute order to require Meta to "identify all 30(b)(6) witnesses by Thursday, August 6." *Kadrey* Dkt. No. 788. To date, Meta has not designated any witnesses to testify on the topics. The Three Cs request that any time spent examining a designee who is unprepared, or who is prepared only to a portion of any designated topic, not be charged against the parties' allotted Rule 30(b)(6) time. The Three Cs also requests leave to take, after the September 4, 2026 cutoff, any designee Meta has not identified by August 6, 2026.

### IV.    WRITTEN DISCOVERY

**Entrepreneur's Position**: On July 20, 2026, Meta served responses to Entrepreneur's Fifth Set of Requests for Production and First Set of Requests for Admission. Meta's responses to Entrepreneur's Sixth Set of Requests for Production are due August 3, 2026. On July 20 and 21, 2026, Entrepreneur served responses to Meta's Second and Third Sets of Interrogatories, Third and Fourth Sets of Requests for Production, and Third Set of Requests for Admission. On July 24, 2026, Entrepreneur served its Fifth Set of Interrogatories and Second Set of Requests for Admission. On July 28, 2026, Meta served its Fourth Set of Interrogatories. On July 31, 2026, Entrepreneur served its Sixth Set of Interrogatories, Third Set of Requests for Admission, and Seventh Set of Requests for Production; responses to each come due before the September 4, 2026 cutoff.

---

[3] Meta has separately confirmed that it is not designating Mr. Scialom, Mr. Bashlykov, or Ms. Wang on any topic.

# HUESTON HENNIGAN LLP

**Three Cs Position**: On May 21, 2026, the Cognella and Chicken Soup Plaintiffs served Meta with their First Set of written discovery. The Cambronne Plaintiffs served Meta with the same discovery on May 27, 2026. Meta responded to the Cognella and Chicken Soup discovery on June 22, 2026, and responded to the Cambronne Plaintiffs' discovery on June 26, 2026. The Three Cs served their Second Set of Interrogatories to Meta on July 2, 2026. On July 28, 2026, the Three Cs served their Third Set of Interrogatories, Second Set of Requests for Admission, and Second Set of Requests for Production. Meta's responses to these requests are due August 27, 2026. On August 3, 2026, Meta requested a one-week extension to respond to the Second Set of Interrogatories served on July 2, 2026.

Meta served its First Set of Interrogatories and First Set of Requests for Production on Cognella on June 12, 2026. Meta served its First Set of Interrogatories and First Set of Requests for Production on Chicken Soup on June 15, 2026. Meta served its First Set of Interrogatories and First Set of Requests for Production on the Cambronne Plaintiffs on June 18, 2026. Following agreement between counsel to align the deadlines to respond, the Chicken Soup, Cognella, and Cambronne Plaintiffs responded to this initial discovery on July 20, 2026. Meta served its First Set of Requests for Admission on July 31, 2026.

## A. Interrogatories

**Entrepreneur's Position**:   Meta has still not provided adequate responses to Entrepreneur's written discovery requests seeking a full list of Entrepreneur's works (including books or magazines) and web content from Entrepreneur servers that Meta ingested into its training models.  After repeated follow-up, Meta has informed Entrepreneur that Meta will offer supplemental responses to the interrogatories that relate to this topic—namely, Interrogatory Nos. 19 and 20—by August 4, 2026.

Meta's responses to Interrogatory No. 19 have been seriously deficient.[4]  That interrogatory asks Meta to identify, for each version of Llama, each Entrepreneur work included in any training dataset, along with the dataset and the source from which Meta obtained it.  Meta responded that it could not identify which works were used because it lacked source metadata sufficient to trace particular works to particular datasets.  The parties then agreed that Meta would search the metadata it retained, with text-based matching (*i.e.*, Entrepreneur providing text from works and Meta looking for that text in its training materials) as the fallback.

Still, Meta has been unable to confirm the universe of Entrepreneur books and magazines that were used as training materials.  For books, Entrepreneur provided a list of approximately 598 books by title, publication date, ISBN, and author on May 27, 2026, and has produced digitized copies on a rolling basis.  Since late June, Meta has been confirming whether those books were used in its training data.  For magazines, Entrepreneur proposed searching each issue's table of contents.  Entrepreneur raised that proposal on June 29, 2026, a second time on July 8, 2026, and a third time on July 16, 2026.  Meta never said whether table-of-contents searching works.

On July 28, 2026, Meta committed to supplementing its response to Entrepreneur's Interrogatory No. 19 by August 4, 2026 and providing works "run through the text matching process to date," with further supplements as Entrepreneur's rolling productions are processed.  That day, Meta also served its own

---

[4] Separately, Interrogatory No. 20 asks Meta to identify the Entrepreneur web content it crawled and used in training. Meta's supplemental response covering SpiderMate, its proprietary crawler, is due August 4, 2026, having been promised no later than July 15, 2026.

# HUESTON HENNIGAN LLP

interrogatory requiring Entrepreneur to identify every book it has published, beginning from the publishing date of the earliest asserted work, with a response due in late August.

At bottom, Meta's inability to search its metadata—because it does not have it, never possessed it, or failed to preserve it—is a problem of its own making.  If Meta cannot determine what its training data comprises, it should not be incumbent on Entrepreneur to digitize and produce every book and magazine it has ever published.   In any event, Meta should bear the vendor/digitization costs to the extent text-matching is required.

The parties conferred on August 3, 2026 and Meta expects to provide its supplemental answer the evening of August 4, 2026—after the filing deadline for this statement.  Entrepreneur will review Meta's supplemental responses and alert the Court of any outstanding issues.[5]

Finally, in the portions Meta circulated on August 4, 2026, Meta indicated it will ask the Court to (1) order Plaintiffs to produce proof of ownership for all works, (2) shift text-search costs, and (3) compel production of shadow-library metadata by August 7. These are affirmative motions presented without a legal standard, without cost substantiation, and without any prior conferral in which Meta conditioned its searches on ownership proof. Entrepreneur has produced registration materials and continues to produce them on a rolling basis. Meta's inability to trace its own training data is not a burden Entrepreneur created, and cost-shifting is not available for a search Meta elected to run and repeatedly described as voluntary. Entrepreneur requests that these applications be denied without prejudice to a properly noticed motion.

**Three Cs Position**:  Meta has not provided substantive responses to the Three Cs written discovery requests.  After repeated follow up, Meta represented to the Three Cs counsel that Meta would provide supplemental responses to the interrogatories by July 31, but no supplement or update has been received.  The Three Cs request that Meta's objections be overruled and that supplemental responses be complete and served no later than August 12, 2026.

*Background*:  On May 21, 2026, Cognella and Chicken Soup served Meta with a very limited number of initial written discovery requests including eight (8) Interrogatories.  The Cambronne Plaintiffs served Meta with the same discovery on May 27, 2026. Plaintiffs' requests were designed to elicit key information central to this case, including which of Plaintiffs' copyrighted Works Meta obtained, the source from which each work was obtained (including any shadow libraries), and the manner in which those Works were acquired and used.  Despite representing in open court on May 22[6] that Meta would be forthcoming with this information, Meta's has not responded in substance to any of Plaintiffs' requests.

Meta's responses also repeatedly depart from the plain language of the requests by unilaterally redefining key terms to inappropriately narrow the scope of each inquiry and avoid even partial disclosure of the requested information about Plaintiffs' works.

Meta is circuitously attempting to shift its discovery burdens onto the Three Cs plaintiffs.  Plaintiffs dispute that Meta needs anything from Plaintiffs to disclose what it obtained and used from shadow libraries, but in

---

[5] Entrepreneur has begun investigating other means of identifying whether the asserted works reached Meta's AI models, including by seeking the metadata of shadow libraries that Meta's models relied upon. Contrary to Meta's claims, Entrepreneur does not possess the necessary shadow library metadata. Entrepreneur reserves its right to seek adverse inferences based on this investigation.

[6] Case Management Conference Hearing Transcript, May 22, 2026.

# HUESTON HENNIGAN LLP

any event, Meta has had "additional information" from Plaintiffs for some time.  To be helpful and try to avoid a dispute, Plaintiffs already provided the requested ISBNs known to them for all of their works on June 2, 2026.  It has also provided text for more than 444 Chicken Soup and Cambronne works on June 22, 2026 and June 24, 2026, respectively.  Text-searchable files for approximately 3,000 Cognella works was provided to Meta on July 15, 2026.  Delay in responding to Plaintiffs' request based on the need for "further information" is unwarranted.

*Definitional Objections*: Plaintiffs challenge Meta's definitional objections and unilateral interpretations of Plaintiffs' definitions as described in Set One.  For the reasons set forth in the deficiency letter sent to Meta's counsel on June 30, 2026 (*see* Exhibit B, pp. 2–3), the Three Cs request that Meta be ordered to respond to the Interrogatories in line with the definitions provided by Plaintiff, not as modified by Meta.

*ROG No. 1-3*:  Meta must identify those of Plaintiffs' copyrighted works it obtained from the web, including when and how they were obtained.  The onus of identifying those works, their associated CMI, and the sources from which they were derived, rests with Meta, and Meta alone.

*ROG No. 4-5:*  These interrogatories ask for a straightforward response indicating which of the Plaintiffs' works were used, in whole or in part, to train any of the LLM Models, including when and how they were used.  Meta has not articulated a reason why it has not or cannot provide this information. If Meta has a reason why it cannot answer these interrogatories on a work-by-work basis, it should provide that reason in a supplemental response.

*ROG No. 6*:  Meta should be required to identify each of Plaintiffs' works from which it removed or altered any Copyright Management Information (CMI).  This is an essential factual premise for Plaintiffs' claims and Meta has not articulated a basis upon which to withhold a straightforward response.

*ROG No. 7*:  The parties have conferred at ROG No. 7 and Plaintiffs understood that Meta had agreed to provide an overview of what it did for each of Plaintiffs' works that it obtained from a Shadow Library.  Meta represented that this overview would give Plaintiffs an understanding of the process of how the works were obtained from shadow libraries, retained, stored, processed, tokenized, duplicated, stripped of CMI, modified, distributed, torrented, incorporated into an LLM, and/or deleted.  Plaintiffs compromised by welcoming a supplement that would set forth an overview of this process to determine if further specificity was warranted.  Notwithstanding, Meta has not supplemented its response to ROG No. 7 with this information.  The Three Cs request that Meta provide an overview response to ROG NO. 7 no later than August 10, and reserve the right to seek relief for further specificity should the response be insufficiently detailed.

## B.    Requests for Production[7]

### i.    *Outstanding Requests for Production with no commitment dates*

**Entrepreneur's Position**:  Meta refuses to commit to providing information or documents by dates that would permit adequate discovery ahead of the September 4, 2026 fact discovery deadline.  For example, Meta has agreed to produce documents responsive to certain of Entrepreneur's Requests—including, but not limited to, Request Nos. 36 (Llama-to-Muse Spark transition), 39 (SpiderMate and other web crawlers,

---

[7] In addition to the issues noted herein, the parties continue to confer on search terms and non-custodial sources, and will promptly raise any outstanding concerns with the Court as appropriate.

# HUESTON HENNIGAN LLP

including blocklists and crawl scope), 60 (ablation and data-mix analyses), and 61 (use-case and topic data, see below)—but gives no date by which those productions will be complete. Entrepreneur requests that Meta produces the requested documents and data by August 14.

### ii. Meta's nonresponse to Request No. 43

**Entrepreneur's Position**: Entrepreneur served Request No. 43 on April 10, 2026. It seeks documents concerning the preservation, retention, or destruction of server logs, devserver data, AWS EC2 instance data, and other records relating to Meta's torrenting activity, including litigation hold notices and preservation instructions issued on or after July 7, 2023. Entrepreneur has asked Meta five times to confirm the preservation status of those materials.[8] Entrepreneur requests that Meta be ordered to state in writing, by August 11, 2026: (1) whether the identified server logs, devserver data, and EC2 instance data were preserved as of July 7, 2023; (2) whether they are preserved now; (3) what retention or auto-deletion policies applied; (4) whether any such policy was suspended and when; and (5) whether any such materials were lost or deleted. Meta's statement in its position circulated August 4, 2026, that it "believes that it has fully complied" and has produced the logs it has "identified to date" answers none of these questions.

### iii. Request Nos. 42, 60, and 61

**Entrepreneur's Position**: On April 10, 2026, Entrepreneur served Request No. 42, seeking all metadata generated, recorded, or maintained in connection with the acquisition, processing, de-duplication, filtering, or cleaning of any dataset used to train a Meta AI model—expressly including timestamps, source URLs and file paths, download methods, and hash values; de-duplication logs and the criteria or algorithms applied; and preprocessing logs reflecting what was removed, filtered, or modified. On July 28, 2026, Meta responded that it "has not identified any log files related to processing, de-duplication or the removal of repetitive information like copyright notices" and that it was "currently . . . not aware of any such logs ever being created." That answer addresses log files only and says nothing about the balance of the Request. Meta's position, circulated on August 4, 2026, does not address Request No. 42 at all. Entrepreneur requests that Meta state, by August 11, 2026, whether responsive material exists in the categories the Request identifies other than log files—including source URLs, file paths, download methods, and hash values—and whether it is withholding any such material.

*Request No. 60*. On June 5, 2026, Entrepreneur served Request No. 60, seeking ablation studies, data-mix experiments, and other internal analyses measuring the effect of removing, reducing, or substituting book datasets, together with "any internal valuation or estimate of the contribution of such datasets." Meta's July 20 response committed to producing documents responsive to the Request but omitted the internal-valuation clause. Meta now states that it objected because it was unclear whether Entrepreneur sought quantitative, qualitative, or economic valuations, and that Entrepreneur has not clarified.

Entrepreneur clarifies now, and the answer is all three. Entrepreneur seeks documents assessing the value, contribution, or importance of book datasets to any Meta AI model, whether the assessment is quantitative or qualitative, including: economic valuations of book data; estimates of the cost of acquiring or licensing book data; estimates of the benefit, performance gain, or capability attributable to book data; and internal analyses or statements estimating what a model would gain or lose from the inclusion or exclusion of book

---

[8] Entrepreneur first requested these five confirmations on May 21, 2026 and renewed the request on June 2, 2026, June 27, 2026, July 8, 2026, and July 16, 2026. Meta responded on July 28, 2026 without answering any of the five.

# HUESTON HENNIGAN LLP

datasets. Multiple Meta witnesses have testified that assessments of this kind exist. With that clarification, Meta's stated basis for the omission is resolved, and Entrepreneur requests that Meta confirm by August 11, 2026 whether it is withholding any responsive material and, if so, on what basis.

In the portions Meta circulated on August 4, 2026, Meta represented that it does not intend to withhold documents concerning unreleased models, including Muse Spark and "Watermelon," and that it has disclosed the search terms reflecting those searches.[9]

*Request No. 61*. Also on June 5, 2026, Entrepreneur served Request No. 61, seeking use-case and topic data on a monthly or quarterly basis "from February 24, 2023 to the present," including breakdowns for five named taxonomy categories and a "business and finance" topic classifier.[10] Meta states that it is not withholding and is producing what it has identified, and that the enumerated categories have evolved and may have been renamed over time. Entrepreneur does not require Meta to use Entrepreneur's labels; it requires the underlying data for the full period, under whatever labels Meta used at the time.

That is where the dispute lies. Entrepreneur has received use-case and topic data for January through July 2026 only. Meta's submission does not say whether complete data for February 24, 2023 through December 31, 2025 exists. "Not withholding" and "producing the data it has identified after a reasonable search" are consistent both with the data existing and being produced later, and with its never having existed at all. Entrepreneur cannot plan its remaining discovery, or its expert work, without knowing which. Meta separately states that it is "trying to identify" whether click-through data exists.[11]

Entrepreneur requests that Meta state, by August 11, 2026: (1) whether use-case and topic classifier data for February 24, 2023 through December 31, 2025 exists; (2) if so, when it will be produced; (3) if the data exists in a different form or under different category labels for any part of that period, what form and labels; and (4) whether click-through data exists.

**Three Cs' Position**: The Three Cs join in Entrepreneur Media's requested relief with regard to Meta's production of documents as many of those requests are pertinent to the Three Cs cases. The Three Cs have pursued fact discovery in a targeted fashion to avoid duplicative requests and, accordingly, rely on the Court's assurances that discovery disputes related to one party will be resolved in a manner that appreciates its implications on the other parties.

Further, the Three Cs have not received any documents identified as responsive to their seven RFPs. The Three Cs served their first RFP on Meta on May 21, 2026 requesting full, unredacted copies of all dispositive

---

[9] In light of Meta's representations that it is searching for and will not withhold documents relating to any of the Llama models, Muse Spark, and "Watermelon," and that it has disclosed its search terms, Entrepreneur withdraws the request for relief it had raised concerning Meta's construction of "META AI MODELS," and understands Meta's representations to be binding. Entrepreneur reserves the right to raise the issue again should Meta's productions prove inconsistent with those representations.

[10] This data reflects the volume and subject matter of user queries to Meta AI. Meta maintains a "Meta AI Top-Line Metrics & Analytics" dashboard. It also tracks and reports the volume and distribution of Meta AI prompts and sessions by use-case category and by topic classifier.

[11] Click-through rate refers to the frequency with which users clicked through to external sources cited in Meta AI outputs. The data produced for the 2026 period contains none. Entrepreneur has asked about it repeatedly and, as of this filing, Meta states only that it is attempting to identify what exists.

# HUESTON HENNIGAN LLP

motion briefings filed in *Kadrey* and *Entrepreneur*. To date, no documents have been produced responsive to that request.

The Three Cs request specifically that documents responsive to RFP No. 1 be produced no later than August 7.  The unredacted copies of the dispositive pleadings with the accompanying exhibits contain testimony, expert analyses, and other evidence directly relevant to the claims and defenses at issue in these three actions.  Access to these materials is necessary to evaluate the factual record, prepare for remaining depositions and expert discovery, and avoid prejudice resulting from the withholding of highly pertinent evidence.  The ESI Order for the Three Cs was entered on July 29, 2026, so there is no reason for Meta to withhold production.

Further, the Three Cs served RFP Nos. 2-7 on July 28, and request that documents responsive to RFP Nos. 2-7 be produced no later than their deadline of August 27 to provide time to allow the parties to confer and resolve issues should any deficiencies arise.

## C.    Requests for Admission

**Entrepreneur's Position**:  Meta served its First Set of Requests for Admission on April 10, 2026, and Entrepreneur served responses on May 22, 2026.  On July 1, 2026, Meta sent a letter identifying claimed deficiencies in those responses, including as to Nos. 2, 17, 18, and 23, and the parties conferred.  On July 31, 2026, Entrepreneur served amended responses to Nos. 5, 6, 8–18, 33, 39, and 69, correcting Nos. 8, 9, and 15 from admissions to denials based on information confirmed in Entrepreneur's continuing investigation.  Entrepreneur requested a response from Meta by August 3, 2026.  If the parties do not reach agreement, Entrepreneur will raise the issue at this conference or by motion under Rule 36(b).  No relief is sought at this time regarding these requests.

Entrepreneur served its First Set of Requests for Admission on June 5, 2026, its Second Set on July 24, 2026, and its Third Set on July 31, 2026.  Meta responded to the First Set on July 20, 2026.  Responses to the Second and Third Sets are not due until late August 2026.  The parties continue to confer regarding Entrepreneur's Requests for Admission and seek no relief from the Court at this time regarding these requests.

## V.    RELATED ACTIONS AND SCHEDULING

On July 14, 2026, *Sullivan v. Meta Platforms, Inc.*, No. 4:26-cv-06793 (N.D. Cal.), filed July 2, 2026 on behalf of textbook authors, was noticed as related to this action and to the other related actions on the *Kadrey* docket.  At the July 31, 2026 case management conference, the Court deferred the question of how Sullivan will proceed, indicated that a schedule for that action will be addressed at the next conference, and directed that discovery in that action begin in the interim by way of Meta re-producing its prior productions from the related matters (as had been done to get discovery started in *Entrepreneur Media* and *Three C*).  A protective order, an ESI protocol, and a proposed schedule are to be submitted to the Court in advance of the further case management conference set for August 14, 2026 at 1:00 p.m.

**HUESTON HENNIGAN LLP**

Sincerely,

Lee Linderman

# EXHIBIT A

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900


CLEARY GOTTLIEB STEEN &
HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN (260865)
lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000


BOBBY A. GHAJAR (198719)
bghajar@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400


PHILLIP E. MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800


*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| CHICKEN SOUP FOR THE SOUL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> META PLATFORMS, INC., <br><br> Defendant. | Case No. 3:26-cv-02333-VC <br><br> **DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** <br><br> Judge: Hon. Vince Chhabria |

**PROPOUNDING PARTY:**     **PLAINTIFF CHICKEN SOUP FOR THE SOUL, LLC**

**RESPONDING PARTY:**     **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:**     **ONE**

Pursuant to Federal Rules of Civil Procedure 26 and 33, and Local Rule 33 of the United States District Court for the Northern District of California, Defendant Meta Platforms, Inc. ("Meta") hereby objects and responds as follows to Plaintiff Chicken Soup For The Soul, LLC's ("Plaintiff") First Set of Interrogatories ("Interrogatories").

## I.     Responses to All Interrogatories

**1.**     Meta's responses to these Interrogatories are made to the best of Meta's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of Meta's recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

**2.**     To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the Protective Order (Dkt. 61) governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction.

**3.**     Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II.    Objections to Instructions and Definitions

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions.

1.    Meta objects to the definition of "COPYRIGHT MANAGEMENT INFORMATION" to the extent it calls for a legal conclusion.  Specifically, a determination of whether any particular data, text, or metadata constitutes "Copyright Management Information" under 17 U.S.C. § 1202(c) is inherently legal in nature and calls for a legal conclusion.  Meta is not in a position to know whether any particular information qualifies as legally protected Copyright Management Information and a determination of such is not within Meta's possession, custody, or control.  Meta further objects to this definition as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it includes identifying information for persons that "created" copyrighted works.

2.    Meta objects to the definition of "CHICKEN SOUP FOR THE SOUL WORK(S)" as overbroad, unduly burdensome and disproportionate to the needs of the case to the extent it puts the burden on Meta to determine which works purportedly "belong" to CHICKEN SOUP FOR THE SOUL. Meta further objects to the term "belong" as vague and ambiguous as it is unclear what form of possession or ownership is intended by the use of this term.  Without agreeing that CHICKEN SOUP FOR THE SOUL possesses or owns any valid copyright in any specific works, Meta will interpret the term CHICKEN SOUP FOR THE SOUL WORKS to refer to the specific works identified in Exhibit A to the Interrogatories.

3.    Meta objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent these definitions are inconsistent with and otherwise seek to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the forthcoming ESI Order.

4.    Meta further objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent they seek to expand or alter the scope of the Federal Rules of Civil Procedure, the Local Rules of this Court, or the forthcoming ESI Order.  Meta further objects to these definitions to the extent they seek Meta to produce documents that are not reasonably

accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), which are unduly burdensome to preserve and search, or which otherwise, under the proportionality factors, should not be preserved.

5.    Meta objects to the definitions of "CORPORA" and "DATASET(S)" as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent they refer to non-textual materials that are not relevant to any party's claims or defenses and to the extent they refer vaguely to "other content." Without any admission with respect to content or nature, Meta will construe the term "DATASET(S)" to refer to Anna's Archive, Bibliotik, Books3, C4, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

6.    Meta objects to the definition of "INFRINGE," "INFRINGED," and "INFRINGES" to the extent it calls for a legal conclusion. Specifically, a determination of whether any conduct constitutes copyright infringement is inherently legal in nature and calls for a legal conclusion. Meta is not in a position to know whether any particular conduct infringes on a legally protected work and a determination of such is not within Meta's possession, custody, or control.

7.    Meta objects to the definition of "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the phrase "any machine learning model, neural network, generative artificial intelligence model, transformer model, or similar computational system trained on large quantities of text or other data" is overly broad and encompasses tools and services that are not relevant to any party's claims or defenses. Meta further objects to this definition to the extent that it purports to require Meta to produce documents or information concerning large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiff's allegedly copyrighted works. Meta further objects that the phrase "process, predict, generate, summarize, classify, or otherwise manipulate natural language or content" renders the definition vague, ambiguous, confusing, and overly broad. Meta will construe "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" to mean the publicly released Llama 1, Llama 2, Llama 3, Llama 4, and Muse Spark models.

8.    Meta objects to the definition of "META," "YOU," and "YOUR" as overbroad,

unduly burdensome, and disproportionate to the needs of the case. Meta will construe "META," "YOU," or "YOUR" to mean Meta Platforms, Inc.

9.      Meta objects to the definition of "PIRATED," "PIRACY," and "PIRATED MATERIAL" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation. Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works.

10.     Meta objects to the definition of "SHADOW LIBRARY" and "SHADOW LIBRARIES" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation.  Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent it refers to non-textual materials that are not relevant to any party's claims or defenses and to the extent it refers vaguely to "media and similar materials."  Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the term "DATASETS."  Without any admission with respect to content or nature, Meta will construe the term "SHADOW LIBRARY" to refer to certain of the third-party datasets identified by Plaintiff, namely Anna's Archive, Bibliotik, Books3, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

11.     Meta objects to the definition of "WEB SCRAPING" as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case.  In particular, the extensive list of undefined terms, including "extraction, collection, copying, downloading, crawling, indexing, harvesting, or retrieval" and "aggregation, storage, processing" are susceptible to multiple definitions, rendering this definition unintelligibly ambiguous.  Meta further objects to the phrase "images, metadata, or other content" as overbroad and disproportionate to the needs of the case, to the extent it refers to training data other than text data that is not relevant to any party's claims or defenses.  Meta further objects to this definition to the extent that it incorporates the

objectionable portions of the terms "SHADOW LIBRARIES" and "LARGE LANGUAGE MODELS." Meta will construe "WEB SCRAPING" to mean the automated collection of text data from the public internet for use in training the Meta Language Models (as construed above).

**III.    General Objections**

Meta hereby incorporates the following general objections into each of its specific responses and objections to the individual Interrogatories as if fully set forth therein:

**1.**    Meta incorporates by reference each and every General Objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection in any specific Response shall not be interpreted as a waiver of any General Objection to that Response.

**2.**    Any information provided in response to any individual Interrogatory is made without waiver of, and subject to, the General Objections and any additional objections asserted in response to that specific Interrogatory.

**3.**    Meta objects to the Interrogatories to the extent that they impose any differing or additional obligations from those required by the Federal Rules, the Local Rules, or any other applicable rule, law, or doctrine, the forthcoming ESI Order and the Protective Order entered in this action (the "Applicable Laws, Rules, and Agreements"), on the ground that such a requirement exceeds the scope of permissible discovery and attempts to impose an unreasonable burden and expense on Meta. To the extent any Interrogatory conflicts with, or purports to impose additional or different duties and obligations, Meta will respond in accordance with the Applicable Laws, Rules, and Agreements.

**4.**    Meta objects to the Interrogatories to the extent that they are overly broad, vague, ambiguous, and unduly burdensome; or seek documents and information that are neither relevant nor proportional to the needs of this action.

**5.**    Meta objects to the Interrogatories to the extent they seek information or documents or seek to impose a search for information or documents: (a) not within Meta's possession, custody, or control; (b) not maintained by Meta in the normal course of business; (c) already in the

possession, custody, or control of Plaintiff; (d) readily available through public sources or from sources that are more convenient, less burdensome, or less expensive; or (e) from sources that are more readily available to Plaintiff than to Meta. Meta further objects to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

**6.**    Meta objects to the Interrogatories to the extent that they seek documents and information protected from disclosure by privileges and other protections from production, including, without limitation: (a) the attorney-client privilege; (b) the work-product doctrine; or (c) any other constitutional, statutory, common law or regulatory protection, immunity, or proscription from disclosure. In responding to the Interrogatories, Meta will not produce information or documents protected by such privileges. Where Meta withholds information under claim of privilege, Meta will adhere to the requirements under the forthcoming ESI Order. Meta does not intend the inadvertent production of any privileged or protected information to constitute a waiver of Meta's rights to assert any applicable privilege or protection, and Meta further reserves the right to demand that Plaintiff return, destroy, or sequester any privileged or protected documents inadvertently produced and all copies thereof consistent with Fed. R. Civ. P. 26(b)(5)(B) and the terms and conditions of the forthcoming ESI Order and the Protective Order entered in this action.

**7.**    Meta objects to the Interrogatories to the extent that they purport to require Meta to provide information or documents in violation of a legal, contractual, or other obligation of nondisclosure owed to a third party. Meta will not provide information or documents subject to any such obligation unless and until it receives the necessary consent from any such third party or, in the absence of such consent, unless and until it is ordered to do so by a court of competent jurisdiction.

**8.**    Meta objects to the Interrogatories to the extent they call for, or can be interpreted as calling for, Meta to make legal conclusions, or to the extent they assume disputed issues or are phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper.

**9.**    Meta objects to the Interrogatories to the extent that they seek confidential, trade secret, competitively sensitive, business, financial, or other proprietary information. To the extent

documents or information containing any such information are nonprivileged, responsive to the Interrogatories, and are not otherwise objectionable, Meta will only produce such documents and information subject to the forthcoming ESI Order and the Protective Order entered in this action. Meta further reserves the right to redact or otherwise withhold any confidential, proprietary, trade secret, or competitively sensitive information that is neither relevant nor proportional to the needs of this action.

10.    Meta objects to the Interrogatories to the extent they seek documents that are not proportionate to the needs of the case and/or not relevant to any party's claims or defenses.

11.    Meta objects to the Interrogatories that seek to impose an obligation to investigate or discover information or materials from third parties or sources that are equally accessible to Plaintiff as duplicative, overbroad, unduly burdensome, and oppressive.

12.    Meta reserves the right to assert additional objections, or to supplement its Responses as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

**IV.    Objections and Responses to Individual Interrogatories**

**INTERROGATORY NO. 1:**

Which CHICKEN SOUP FOR THE SOUL WORKS did YOU obtain from a SHADOW LIBRARY?

**RESPONSE TO INTERROGATORY NO. 1:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORKS, YOU, and SHADOW LIBRARY.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any, Meta downloaded as part of Anna's Archive, Books3 and LibGen for use in training Meta's LARGE LANGUAGE MODELS. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 2:**

Identify each CHICKEN SOUP FOR THE SOUL WORK that YOU obtained through WEB SCRAPING.

**RESPONSE TO INTERROGATORY NO. 2:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORK, YOU, and WEB SCRAPING.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any, Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE LANGUAGE MODELS. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 3:**

For each CHICKEN SOUP FOR THE SOUL WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING, when and how did you obtain it? Identify and describe each instance in detail, including the source or sources, date or dates of acquisition, and means or method of acquisition.

**RESPONSE TO INTERROGATORY NO. 3:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORK, YOU, SHADOW LIBRARY, and WEB SCRAPING.

Meta objects to this interrogatory to the extent it is duplicative of information sought by Interrogatory Nos. 1 and 2. Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail, including" seeks unspecified information beyond the recited request for "the source or sources, date or dates of acquisition, and means or method of acquisition" of data obtained from a SHADOW LIBRARY or WEB SCRAPING.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1 and 2, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any (1) Meta downloaded as part of Anna's Archive, Books3, and/or LibGen for use in training Meta's LARGE LANGUAGE MODELS and (2) Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE LANGUAGE MODELS.  Meta will provide reasonably available information regarding the source, timing, and method of download. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory.  Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 4:**

Which CHICKEN SOUP FOR THE SOUL WORKS did YOU use, in whole or in part, to train any of YOUR LLM MODELS?

**RESPONSE TO INTERROGATORY NO. 4:**

 Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined.   Meta will interpret the term "train" as the act of pre-training and/or fine-tuning a large language model.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any, were used to pre-train Meta's LLM MODELS.  As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory.  Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 5:**

For each CHICKEN SOUP FOR THE SOUL WORK that YOU used, in whole or in part, to train any of YOUR LLM MODELS, when and how did you do so? IDENTIFY and describe each instance in detail.

**RESPONSE TO INTERROGATORY NO. 5:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined. Meta will interpret the term "train" as the act of pre-training and/or fine-tuning a large language model. Meta further objects to the phrase "how did you do so?" as it does not specify which actions the interrogatory seeks information about. Meta will interpret the phrase "how did you do so?" as seeking a high-level general description of the way a work like a CHICKEN SOUP FOR THE SOUL WORK would be used in the pre-training process of Meta's LLM MODELS. Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail" seeks unspecified information about the use of CHICKEN SOUP FOR THE SOUL WORKS in pre-training. Meta will interpret this phrase to seek a high-level general description of the way a work like a CHICKEN SOUP FOR THE SOUL WORK would be used in the pre-training process of Meta's LLM MODELS.

Subject to and without waiving the foregoing objections, as stated for Interrogatory No. 4, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any, that were used to pre-train Meta's LLM MODELS and Meta will provide a high-level general description of the way a work like a CHICKEN SOUP FOR THE SOUL WORK would be used in the pre-training process of Meta's LLM MODELS. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 6:**

IDENTIFY each CHICKEN SOUP FOR THE SOUL WORK from which YOU removed or altered any COPYRIGHT MANAGEMENT INFORMATION.

**RESPONSE TO INTERROGATORY NO. 6:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORKS, YOU, and COPYRIGHT MANAGEMENT INFORMATION.

Meta further objects to this interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information about CHICKEN SOUP FOR THE SOUL WORKS that were not used as part of Meta's pre-training of large language models.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify for which CHICKEN SOUP FOR THE SOUL WORKS identified in its responses to Interrogatory Nos. 1 and 2 Meta is able to reasonably determine that COPYRIGHT MANAGEMENT INFORMATION was removed or altered by Meta. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 7:**

Explain what you did with each CHICKEN SOUP FOR THE SOUL WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING or that YOU used, in whole or in part, to train any of YOUR LLM MODELS. For each CHICKEN SOUP FOR THE SOUL WORK, your explanation should state whether, when, and how it was:

(a) retained, stored, or preserved;

(b) ingested;

(c) processed;

(d) tokenized;

**DEF. RESP. TO PLTF 1ST SET OF ROGS**
**CASE NO. 3:26-CV-02333-VC**

(e) duplicated or reproduced;

(f) de-duplicated;

(g) stripped of COPYRIGHT MANAGEMENT INFORMATION;

(h) modified or altered in any other way;

(i) distributed;

(j) torrented;

(k) incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters; or

(l) deleted.

**RESPONSE TO INTERROGATORY NO. 7:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORKS, SHADOW LIBRARY, WEB SCRAPING, COPYRIGHT MANAGEMENT INFORMATION, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory as compound because it comprises at least twelve subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure. Meta further objects to the terms "[e]xplain what you did", "processed", "tokenized", "stripped", "modified or altered in any other way", "incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters" as vague and ambiguous. Meta further objects to this interrogatory to the extent it seeks information sought by Interrogatory Nos. 1-6. Meta further objects to this interrogatory to the extent it requires Meta to create or re-create information or data that is not in Meta's possession, custody, or control.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1-6, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any, were downloaded and used to pre-train Meta's LLM MODELS. Meta will provide a high-level general description of the way a work like a CHICKEN SOUP FOR THE SOUL WORK would be utilized by Meta in conjunction with Meta's LLM MODELS. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in

order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 8:**

For each response to every Request for Admission served on YOU by Plaintiff in this case that is not an unqualified admission, IDENTIFY the following information:

(a) The number of the Request for Admission;

(b) All facts on which YOU base your response;

(c) All PERSONS who have knowledge of those facts; and

(d) All DOCUMENTS that support YOUR response along with the custodian of those DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 8:**

Meta incorporates by reference its objections and definitions above, including to the terms YOU and DOCUMENTS.

Meta further objects to this interrogatory as compound because it comprises multiple subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure. Meta will respond to this interrogatory to the extent required by Local Rules 33-2 and 36-2.

Meta is willing to meet and confer regarding the appropriate scope, if any, of a response to this interrogatory.

Dated: June 22, 2026

COOLEY LLP

By: */s/ Phillip E. Morton*
    Phillip E. Morton

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email:  khartnett@cooley.com
mweinstein@cooley.com
lstameshkin@cooley.com

Bobby A. Ghajar
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Phillip E. Morton (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON LLP
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

**DEF. RESP. TO PLTF 1ST SET OF ROGS**
**CASE NO. 3:26-CV-02333-VC**

**CERTIFICATE OF SERVICE**

I am a citizen of the United States and a resident of the State of New York. I am employed in New York County, State of New York. I am over the age of eighteen years, and not a party to the within action. My business address is Dunn Isaacson Rhee LLP, 11 Park Place, New York, New York 10007. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES [NOS. 1–8]**

☒    (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Dunn Isaacson Rhee LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

FREEDMAN NORMAND FRIEDLAND LLP
Kyle Roche (*pro hac vice*)
Devin (Velvel) Freedman (*pro hac vice*)
Alex Potter (*pro hac vice*)
155 E. 44th Street, Suite 915
New York, NY 10017
Email:  kroche@fnf.law
Email:  vel@fnf.law
Email:  apotter@fnf.law

STRIS & MAHER LLP
Elizabeth Brannen (# 226234)
John Stokes (# 310847)
Lauren Martin (# 294367)
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
Email:  ebrannen@stris.com
Email:  jstokes@stris.com
Email:  lmartin@stris.com

Christopher M. Rigali (*pro hac vice*)
Jacqueline Sahlberg (*pro hac vice*)
1717 K St NW, Suite 900
Washington, DC 20006
Email:  crigali@stris.com
Email:  jsahlberg@stris.com

Executed on June 22, 2026, at Brooklyn, New York.

/s/ Christine M. Ray
Christine M. Ray

16                              **DEF. RESP. TO PLTF 1ST SET OF ROGS**
                                **CASE NO. 3:26-CV-02333-VC**

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900


CLEARY GOTTLIEB STEEN &
HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN (260865)
lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000


BOBBY A. GHAJAR (198719)
bghajar@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400


PHILLIP E. MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800


*Attorneys for Defendant Meta Platforms, Inc.*


# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| COGNELLA, INC.,<br><br>             Plaintiff,<br><br>     v.<br><br>META PLATFORMS, INC.,<br><br>             Defendant. | Case No. 3:26-cv-04053-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**<br><br>Judge: Hon. Vince Chhabria |

**PROPOUNDING PARTY:**      **PLAINTIFF COGNELLA, INC.**

**RESPONDING PARTY:**      **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:**      **ONE**

Pursuant to Federal Rules of Civil Procedure 26 and 33, and Local Rule 33 of the United States District Court for the Northern District of California, Defendant Meta Platforms, Inc. ("Meta") hereby objects and responds as follows to Plaintiff Cognella, Inc.'s ("Plaintiff") First Set of Interrogatories ("Interrogatories").

## I.      Responses to All Interrogatories

1.      Meta's responses to these Interrogatories are made to the best of Meta's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of Meta's recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

2.      To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the Protective Order (Dkt. 35) governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction.

3.      Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

**DEF. RESP. TO PLTF 1ST SET OF ROGS**
**CASE NO. 3:26-CV-04053-VC**

## II.    Objections to Instructions and Definitions

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions.

1.    Meta objects to the definition of "COPYRIGHT MANAGEMENT INFORMATION" to the extent it calls for a legal conclusion. Specifically, a determination of whether any particular data, text, or metadata constitutes "Copyright Management Information" under 17 U.S.C. § 1202(c) is inherently legal in nature and calls for a legal conclusion. Meta is not in a position to know whether any particular information qualifies as legally protected Copyright Management Information and a determination of such is not within Meta's possession, custody, or control. Meta further objects to this definition as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it includes identifying information for persons that "created" copyrighted works.

2.    Meta objects to the definition of "COGNELLA WORK(S)" as overbroad, unduly burdensome and disproportionate to the needs of the case to the extent it puts the burden on Meta to determine which works purportedly "belong" to COGNELLA. Meta further objects to the term "belong" as vague and ambiguous as it is unclear what form of possession or ownership is intended by the use of this term. Without agreeing that COGNELLA possesses or owns any valid copyright in any specific works, Meta will interpret the term COGNELLA WORKS to refer to the specific works identified in Exhibit A to the Interrogatories.

3.    Meta objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent these definitions are inconsistent with and otherwise seek to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the forthcoming ESI Order.

4.    Meta further objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent they seek to expand or alter the scope of the Federal Rules of Civil Procedure, the Local Rules of this Court, or the forthcoming ESI Order. Meta further objects to these definitions to the extent they seek Meta to produce documents that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), which are

unduly burdensome to preserve and search, or which otherwise, under the proportionality factors, should not be preserved.

**5.** Meta objects to the definitions of "CORPORA" and "DATASET(S)" as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent they refer to non-textual materials that are not relevant to any party's claims or defenses and to the extent they refer vaguely to "other content." Without any admission with respect to content or nature, Meta will construe the term "DATASET(S)" to refer to Anna's Archive, Bibliotik, Books3, C4, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

**6.** Meta objects to the definition of "INFRINGE," "INFRINGED," and "INFRINGES" to the extent it calls for a legal conclusion. Specifically, a determination of whether any conduct constitutes copyright infringement is inherently legal in nature and calls for a legal conclusion. Meta is not in a position to know whether any particular conduct infringes on a legally protected work and a determination of such is not within Meta's possession, custody, or control.

**7.** Meta objects to the definition of "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the phrase "any machine learning model, neural network, generative artificial intelligence model, transformer model, or similar computational system trained on large quantities of text or other data" is overly broad and encompasses tools and services that are not relevant to any party's claims or defenses. Meta further objects to this definition to the extent that it purports to require Meta to produce documents or information concerning large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiff's allegedly copyrighted works. Meta further objects that the phrase "process, predict, generate, summarize, classify, or otherwise manipulate natural language or content" renders the definition vague, ambiguous, confusing, and overly broad. Meta will construe "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" to mean the publicly released Llama 1, Llama 2, Llama 3, Llama 4, and Muse Spark models.

**8.** Meta objects to the definition of "META," "YOU," and "YOUR" as overbroad, unduly burdensome, and disproportionate to the needs of the case. Meta will construe "META,"

"YOU," or "YOUR" to mean Meta Platforms, Inc.

**9.** Meta objects to the definition of "PIRATED," "PIRACY," and "PIRATED MATERIAL" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation. Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works.

**10.** Meta objects to the definition of "SHADOW LIBRARY" and "SHADOW LIBRARIES" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation. Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent it refers to non-textual materials that are not relevant to any party's claims or defenses and to the extent it refers vaguely to "media and similar materials." Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the term "DATASETS." Without any admission with respect to content or nature, Meta will construe the term "SHADOW LIBRARY" to refer to certain of the third-party datasets identified by Plaintiff, namely Anna's Archive, Bibliotik, Books3, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

**11.** Meta objects to the definition of "WEB SCRAPING" as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the extensive list of undefined terms, including "extraction, collection, copying, downloading, crawling, indexing, harvesting, or retrieval" and "aggregation, storage, processing" are susceptible to multiple definitions, rendering this definition unintelligibly ambiguous. Meta further objects to the phrase "images, metadata, or other content" as overbroad and disproportionate to the needs of the case, to the extent it refers to training data other than text data that is not relevant to any party's claims or defenses. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the terms "SHADOW LIBRARIES" and "LARGE LANGUAGE

MODELS." Meta will construe "WEB SCRAPING" to mean the automated collection of text data from the public internet for use in training the Meta Language Models (as construed above).

### III. General Objections

Meta hereby incorporates the following general objections into each of its specific responses and objections to the individual Interrogatories as if fully set forth therein:

**1.** Meta incorporates by reference each and every General Objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection in any specific Response shall not be interpreted as a waiver of any General Objection to that Response.

**2.** Any information provided in response to any individual Interrogatory is made without waiver of, and subject to, the General Objections and any additional objections asserted in response to that specific Interrogatory.

**3.** Meta objects to the Interrogatories to the extent that they impose any differing or additional obligations from those required by the Federal Rules, the Local Rules, or any other applicable rule, law, or doctrine, the forthcoming ESI Order and the Protective Order entered in this action (the "Applicable Laws, Rules, and Agreements"), on the ground that such a requirement exceeds the scope of permissible discovery and attempts to impose an unreasonable burden and expense on Meta. To the extent any Interrogatory conflicts with, or purports to impose additional or different duties and obligations, Meta will respond in accordance with the Applicable Laws, Rules, and Agreements.

**4.** Meta objects to the Interrogatories to the extent that they are overly broad, vague, ambiguous, and unduly burdensome; or seek documents and information that are neither relevant nor proportional to the needs of this action.

**5.** Meta objects to the Interrogatories to the extent they seek information or documents or seek to impose a search for information or documents: (a) not within Meta's possession, custody, or control; (b) not maintained by Meta in the normal course of business; (c) already in the possession, custody, or control of Plaintiff; (d) readily available through public sources or from

sources that are more convenient, less burdensome, or less expensive; or (e) from sources that are more readily available to Plaintiff than to Meta. Meta further objects to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

6. Meta objects to the Interrogatories to the extent that they seek documents and information protected from disclosure by privileges and other protections from production, including, without limitation: (a) the attorney-client privilege; (b) the work-product doctrine; or (c) any other constitutional, statutory, common law or regulatory protection, immunity, or proscription from disclosure. In responding to the Interrogatories, Meta will not produce information or documents protected by such privileges. Where Meta withholds information under claim of privilege, Meta will adhere to the requirements under the forthcoming ESI Order. Meta does not intend the inadvertent production of any privileged or protected information to constitute a waiver of Meta's rights to assert any applicable privilege or protection, and Meta further reserves the right to demand that Plaintiff return, destroy, or sequester any privileged or protected documents inadvertently produced and all copies thereof consistent with Fed. R. Civ. P. 26(b)(5)(B) and the terms and conditions of the forthcoming ESI Order and the Protective Order entered in this action.

7. Meta objects to the Interrogatories to the extent that they purport to require Meta to provide information or documents in violation of a legal, contractual, or other obligation of nondisclosure owed to a third party. Meta will not provide information or documents subject to any such obligation unless and until it receives the necessary consent from any such third party or, in the absence of such consent, unless and until it is ordered to do so by a court of competent jurisdiction.

8. Meta objects to the Interrogatories to the extent they call for, or can be interpreted as calling for, Meta to make legal conclusions, or to the extent they assume disputed issues or are phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper.

9. Meta objects to the Interrogatories to the extent that they seek confidential, trade secret, competitively sensitive, business, financial, or other proprietary information. To the extent documents or information containing any such information are nonprivileged, responsive to the

Interrogatories, and are not otherwise objectionable, Meta will only produce such documents and information subject to the forthcoming ESI Order and the Protective Order entered in this action. Meta further reserves the right to redact or otherwise withhold any confidential, proprietary, trade secret, or competitively sensitive information that is neither relevant nor proportional to the needs of this action.

10.    Meta objects to the Interrogatories to the extent they seek documents that are not proportionate to the needs of the case and/or not relevant to any party's claims or defenses.

11.    Meta objects to the Interrogatories that seek to impose an obligation to investigate or discover information or materials from third parties or sources that are equally accessible to Plaintiff as duplicative, overbroad, unduly burdensome, and oppressive.

12.    Meta reserves the right to assert additional objections, or to supplement its Responses as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

**IV.    Objections and Responses to Individual Interrogatories**

**INTERROGATORY NO. 1:**

Which COGNELLA WORKS did YOU obtain from a SHADOW LIBRARY?

**RESPONSE TO INTERROGATORY NO. 1:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORKS, YOU, and SHADOW LIBRARY.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any, Meta downloaded as part of Anna's Archive, Books3 and LibGen for use in training Meta's LARGE LANGUAGE MODELS. As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 2:**

Identify each COGNELLA WORK that YOU obtained through WEB SCRAPING.

**RESPONSE TO INTERROGATORY NO. 2:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORK, YOU, and WEB SCRAPING.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any, Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE LANGUAGE MODELS.  As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory.  Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 3:**

For each COGNELLA WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING, when and how did you obtain it? Identify and describe each instance in detail, including the source or sources, date or dates of acquisition, and means or method of acquisition.

**RESPONSE TO INTERROGATORY NO. 3:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORK, YOU, SHADOW LIBRARY, and WEB SCRAPING.

Meta objects to this interrogatory to the extent it is duplicative of information sought by Interrogatory Nos. 1 and 2.  Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail, including" seeks unspecified information beyond the recited request for "the source or sources, date or dates of acquisition, and means or method of acquisition" of data obtained from a SHADOW LIBRARY or WEB SCRAPING.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1 and 2, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any (1) Meta downloaded as part of Anna's Archive, Books3, and/or LibGen for use in training Meta's LARGE LANGUAGE MODELS and (2) Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE

LANGUAGE MODELS.  Meta will provide reasonably available information regarding the source, timing, and method of download. As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory.  Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 4:**

Which COGNELLA WORKS did YOU use, in whole or in part, to train any of YOUR LLM MODELS?

**RESPONSE TO INTERROGATORY NO. 4:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined.   Meta will interpret the term "train" as the act of pre-training and/or fine-tuning a large language model.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any, were used to pre-train Meta's LLM MODELS.  As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory.  Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 5:**

For each COGNELLA WORK that YOU used, in whole or in part, to train any of YOUR LLM MODELS, when and how did you do so? IDENTIFY and describe each instance in detail.

**RESPONSE TO INTERROGATORY NO. 5:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined.  Meta will interpret the term "train" as the act of pre-training and/or fine-

tuning a large language model. Meta further objects to the phrase "how did you do so?" as it does not specify which actions the interrogatory seeks information about. Meta will interpret the phrase "how did you do so?" as seeking a high-level general description of the way a work like a COGNELLA WORK would be used in the pre-training process of Meta's LLM MODELS. Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail" seeks unspecified information about the use of COGNELLA WORKS in pre-training. Meta will interpret this phrase to seek a high-level general description of the way a work like a COGNELLA WORK would be used in the pre-training process of Meta's LLM MODELS.

Subject to and without waiving the foregoing objections, as stated for Interrogatory No. 4, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any, that were used to pre-train Meta's LLM MODELS and Meta will provide a high-level general description of the way a work like a COGNELLA WORK would be used in the pre-training process of Meta's LLM MODELS. As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 6:**

IDENTIFY each COGNELLA WORK from which YOU removed or altered any COPYRIGHT MANAGEMENT INFORMATION.

**RESPONSE TO INTERROGATORY NO. 6:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORKS, YOU, and COPYRIGHT MANAGEMENT INFORMATION.

Meta further objects to this interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information about COGNELLA WORKS that were not used as part of Meta's pre-training of large language models.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify for which COGNELLA WORKS identified in its responses to

DEF. RESP. TO PLTF 1ST SET OF ROGS
CASE NO. 3:26-CV-04053-VC

Interrogatory Nos. 1 and 2 Meta is able to reasonably determine that COPYRIGHT MANAGEMENT INFORMATION was removed or altered by Meta. As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 7:**

Explain what you did with each COGNELLA WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING or that YOU used, in whole or in part, to train any of YOUR LLM MODELS. For each COGNELLA WORK, your explanation should state whether, when, and how it was:

    (a) retained, stored, or preserved;

    (b) ingested;

    (c) processed;

    (d) tokenized;

    (e) duplicated or reproduced;

    (f) de-duplicated;

    (g) stripped of COPYRIGHT MANAGEMENT INFORMATION;

    (h) modified or altered in any other way;

    (i) distributed;

    (j) torrented;

    (k) incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters; or

    (l) deleted.

**RESPONSE TO INTERROGATORY NO. 7:**

    Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORKS, SHADOW LIBRARY, WEB SCRAPING, COPYRIGHT MANAGEMENT INFORMATION, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory as compound because it comprises at least twelve subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure.  Meta further objects to the terms "[e]xplain what you did", "processed", "tokenized", "stripped", "modified or altered in any other way", "incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters" as vague and ambiguous.  Meta further objects to this interrogatory to the extent it seeks information sought by Interrogatory Nos. 1-6.  Meta further objects to this interrogatory to the extent it requires Meta to create or re-create information or data that is not in Meta's possession, custody, or control.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1-6, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any, were downloaded and used to pre-train Meta's LLM MODELS.  Meta will provide a high-level general description of the way a work like a COGNELLA WORK would be utilized by Meta in conjunction with Meta's LLM MODELS.  As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory.  Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 8:**

For each response to every Request for Admission served on YOU by Plaintiff in this case that is not an unqualified admission, IDENTIFY the following information:

(a) The number of the Request for Admission;

(b) All facts on which YOU base your response;

(c) All PERSONS who have knowledge of those facts; and

(d) All DOCUMENTS that support YOUR response along with the custodian of those DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 8:**

Meta incorporates by reference its objections and definitions above, including to the terms YOU and DOCUMENTS.

Meta further objects to this interrogatory as compound because it comprises multiple subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure.  Meta will respond to this interrogatory to the extent required by Local Rules 33-2 and 36-2.

Meta is willing to meet and confer regarding the appropriate scope, if any, of a response to this interrogatory.

Dated: June 22, 2026

COOLEY LLP

By:/s/ *Phillip E. Morton*
        Phillip E. Morton

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email:  khartnett@cooley.com
mweinstein@cooley.com
lstameshkin@cooley.com

Bobby A. Ghajar
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Phillip E. Morton (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON LLP
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

**DEF. RESP. TO PLTF 1ST SET OF ROGS**
**CASE NO. 3:26-CV-04053-VC**

# CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of New York. I am employed in New York County, State of New York. I am over the age of eighteen years, and not a party to the within action. My business address is Dunn Isaacson Rhee LLP, 11 Park Place, New York, New York 10007. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES [NOS. 1–8]**

[X]    (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Dunn Isaacson Rhee LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

FREEDMAN NORMAND FRIEDLAND LLP
Kyle Roche (*pro hac vice*)
Devin (Velvel) Freedman (*pro hac vice*)
Alex Potter (*pro hac vice*)
155 E. 44th Street, Suite 915
New York, NY 10017
Email:  kroche@fnf.law
Email:  vel@fnf.law
Email:  apotter@fnf.law

STRIS & MAHER LLP
Elizabeth Brannen (# 226234)
John Stokes (# 310847)
Lauren Martin (# 294367)
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
Email:  ebrannen@stris.com
Email:  jstokes@stris.com
Email:  lmartin@stris.com

Christopher M. Rigali (*pro hac vice*)
Jacqueline Sahlberg (*pro hac vice*)
1717 K St NW, Suite 900
Washington, DC 20006
Email:  crigali@stris.com
Email:  jsahlberg@stris.com

Executed on June 22, 2026, at Brooklyn, New York.

/s/ Christine M. Ray
Christine M. Ray

16

**DEF. RESP. TO PLTF 1ST SET OF ROGS**
**CASE NO. 3:26-CV-04053-VC**

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900


CLEARY GOTTLIEB STEEN &
HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN (260865)
lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
BOBBY A. GHAJAR (198719)
bghajar@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
PHILLIP E. MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800


*Attorneys for Defendant Meta Platforms, Inc.*


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO


| | |
|---|---|
| CAMBRONNE INC., et al.<br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>META PLATFORMS, INC.,<br><br>　　　　　　Defendant. | Case No. 3:26-cv-03725-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**<br><br>Judge: Hon. Vince Chhabria |

**PROPOUNDING PARTY:**    PLAINTIFFS CAMBRONNE INC., LISA BARRETTA, PHILIP SHISHKIN, JANE ADAMS, MATTHEW SACKS, AND MICHAEL KOCHIN

**RESPONDING PARTY:**    DEFENDANT META PLATFORMS, INC.

**SET NUMBER:**    ONE

Pursuant to Federal Rules of Civil Procedure 26 and 33, and Local Rule 33 of the United States District Court for the Northern District of California, Defendant Meta Platforms, Inc. ("Meta") hereby objects and responds as follows to Plaintiffs Cambronne Inc., Lisa Barretta, Philip Shishkin, Jane Adams, Matthew Sacks, and Michael Kochin's ("Plaintiffs") First Set of Interrogatories ("Interrogatories").

## I.    Responses to All Interrogatories

**1.**    Meta's responses to these Interrogatories are made to the best of Meta's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of Meta's recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

**2.**    To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the Protective Order (Dkt. 53) governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction.

**3.**    Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other

action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

**II.    Objections to Instructions and Definitions**

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions.

**1.**    Meta objects to the definition of "COPYRIGHT MANAGEMENT INFORMATION" to the extent it calls for a legal conclusion.  Specifically, a determination of whether any particular data, text, or metadata constitutes "Copyright Management Information" under 17 U.S.C. § 1202(c) is inherently legal in nature and calls for a legal conclusion.  Meta is not in a position to know whether any particular information qualifies as legally protected Copyright Management Information and a determination of such is not within Meta's possession, custody, or control.  Meta further objects to this definition as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it includes identifying information for persons that "created" copyrighted works.

**2.**    Meta objects to the definition of "PLAINTIFFS' WORK(S)" as overbroad, unduly burdensome and disproportionate to the needs of the case to the extent it puts the burden on Meta to determine which works purportedly "belong" to PLAINTIFFS. Meta further objects to the term "belong" as vague and ambiguous as it is unclear what form of possession or ownership is intended by the use of this term.  Without agreeing that PLAINTIFFS possess or own any valid copyright in any specific works, Meta will interpret the term PLAINTIFFS' WORKS to refer to the specific works identified in Exhibit A to the Interrogatories.

**3.**    Meta objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent these definitions are inconsistent with and otherwise seek to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the forthcoming ESI Order.

**4.**    Meta further objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent they seek to expand or alter the scope of the Federal Rules of Civil Procedure, the Local Rules of this Court, or the forthcoming ESI Order.  Meta further objects to

these definitions to the extent they seek Meta to produce documents that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), which are unduly burdensome to preserve and search, or which otherwise, under the proportionality factors, should not be preserved.

5.    Meta objects to the definitions of "CORPORA" and "DATASET(S)" as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent they refer to non-textual materials that are not relevant to any party's claims or defenses and to the extent they refer vaguely to "other content."  Without any admission with respect to content or nature, Meta will construe the term "DATASET(S)" to refer to Anna's Archive, Bibliotik, Books3, C4, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

6.    Meta objects to the definition of "INFRINGE," "INFRINGED," and "INFRINGES" to the extent it calls for a legal conclusion.  Specifically, a determination of whether any conduct constitutes copyright infringement is inherently legal in nature and calls for a legal conclusion. Meta is not in a position to know whether any particular conduct infringes on a legally protected work and a determination of such is not within Meta's possession, custody, or control.

7.    Meta objects to the definition of "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case.  In particular, the phrase "any machine learning model, neural network, generative artificial intelligence model, transformer model, or similar computational system trained on large quantities of text or other data" is overly broad and encompasses tools and services that are not relevant to any party's claims or defenses. Meta further objects to this definition to the extent that it purports to require Meta to produce documents or information concerning large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works.  Meta further objects that the phrase "process, predict, generate, summarize, classify, or otherwise manipulate natural language or content" renders the definition vague, ambiguous, confusing, and overly broad. Meta will construe "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" to mean the publicly released Llama 1, Llama 2, Llama 3, Llama 4, and Muse Spark models.

8. Meta objects to the definition of "META," "YOU," and "YOUR" as overbroad, unduly burdensome, and disproportionate to the needs of the case. Meta will construe "META," "YOU," or "YOUR" to mean Meta Platforms, Inc.

9. Meta objects to the definition of "PIRATED," "PIRACY," and "PIRATED MATERIAL" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation. Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works.

10. Meta objects to the definition of "SHADOW LIBRARY" and "SHADOW LIBRARIES" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation. Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent it refers to non-textual materials that are not relevant to any party's claims or defenses and to the extent it refers vaguely to "media and similar materials." Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the term "DATASETS." Without any admission with respect to content or nature, Meta will construe the term "SHADOW LIBRARY" to refer to certain of the third-party datasets identified by Plaintiffs, namely Anna's Archive, Bibliotik, Books3, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

11. Meta objects to the definition of "WEB SCRAPING" as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the extensive list of undefined terms, including "extraction, collection, copying, downloading, crawling, indexing, harvesting, or retrieval" and "aggregation, storage, processing" are susceptible to multiple definitions, rendering this definition unintelligibly ambiguous. Meta further objects to the phrase "images, metadata, or other content" as overbroad and disproportionate to the needs of the case, to the extent it refers to training data other than text data that is not relevant to any party's

claims or defenses. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the terms "SHADOW LIBRARIES" and "LARGE LANGUAGE MODELS." Meta will construe "WEB SCRAPING" to mean the automated collection of text data from the public internet for use in training the Meta Language Models (as construed above).

**III.    General Objections**

Meta hereby incorporates the following general objections into each of its specific responses and objections to the individual Interrogatories as if fully set forth therein:

**1.** Meta incorporates by reference each and every General Objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection in any specific Response shall not be interpreted as a waiver of any General Objection to that Response.

**2.** Any information provided in response to any individual Interrogatory is made without waiver of, and subject to, the General Objections and any additional objections asserted in response to that specific Interrogatory.

**3.** Meta objects to the Interrogatories to the extent that they impose any differing or additional obligations from those required by the Federal Rules, the Local Rules, or any other applicable rule, law, or doctrine, the forthcoming ESI Order and the Protective Order entered in this action (the "Applicable Laws, Rules, and Agreements"), on the ground that such a requirement exceeds the scope of permissible discovery and attempts to impose an unreasonable burden and expense on Meta. To the extent any Interrogatory conflicts with, or purports to impose additional or different duties and obligations, Meta will respond in accordance with the Applicable Laws, Rules, and Agreements.

**4.** Meta objects to the Interrogatories to the extent that they are overly broad, vague, ambiguous, and unduly burdensome; or seek documents and information that are neither relevant nor proportional to the needs of this action.

**5.** Meta objects to the Interrogatories to the extent they seek information or documents or seek to impose a search for information or documents: (a) not within Meta's possession, custody,

DEF. RESP. TO PLTF 1ST SET OF ROGS
CASE NO. 3:26-CV-03725-VC

or control; (b) not maintained by Meta in the normal course of business; (c) already in the possession, custody, or control of Plaintiffs; (d) readily available through public sources or from sources that are more convenient, less burdensome, or less expensive; or (e) from sources that are more readily available to Plaintiffs than to Meta. Meta further objects to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

6.     Meta objects to the Interrogatories to the extent that they seek documents and information protected from disclosure by privileges and other protections from production, including, without limitation: (a) the attorney-client privilege; (b) the work-product doctrine; or (c) any other constitutional, statutory, common law or regulatory protection, immunity, or proscription from disclosure. In responding to the Interrogatories, Meta will not produce information or documents protected by such privileges. Where Meta withholds information under claim of privilege, Meta will adhere to the requirements under the forthcoming ESI Order. Meta does not intend the inadvertent production of any privileged or protected information to constitute a waiver of Meta's rights to assert any applicable privilege or protection, and Meta further reserves the right to demand that Plaintiffs return, destroy, or sequester any privileged or protected documents inadvertently produced and all copies thereof consistent with Fed. R. Civ. P. 26(b)(5)(B) and the terms and conditions of the forthcoming ESI Order and the Protective Order entered in this action.

7.     Meta objects to the Interrogatories to the extent that they purport to require Meta to provide information or documents in violation of a legal, contractual, or other obligation of nondisclosure owed to a third party. Meta will not provide information or documents subject to any such obligation unless and until it receives the necessary consent from any such third party or, in the absence of such consent, unless and until it is ordered to do so by a court of competent jurisdiction.

8.     Meta objects to the Interrogatories to the extent they call for, or can be interpreted as calling for, Meta to make legal conclusions, or to the extent they assume disputed issues or are phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper.

9.     Meta objects to the Interrogatories to the extent that they seek confidential, trade

secret, competitively sensitive, business, financial, or other proprietary information. To the extent documents or information containing any such information are nonprivileged, responsive to the Interrogatories, and are not otherwise objectionable, Meta will only produce such documents and information subject to the forthcoming ESI Order and the Protective Order entered in this action. Meta further reserves the right to redact or otherwise withhold any confidential, proprietary, trade secret, or competitively sensitive information that is neither relevant nor proportional to the needs of this action.

10.    Meta objects to the Interrogatories to the extent they seek documents that are not proportionate to the needs of the case and/or not relevant to any party's claims or defenses.

11.    Meta objects to the Interrogatories that seek to impose an obligation to investigate or discover information or materials from third parties or sources that are equally accessible to Plaintiffs as duplicative, overbroad, unduly burdensome, and oppressive.

12.    Meta reserves the right to assert additional objections, or to supplement its Responses as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

**IV.    OBJECTIONS AND RESPONSES TO INDIVIDUAL INTERROGATORIES**

**INTERROGATORY NO. 1:**

Which PLAINTIFFS' WORKS did YOU obtain from a SHADOW LIBRARY?

**RESPONSE TO INTERROGATORY NO. 1:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORKS, YOU, and SHADOW LIBRARY.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any, Meta downloaded as part of Anna's Archive, Books3 and LibGen for use in training Meta's LARGE LANGUAGE MODELS. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 2:**

Identify each PLAINTIFFS' WORK that YOU obtained through WEB SCRAPING.

**RESPONSE TO INTERROGATORY NO. 2:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORK, YOU, and WEB SCRAPING.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any, Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE LANGUAGE MODELS. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 3:**

For each PLAINTIFFS' WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING, when and how did you obtain it? Identify and describe each instance in detail, including the source or sources, date or dates of acquisition, and means or method of acquisition.

**RESPONSE TO INTERROGATORY NO. 3:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORK, YOU, SHADOW LIBRARY, and WEB SCRAPING.

Meta objects to this request to the extent it is duplicative of information sought by Interrogatory Nos. 1 and 2. Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail, including" seeks unspecified information beyond the recited request for "the source or sources, date or dates of acquisition, and means or method of acquisition" of data obtained from a SHADOW LIBRARY or WEB SCRAPING.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1 and 2, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any (1) Meta downloaded as part of Anna's Archive, Books3, and/or LibGen for use in training

**DEF. RESP. TO PLTF 1ST SET OF ROGS**
**CASE NO. 3:26-CV-03725-VC**

Meta's LARGE LANGUAGE MODELS and (2) Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE LANGUAGE MODELS. Meta will provide reasonably available information regarding the source, timing, and method of download. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 4:**

Which PLAINTIFFS' WORKS did YOU use, in whole or in part, to train any of YOUR LLM MODELS?

**RESPONSE TO INTERROGATORY NO. 4:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined. Meta will interpret the term "train" as the act of pre-training and/or fine-tuning a large language model.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any, were used to pre-train Meta's LLM MODELS. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 5:**

For each PLAINTIFFS' WORK that YOU used, in whole or in part, to train any of YOUR LLM MODELS, when and how did you do so? IDENTIFY and describe each instance in detail.

**RESPONSE TO INTERROGATORY NO. 5:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined.  Meta will interpret the term "train" as the act of pre-training and/or fine-tuning a large language model.  Meta further objects to the phrase "how did you do so?" as it does not specify which actions the interrogatory seeks information about.  Meta will interpret the phrase "how did you do so?" as seeking a high-level general description of the way a work like a PLAINTIFFS' WORK would be used in the pre-training process of Meta's LLM MODELS.  Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail" seeks unspecified information about the use of PLAINTIFFS' WORKS in pre-training.  Meta will interpret this phrase to seek a high-level general description of the way a work like a PLAINTIFFS' WORK would be used in the pre-training process of Meta's LLM MODELS.

Subject to and without waiving the foregoing objections, as stated for Interrogatory No. 4, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any, that were used to pre-train Meta's LLM MODELS and Meta will provide a high-level general description of the way a work like a PLAINTIFFS' WORK would be used in the pre-training process of Meta's LLM MODELS.  As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory.  Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 6:**

IDENTIFY each PLAINTIFFS' WORK from which YOU removed or altered any COPYRIGHT MANAGEMENT INFORMATION.

**RESPONSE TO INTERROGATORY NO. 6:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORKS, YOU, and COPYRIGHT MANAGEMENT INFORMATION.

Meta further objects to this interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information about PLAINTIFFS' WORKS that were not used as part of Meta's pre-training of large language models.

**DEF. RESP. TO PLTF 1ST SET OF ROGS
CASE NO. 3:26-CV-03725-VC**

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify for which PLAINTIFFS' WORKS identified in its responses to Interrogatory Nos. 1 and 2 Meta is able to reasonably determine that COPYRIGHT MANAGEMENT INFORMATION was removed or altered by Meta.  As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory.  Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 7:**

Explain what you did with each PLAINTIFFS' WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING or that YOU used, in whole or in part, to train any of YOUR LLM MODELS. For each PLAINTIFFS' WORK, your explanation should state whether, when, and how it was:

(a) retained, stored, or preserved;

(b) ingested;

(c) processed;

(d) tokenized;

(e) duplicated or reproduced;

(f) de-duplicated;

(g) stripped of COPYRIGHT MANAGEMENT INFORMATION;

(h) modified or altered in any other way;

(i) distributed;

(j) torrented;

(k) incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters; or

(l) deleted.

**RESPONSE TO INTERROGATORY NO. 7:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORKS, SHADOW LIBRARY, WEB SCRAPING, COPYRIGHT MANAGEMENT INFORMATION, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory as compound because it comprises at least twelve subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure. Meta further objects to the terms "[e]xplain what you did", "processed", "tokenized", "stripped", "modified or altered in any other way", "incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters" as vague and ambiguous. Meta further objects to this interrogatory to the extent it seeks information sought by Interrogatory Nos. 1-6. Meta further objects to this interrogatory to the extent it requires Meta to create or re-create information or data that is not in Meta's possession, custody, or control.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1-6, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any, were downloaded and used to pre-train Meta's LLM MODELS. Meta will provide a high-level general description of the way a work like a PLAINTIFFS' WORK would be utilized by Meta in conjunction with Meta's LLM MODELS. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 8:**

For each response to every Request for Admission served on YOU by Plaintiffs in this case that is not an unqualified admission, IDENTIFY the following information:

(a) The number of the Request for Admission;

(b) All facts on which YOU base your response;

(c) All PERSONS who have knowledge of those facts; and

(d) All DOCUMENTS that support YOUR response along with the custodian of those DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 8:**

Meta incorporates by reference its objections and definitions above, including to the terms YOU and DOCUMENTS.

Meta further objects to this interrogatory as compound because it comprises multiple subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure.  Meta will respond to this interrogatory to the extent required by Local Rule 33-2 and 36-2.

Meta is willing to meet and confer regarding the appropriate scope, if any, of a response to this interrogatory.

Dated: June 26, 2026                                        COOLEY LLP


By:/s/ *Phillip E. Morton*
　　Phillip E. Morton

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email:  khartnett@cooley.com
mweinstein@cooley.com
lstameshkin@cooley.com

**DEF. RESP. TO PLTF 1ST SET OF ROGS**
**CASE NO. 3:26-CV-03725-VC**

Bobby A. Ghajar
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Phillip E. Morton (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON
LLP
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

# CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of Washington, D.C. I am employed in Washington, D.C. I am over the age of eighteen years, and not a party to the within action. My business address is Dunn Isaacson Rhee LLP, 401 Ninth Street NW, Washington, D.C. 20004. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES [NOS. 1-8]**

☒   (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Dunn Isaacson Rhee LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

| FREEDMAN NORMAND FRIEDLAND LLP | STRIS & MAHER LLP |
|---|---|
| Kyle Roche (*pro hac vice*) | Elizabeth Brannen (# 226234) |
| Devin (Velvel) Freedman (*pro hac vice*) | John Stokes (# 310847) |
| Alex Potter (*pro hac vice*) | Lauren Martin (# 294367) |
| 155 E. 44th Street, Suite 915 | 17785 Center Court Dr N, Ste 600 |
| New York NY 10017 | Cerritos, CA 90703 |
| Email:  vel@fnf.law | Email:  ebrannen@stris.com |
| Email:  kroche@fnf.law | Email:  jstokes@stris.com |
| Email:  apotter@fnf.law | Email:  Jason.Morris@ndlf.com |

Christopher M. Rigali (*pro hac vice*)
Jacqueline Sahlberg (*pro hac vice*)
1717 K St NW Suite 900
Washington, DC 20006
Email:  crigali@stris.com
Email:  jsahlberg@stris.com

Executed on June 26, 2026, at Washington, D.C.

/s/ *Jenifer N. Hartley*
Jenifer N. Hartley

DEF. RESP. TO PLTF 1ST SET OF ROGS
CASE NO. 3:26-CV-03725-VC

# EXHIBIT B

**Stris**

**Lauren Martin**
COUNSEL

**STRIS & MAHER LLP**
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
stris.com

lmartin@stris.com

June 30, 2026

Privileged & Confidential

VIA E-MAIL

Karen L. Dunn
Jessica E. Phillips
Dunn Isaacson Rhee LLP
401 9th Street, NW
Washington, DC 20004

Re:    **Re: Discovery *Cognella, Inc. v. Meta Platforms, Inc.*, No. 3:26-cv-04053-VC, *Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*, No. 3:26-cv-02333-VC; *Cambronne, et al, v. Meta Platforms, Inc.*, No. 3:26-cv-03725-VC**

Dear Counsel:

We write on behalf of Plaintiffs Cognella, Inc. ("Cognella"), Chicken Soup for the Soul, LLC ("Chicken Soup"), and each Plaintiff in the *Cambronne* matter (collectively, "Plaintiffs") regarding Meta's deficient responses to the written discovery in the above captioned matters.

On May 21, 2026, Cognella and Chicken Soup served Meta with a very limited number of initial written discovery requests: eight (8) Interrogatories, three (3) Requests for Admission, and one (1) Request for Production. The Cambronne Plaintiffs served Meta with the same discovery on May 27, 2026. Plaintiffs' requests were designed to elicit key information central to this case, including which of Plaintiffs' copyrighted Works Meta obtained, the source from which each work was obtained (including any shadow libraries), and the manner in which those Works were acquired and used. Despite representing in open court on May 22[1] that Meta would be forthcoming with this information, Meta's has not responded in substance to any of Plaintiffs' requests.

Meta's responses also repeatedly depart from the plain language of the requests by unilaterally redefining key terms to inappropriately narrow the scope of each inquiry and avoid even partial disclosure of the requested information about Plaintiffs' works. Under Rule 37(a)(4), an evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond.

Plaintiffs' counsel would like to confer this Thursday or by Monday, July 6, 2026 regarding Meta's failure to substantively respond, including the specific deficiencies outlined below. Absent complete and forthcoming supplemental responses from Meta by **July 10, 2026**, Plaintiff will have no choice but to seek appropriate relief from the Court. Please provide your availability to discuss.

---

[1] Case Management Conference Hearing Transcript, May 22, 2026.

Jessica E. Phillips  
June 30, 2026  
Page 2

Privileged & Confidential

**Burden Shifting**

Despite Meta's repeated contention that it may "need" additional information, including the text of Plaintiffs' copyrighted works to conduct a search, the burden of identifying which works obtained from shadow libraries and what it did with those works rests squarely with Meta. Plaintiffs dispute that Meta needs anything from Plaintiffs to disclose what it obtained and used from shadow libraries, but in any event, Meta has had "additional information" from Plaintiffs for some time. To be helpful and try to avoid a dispute, Plaintiffs already provided the requested ISBNs known to them for their works on June 2, 2026. It has also provided text for the Chicken Soup and Cambronne works on June 22, 2026 and June 24, 2026, respectively. Text for the Cognella works is forthcoming. Delay in responding to Plaintiffs' request based on the need for further information is unwarranted.

**Definitional Objections**

To start, Plaintiffs challenge Meta's definitional objections and unilateral interpretations of Plaintiffs' definitions as described in Set One. The definitions are unambiguous and must stand as defined because they are foundational to the nature of each corresponding discovery request. For example:

*COPYRIGHT MANAGEMENT INFORMATION*

Meta's contention that it "is not in a position to know whether any particular information qualifies as legally protected Copyright Management Information" and that such information is outside of its possession, custody or control. Meta's objection is inconsistent with its prior discovery responses and litigation positions in *Kadrey*, where it has demonstrated familiarity with the concept of copyright management information. Meta has admitted to its use of "pirate libraries" and understands what CMI is as defined in 17 U.S.C. § 1202(c). Plaintiffs have not asked Meta to reach legal conclusions regarding the statutory status of particular information; Plaintiffs defined the term for purposes of discovery. If Meta believed clarification was necessary, it was obligated to answer the attendant requests using the definition provided or explain any genuine ambiguity— not rewrite the definition to avoid responding.

*CORPORA and DATASET(S)*

Plaintiffs defined these terms to encompass the collections of works and training data likely at issue in this action. Rather than responding under Plaintiffs definitions, Meta has unilaterally narrowed those definitions by limiting them to a self-selected list of datasets. Once again, Meta may not rewrite Plaintiff's definitions to exclude responsive sources or otherwise narrow the scope of discovery.

*LARGE LANGUAGE MODELS and LLM MODELS*

Meta may not unilaterally narrow the definition of "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" to mean the publicly released Llama 1, Llama 2, Llama 3, Llama 4, and Muse

Jessica E. Phillips                                          Privileged & Confidential
June 30, 2026
Page 3

Spark models. This is a transparent effort to limit Meta's searches to its commercially released models. But Meta has developed numerous internal and experimental models that have never been released to the public but for which Plaintiffs' works were likely copied, processed and tested. These are all relevant to the claims of infringement and Meta's searches and responses must comport with Plaintiffs' definition, not Meta's self-serving one.

*WEB SCRAPING*

Plaintiffs defined "web scraping" broadly to include the automated collection of online content. Meta attempts instead to redefine the term to mean only "the automated collection of text data from the public internet for use in training the Meta Language Models" and in some instances, limit it to Meta's SpiderMate web archiver. This revised definition improperly inserts limitations that do not appear in Plaintiffs' requests—including restricting the inquiry to text data, public internet sources, and a particular purpose. Meta cannot avoid responding by substituting its own narrower definition for the ones Plaintiffs propounded.

*SHADOW LIBRARY*

Plaintiffs defined "shadow library" broadly to encompass all repositories containing unauthorized copyrighted works. Meta instead limited the definition to only a handful of specifically identified repositories. Nothing in Plaintiffs' definition restricts the term in that manner. By replacing Plaintiffs' definition with its own, Meta materially narrows the scope of the requests and withholds information concerning any other repositories that fall within Plaintiffs' definition. Meta must perform its searches and prepare its responses in accord with Plaintiffs' definitions, not its own.

**Interrogatory Responses**

As explained to Meta's counsel by U.S. Magistrate Judge Thomas S. Hixon in the pending *Kadrey* litigation, "Plaintiffs are allowed to take discovery into the full scope of their copyright claim, not just part or most of their claim." See *Kadrey,* Dkt. 399, p. 3. A party may not evade discovery by providing partial, qualified, or intentionally generalized responses. See Fed. R. Civ. P. 33(b)(3); Rule 37(a)(4) (providing that an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond).

Meta has served evasive and incomplete responses to all of Plaintiffs' ROGs, failing to answer them as propounded. Plaintiffs agreed to a compressed discovery schedule ending in September in reliance on Meta's commitment to provide these foundational facts promptly, and Plaintiffs' trial preparation depends upon receiving that information without further delay. Meta cannot shift its burden onto Plaintiffs by requiring Plaintiff to provide its copyrighted works before conducting a reasonable search.

*ROG No. 1*

Plaintiffs maintain the position that Meta must identify those of Plaintiffs' copyrighted works it obtained from the web. The onus of identifying those works, their associated CMI, and the sources

Jessica E. Phillips                                                    Privileged & Confidential
June 30, 2026
Page 4

from which they were derived, rests with Meta, and Meta alone. Even so, Plaintiffs have already provided Meta with ISBNs and is providing text for many of the works for this purpose. Notwithstanding, Meta has not, to date, identified *any* of Plaintiffs' works obtained from a specified Shadow Library

Meta's response states that it will only be searching its files for Plaintiffs' works that Meta downloaded from Anna's Archive, Books3 and LibGen. But Plaintiffs asked Meta to identify all works obtained from any SHADOW LIBRARIES, which include the aforementioned repositories, but are not limited to those alone.  Meta needs to search which works it obtained from any online repository or electronic collection or source of digital copies of copyrighted books, articles, media and similar materials, **including but not limited to** the datasets commonly known as Anna's Archive, Bibliotik, Books3, C4, Library Genesis (or LibGen), Sci-Hub, The Pile, Z-Library, Bespoke, CORE, UCSF, NDLI, and m2c2, SpiderMate GitHub, CCNews, Deeper Web Crawl, and CommonCrawl.[2]

*ROG No. 2*

Similarly, Meta may not limit its search of Plaintiffs' works it obtained through WEB SCRAPING to a search of Meta's SpiderMate web archiver. WEB SCRAPING, as we defined in our requests, means the automated, semi-automated, programmatic, or systematic extraction, collection, copying, downloading, crawling, indexing, harvesting, or retrieval of data, text, books, articles, images, metadata, or other content from websites, online repositories, databases, shadow libraries, torrent indexes, APIs, or internet-accessible sources for purposes including, without limitation, aggregation, storage, processing, Dataset creation, Corpus creation, or training, fine-tuning, evaluating, benchmarking, validating, or developing machine learning systems or Large Language Models.

In addition to its own SpiderMate, Meta has previously disclosed additional sources of web scraping (*see e.g.*, Meta_Kadrey 000880065 and 00161479) and must search for works obtained through **any** Web Scraping efforts, including **but not limited to** Bespoke, CORE, UCSF, NDLI, and m2c2, GitHub, CCNews, Deeper Web Crawl, and CommonCrawl.

*ROG No. 3*

Meta's unilateral limitations outlined in response to ROG Nos. 1 and 2 are likewise unwarranted for any response to ROG 3. Meta must identify when and how it obtained each work from a SHADOW LIBRARY or WEB SCRAPING, and identify the source or sources, date or dates of acquisition, and means or method of acquisition.

---

[2] Meta's interrogatory response is narrower even than its own already narrowed definition. Meta objects to the term SHADOW LIBRARY saying in its definitional objections that it will construe the term to include Anna's Archive, Bibliotik, Books3, Library Genesis (LibGen), Sci-Hub, The Pile, and Z-Library but then says in its interrogatory response that Meta will only conduct a search of Anna's Archive, Books3, and LibGen.

Jessica E. Phillips
June 30, 2026
Page 5

Privileged & Confidential

*ROG No. 4*

Meta has objected to this Interrogatory arguing that the term "train" is vague and ambiguous and that it will interpret the term "train" and "the act of pre-training and/or fine-tuning a large language model." Plaintiffs do not accept Meta's unilateral narrowing of this interrogatory. Deferring a substantive response to unspecified future date is not compliant with Rule 33, which does not permit a party to avoid answering an interrogatory by promising future supplementation. Meta necessarily possesses information concerning the datasets used to train its models and has represented that it is investigating which Plaintiffs' works are contained within those datasets. The interrogatory seeks the results of that investigation as they presently exist—not only those results Meta chooses to disclose after its investigation is complete.

Plaintiffs are entitled to know which of its works were used, in whole or in part, to train any of Meta's LLM models. In this sense, Meta should disclose which of Plaintiffs' works were used to pre-train, train, fine-tune, or post-train any of Meta's LLM models. To be clear, the term "train" includes all processes taken after Meta's acquisition of the Work (or any part thereof), *including but not limited to* the process of teaching any model (commercial or otherwise) to understand and digest the data. This necessarily includes ablations of the copyrighted works.

*ROG No. 5*

Meta's response to this ROG suffers the same deficiencies as those outlined above and inappropriately narrows the obligation to respond to a specific inquiry with a "high-level general description" instead of a straightforward answer. Plaintiffs request a complete response to identify, on a work-by-work basis, each instance when a work was used to train an LLM model (as defined by Plaintiffs, not Meta), including when and how.

*ROG No. 6*

This is a straightforward ROG calling for a straightforward answer asking Meta to identify each work from which it removed or altered any Copyright Management Information. This information is solely within Meta's possession and control and it cannot delay further response by suggesting that it may need additional information from Plaintiffs to identify responsive information.

Whether Meta removed or altered Copyright Management Information, directly or through third parties acting on its behalf, is uniquely within Meta's possession, custody, or control. Meta therefore must identify responsive works based on the information presently available.

*ROG No. 7*

Plaintiffs are willing to meet and confer regarding this scope of this request and to better understand Meta's concerns.

Jessica E. Phillips                                    Privileged & Confidential
June 30, 2026
Page 6

ROG No. 8

Meta's objection that this ROG is improperly compound lacks merit. The interrogatory seeks a single category of information—the factual basis for each response to Plaintiffs' Requests for Admission that is not an unqualified admission. The requested facts, knowledgeable persons, supporting documents, and corresponding RFA numbers are logically subsumed within that single inquiry and therefore do not constitute separate interrogatories under Rule 33. Moreover, Local Rules 33-2 and 36-2 expressly contemplate discovery concerning the factual basis for denials of requests for admission. Meta's statement that it will respond "to the extent required" by those Local Rules is not a response. Defendant must identify, for each Request for Admission that was denied or only partially admitted, the supporting facts, persons with knowledge, and responsive documents presently known after a reasonable inquiry, and supplement its response if additional information is later discovered.

As invited by Meta's response to this ROG, counsel welcomes further discussion about the scope of Meta's intended supplement.

**Requests for Admissions**

*RFA No. 1*

Meta has admitted only a different proposition than the one Plaintiffs requested. Meta's qualified admission improperly limits the defined term "shadow library" to a self-selected subset of repositories. Plaintiffs' definition is broader and encompasses any repository falling within the defined criteria, whether or not expressly named. By substituting its own narrower definition, Meta must now supplement its response by applying Plaintiffs' definition of "shadow library" and admitting or denying the RFA accordingly.

*RFA No. 2*

Meta's response to this RFA suffers from the same deficiency as its response to RFA No. 1. By substituting its own narrowed definition of "shadow library," and "web scraping," Meta materially alters the Request and admits only a different, narrower proposition than the ones Plaintiffs served.

*RFA No. 3*

Meta again responds based on its own narrowed definitions of expressly defined terms and fails to answer the Request as propounded. The RFA asked Meta to admit whether it used any of Plaintiffs' Works "in whole or in part."Meta instead limited its response to use of the entirety of each Work. That qualification materially alters the Request and leaves unanswered whether Meta used portions of Plaintiffs' Works.

Jessica E. Phillips                                                     Privileged & Confidential
June 30, 2026
Page 7

**Requests for Production**

Plaintiffs have made but one simple request for the production of documents, asking for unredacted copies of all dispositive motion briefings filed in *Kadrey* and *Entrepreneur Media*. To date, Plaintiffs have not received those documents and Meta has objected to providing them in the absence of an ESI Order. This is an unnecessary delay of Meta's own making. Meta has had Plaintiffs' draft of the ESI Order since June 11, 2026 and has not responded to Plaintiffs' repeated requests to finalize the Order. Please provide Plaintiffs' counsel with the status of third-parties notices and a response to the draft of the ESI Order no later than July 6, 2026 to facilitate a production of these documents no later than July 10, 2026.

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

Please provide your availability to confer on Thursday July 2 or Monday, July 6 to address these issues. Please provide complete supplemental responses to Plaintiffs' First Set of Written Discovery by July 10, 2026.

Sincerely,

*/s/ Lauren E. Martin*

Lauren E. Martin

# EXHIBIT 1

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

*Counsel for Defendant Meta Platforms, Inc.*

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
BOBBY A. GHAJAR (198719)
bghajar@cooley.com
3 Embarcadero Center 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000

MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN
(260865) lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000

PHILLIP MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:25-cv-09579-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S THIRD SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:**    **PLAINTIFF ENTREPRENEUR MEDIA, LLC**

**RESPONDING PARTY:**    **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:**    **THREE**

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 33, Defendant Meta Platforms, Inc. ("Meta") hereby objects and responds as follows to Plaintiff Entrepreneur Media, LLC's ("Plaintiff") Third Set of Interrogatories ("Interrogatories").

**I.    RESPONSES TO ALL INTERROGATORIES**

**1.** Meta's responses to these Interrogatories are made to the best of Meta's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of Meta's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

**2.** To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the Protective Order (Dkt. 53) governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction.

**3.** Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

**II.    OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

Whether or not separately set forth in response to each Interrogatory, Meta makes these

objections to the following Instructions and Definitions.

**1.**    Meta objects to the definition of "META," "YOU," and "YOUR" as overbroad, unduly burdensome, and disproportionate to the needs of the case.  Meta will construe "META," "YOU," or "YOUR" to mean Meta Platforms, Inc.

**2.**    Meta objects to the definitions of "COMMUNICATIONS," "DOCUMENTS," and "INFORMATION" to the extent these definitions are inconsistent with and otherwise seek to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the protocol regarding Electronic Discovery ("ESI Order") entered by the Court (Dkt. 60).

**3.**    Meta objects to the definitions of "DOCUMENT(S)" or "INFORMATION" to the extent they seek to expand or alter the scope of the Federal Rules of Civil Procedure, the Local Rules of this Court, or the ESI Order entered in this case.  Meta further objects to these definitions to the extent they seek Meta to produce "Information" that is not already in the form of a "Document."  Meta further objects to these definitions to the extent they seek Meta to produce documents that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), which are unduly burdensome to preserve and search, or which otherwise, under the proportionality factors, should not be preserved.

**4.**    Meta objects to the definition of "LLAMA" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case.  In particular, the phrase "any predecessor, successor, derivative, fine-tuned, distilled, or modified versions thereof" fails to adequately describe the scope of this term. Similarly, inclusion of any "components, training processes, evaluation processes, datasets, embeddings, or systems used to develop, train, fine-tune, evaluate, or deploy such models" renders the definition confusing and overly broad.  Meta will construe "LLAMA" to mean Llama 1, Llama 2, Llama 3, and Llama 4.

**5.**    Meta objects to the definition of "REINFORCEMENT LEARNING WITH HUMAN FEEDBACK" or "RLHF" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case.  In particular, the phrase "or any similar technique in which human judgments are used to shape or refine the model's outputs" renders the definition

**DEF. 1ST SUPP. RESP. TO
PLTF'S 3RD SET OF ROGS
CASE NO. 3:25-CV-09579-VC**

vague, ambiguous, overly broad, and confusing.

6.      Meta objects to the definition of "USE" or "USED" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case.  In particular, "otherwise exploiting content in any manner" is unintelligibly ambiguous and fails to adequately describe the scope of these terms.  In addition, the terms "accessing, copying, downloading, storing, ingesting, pretraining on, training on, fine-tuning with, . . . evaluating, testing, indexing, embedding, transforming" and "development, training, alignment, or deployment" are not defined, and are susceptible to multiple definitions, rendering this definition ambiguous.  Meta further objects to this definition to the extent that it incorporates the objectionable portions of the term "REINFORCEMENT LEARNING WITH HUMAN FEEDBACK."  Meta will define "USE" or "USED" to mean, in the context of training data for large language models, "downloading, [] training on, [and utilizing in the] fine-tuning [of models]."

7.      Meta objects to Instruction 1 to the extent that it purports to require more of Meta than any obligation imposed by law, would subject Meta to unreasonable, disproportionate and undue burden and expense, and would seek to impose upon Meta an obligation to investigate or discover information or materials in the possession, custody, or control of third parties.

8.      Meta objects to Instruction 2 as overbroad and unduly burdensome to the extent that it purports to require more of Meta than any obligation imposed by law and would subject Meta to unreasonable, disproportionate, and undue burden and expense.  Meta will provide Plaintiff with a privilege log in accordance with Rule 26 and the ESI Order entered in this case (Dkt. 60).

### III.    GENERAL OBJECTIONS

Meta hereby incorporates the following general objections into each of its specific responses and objections to the individual Interrogatories as if fully set forth therein:

**1.**    Meta incorporates by reference each and every General Objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection in any specific Response shall not be interpreted as a waiver of any General Objection to that Response.

**2.**    Any information provided in response to any individual Interrogatory is made without waiver of, and subject to, the General Objections and any additional objections asserted in response to that specific Interrogatory.

**3.**    Meta objects to the Interrogatories to the extent that they impose any differing or additional obligations from those required by the Federal Rules, the Local Rules, or any other applicable rule, law, or doctrine, the ESI and Protective Orders entered in this action (the "Applicable Laws, Rules, and Agreements"), on the ground that such a requirement exceeds the scope of permissible discovery and attempts to impose an unreasonable burden and expense on Meta.  To the extent any Interrogatory conflicts with, or purports to impose additional or different duties and obligations, Meta will respond in accordance with the Applicable Laws, Rules, and Agreements.

**4.**    Meta objects to the Interrogatories to the extent that they are overly broad, vague, ambiguous, and unduly burdensome; or seek documents and information that are neither relevant nor proportional to the needs of this action.

**5.**    Meta objects to the Interrogatories to the extent they seek information or documents or seek to impose a search for information or documents: (a) not within Meta's possession, custody, or control; (b) not maintained by Meta in the normal course of business; (c) already in the possession, custody, or control of Plaintiff; (d) readily available through public sources or from sources that are more convenient, less burdensome, or less expensive; or (e) from sources that are more readily available to Plaintiff than to Meta.  Meta further objects to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

**6.**    Meta objects to the Interrogatories to the extent that they seek documents and information protected from disclosure by privileges and other protections from production, including, without limitation: (a) the attorney-client privilege; (b) the work-product doctrine; or (c) any other constitutional, statutory, common law or regulatory protection, immunity, or proscription from disclosure.  In responding to the Interrogatories, Meta will not provide information or documents protected by such privileges.  Where Meta withholds information under claim of privilege, Meta will adhere to the requirements under the ESI Order.  Meta does not intend the inadvertent production of any privileged or protected information to constitute a waiver of Meta's rights to assert any applicable privilege or protection, and Meta further reserves the right to demand that Plaintiff return, destroy, or sequester any privileged or protected documents inadvertently produced and all copies thereof consistent with Fed. R. Civ. P. 26(b)(5)(B) and the terms and conditions of the ESI and Protective Orders entered in this action.

**7.**    Meta objects to the Interrogatories to the extent that they purport to require Meta to provide information or documents in violation of a legal, contractual, or other obligation of nondisclosure owed to a third party.  Meta will not provide information or documents subject to any such obligation unless and until it receives the necessary consent from any such third party or, in the absence of such consent, unless and until it is ordered to do so by a court of competent jurisdiction.

**8.**    Meta objects to the Interrogatories to the extent they call for, or can be interpreted as calling for, Meta to make legal conclusions, or to the extent they assume disputed issues or are phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper.

**9.**    Meta objects to the Interrogatories to the extent that they seek confidential, trade secret, competitively sensitive, business, financial, or other proprietary information.  To the extent documents or information containing any such information is nonprivileged, responsive to the Interrogatories, and are not otherwise objectionable, Meta will only produce such documents and information subject to the ESI and Protective Orders entered in this action.  Meta further reserves the right to redact or otherwise withhold any confidential, proprietary, trade secret, or competitively

sensitive information that is neither relevant nor proportional to the needs of this action.

**10.** Meta objects to the Interrogatories to the extent they seek information or documents that are not proportionate to the needs of the case and/or not relevant to any party's claims or defenses.

**11.** Meta objects to the Interrogatories that seek to impose an obligation to investigate or discover information or materials from third parties or sources that are equally accessible to Plaintiff as duplicative, overbroad, unduly burdensome, and oppressive.

**12.** Meta reserves the right to assert additional objections, or to supplement its Responses as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

**IV.    OBJECTIONS AND RESPONSES TO INDIVIDUAL INTERROGATORIES**

**INTERROGATORY NO. 19:**

For each version of LLAMA, identify by title, author, ISBN (if applicable), and publication date each work that is: (a) identified in Ex A to the complaint; (b) published under Entrepreneur Press imprint; (c) an issue of Entrepreneur Magazine; (d) an article published in Entrepreneur Magazine; or (e) any other content bearing the name "Entrepreneur Media," "Entrepreneur Press," "Entrepreneur Magazine," or "Franchise 500" in its metadata, copyright notice, or text that was included in any dataset USED for pretraining, fine-tuning, or reinforcement learning with human feedback (RLHF) of that version of LLAMA. For each such work, identify the dataset(s) in which it appeared and the source from which META obtained the work, including but not limited to Books3/LibGen, Common Crawl, or licensed acquisition.

**RESPONSE TO INTERROGATORY NO. 19:**

Meta incorporates by reference its objections and definitions above, including to the terms "LLAMA," "USED," and "RLHF."

Meta objects to this Interrogatory as vague and ambiguous as to the terms "dataset" and "source."

Meta objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, including because it purports to require Meta to determine whether any of

Plaintiff's purported works, including those not yet identified by Plaintiff, are contained within particular datasets.

Meta objects to this Interrogatory to the extent that it seeks information outside of Meta's possession, custody, and control.

Meta objects to this Interrogatory on the ground that Meta has produced and will produce potentially relevant datasets to Plaintiff, which render the information sought by this Interrogatory as equally accessible to Plaintiff as it is to Meta.

**This response is designated as Highly Confidential - Attorneys' Eyes Only under the Protective Order.**



**INTERROGATORY NO. 20:**

Identify and describe all content from, inter alia, entrepreneur.com, franchise500.com, entm.ag, howsuccesshappens.com, secondact.com, secondactmag.com, secondactliving.com, or from any other website that bears the name "Entrepreneur," "Entrepreneur Media," "Entrepreneur

Press," or "Franchise 500" in its domain name, URL path, or metadata that was included in any dataset USED for pretraining, fine-tuning, or RLHF of any version of LLAMA, including by identifying the dataset(s) in which such content appeared and, the approximate volume of such content (measured in tokens or documents).

**RESPONSE TO INTERROGATORY NO. 20:**

Meta incorporates by reference its objections and definitions above, including to the terms "USED," "RLHF," and "LLAMA."

Meta objects to this Interrogatory as vague and ambiguous as to the terms "content" and "dataset."

Meta objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, including because it purports to require Meta to determine whether any of Plaintiff's purported works (or portions thereof), including those not yet identified by Plaintiff, are contained within particular datasets. Meta further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information about all data that include the word "Entrepreneur."

Meta objects to this Interrogatory to the extent that it seeks information outside of Meta's possession, custody, and control.

Meta objects to this Interrogatory on the ground that Meta has produced and will produce potentially relevant datasets to Plaintiff, which render the information sought by this Interrogatory as equally accessible to Plaintiff as it is to Meta.

**This response is designated as Highly Confidential - Attorneys' Eyes Only under the Protective Order.**



DEF. 1ST SUPP. RESP. TO
PLTF'S 3RD SET OF ROGS
CASE NO. 3:25-CV-09579-VC

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20 (JUNE 11, 2026):**

This response is designated as Highly Confidential - Attorneys' Eyes Only under the Protective Order.



DEF. 1ST SUPP. RESP. TO
PLTF'S 3RD SET OF ROGS
CASE NO. 3:25-CV-09579-VC

Dated: June 11, 2026                    COOLEY LLP


By:*/s/ Phillip E. Morton*
     Phillip E. Morton


Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email:  khartnett@cooley.com
mweinstein@cooley.com
lstameshkin@cooley.com

Bobby A. Ghajar
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Phillip E. Morton (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON
LLP

**DEF. 1ST SUPP. RESP. TO
PLTF'S 3RD SET OF ROGS
CASE NO. 3:25-CV-09579-VC**

1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of California.  I am employed in Santa Clara County, California. I am over the age of eighteen years, and not a party to the within action. My business address is Cooley LLP, 3175 Hanover Street, Palo Alto, CA 94304. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT META PLATFORMS, INC.'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S THIRD SET OF INTERROGATORIES [NOS. 19-20]**

(BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

HUESTON HENNIGAN LLP
Moez M. Kaba (#257456)
Michael M. Purpura (#338216)
Lee Linderman (#280743)
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Email: mkaba@hueston.com
Email:  mpurpura@hueston.com
Email:  llinderman@hueston.com

NEWMEYER & DILLION LLP
Michael B. McClellan (#241570)
Benjamin P. Pugh (#202025)
Jason L. Morris (#295271)
Harlye S. Carlton (#261641)
895 Dove Street, Second Floor
Newport Beach, California 92660
Email:  Michael.McClellan@ndlf.com
Email:  benjamin.pugh@ndlf.com
Email:  Jason.Morris@ndlf.com
Email:  Harlye.Carlton@ndlf.com

Executed on June 11, 2026, at Palo Alto, California.

*/s/ Elizabeth L. Stameshkin*
Elizabeth L. Stameshkin

DEF. 1ST SUPP. RESP. TO
PLTF'S 3RD SET OF ROGS
CASE NO. 3:25-CV-09579-VC

# EXHIBIT 2

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

*Counsel for Defendant Meta Platforms, Inc.*

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
BOBBY A. GHAJAR (198719)
bghajar@cooley.com
3 Embarcadero Center 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000

MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN
(260865) lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000

PHILLIP MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 3:25-cv-09579-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S THIRD SET OF INTERROGATORIES** |

**DEF. 1ST SUPP. RESP. TO
PLTF'S 3RD SET OF ROGS
CASE NO. 3:25-CV-09579-VC**

**PROPOUNDING PARTY:**     **PLAINTIFF ENTREPRENEUR MEDIA, LLC**

**RESPONDING PARTY:**      **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:**            **THREE**

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 33, Defendant Meta Platforms, Inc. ("Meta") hereby objects and responds as follows to Plaintiff Entrepreneur Media, LLC's ("Plaintiff") Third Set of Interrogatories ("Interrogatories").

## I.    RESPONSES TO ALL INTERROGATORIES

**1.**    Meta's responses to these Interrogatories are made to the best of Meta's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of Meta's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

**2.**    To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the Protective Order (Dkt. 53) governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction.

**3.**    Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II.    OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Whether or not separately set forth in response to each Interrogatory, Meta makes these

objections to the following Instructions and Definitions.

1.    Meta objects to the definition of "META," "YOU," and "YOUR" as overbroad, unduly burdensome, and disproportionate to the needs of the case.  Meta will construe "META," "YOU," or "YOUR" to mean Meta Platforms, Inc.

2.    Meta objects to the definitions of "COMMUNICATIONS," "DOCUMENTS," and "INFORMATION" to the extent these definitions are inconsistent with and otherwise seek to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the protocol regarding Electronic Discovery ("ESI Order") entered by the Court (Dkt. 60).

3.    Meta objects to the definitions of "DOCUMENT(S)" or "INFORMATION" to the extent they seek to expand or alter the scope of the Federal Rules of Civil Procedure, the Local Rules of this Court, or the ESI Order entered in this case.  Meta further objects to these definitions to the extent they seek Meta to produce "Information" that is not already in the form of a "Document."  Meta further objects to these definitions to the extent they seek Meta to produce documents that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), which are unduly burdensome to preserve and search, or which otherwise, under the proportionality factors, should not be preserved.

4.    Meta objects to the definition of "LLAMA" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case.  In particular, the phrase "any predecessor, successor, derivative, fine-tuned, distilled, or modified versions thereof" fails to adequately describe the scope of this term. Similarly, inclusion of any "components, training processes, evaluation processes, datasets, embeddings, or systems used to develop, train, fine-tune, evaluate, or deploy such models" renders the definition confusing and overly broad.  Meta will construe "LLAMA" to mean Llama 1, Llama 2, Llama 3, and Llama 4.

5.    Meta objects to the definition of "REINFORCEMENT LEARNING WITH HUMAN FEEDBACK" or "RLHF" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case.  In particular, the phrase "or any similar technique in which human judgments are used to shape or refine the model's outputs" renders the definition

vague, ambiguous, overly broad, and confusing.

6.      Meta objects to the definition of "USE" or "USED" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case.  In particular, "otherwise exploiting content in any manner" is unintelligibly ambiguous and fails to adequately describe the scope of these terms.  In addition, the terms "accessing, copying, downloading, storing, ingesting, pretraining on, training on, fine-tuning with, . . . evaluating, testing, indexing, embedding, transforming" and "development, training, alignment, or deployment" are not defined, and are susceptible to multiple definitions, rendering this definition ambiguous.  Meta further objects to this definition to the extent that it incorporates the objectionable portions of the term "REINFORCEMENT LEARNING WITH HUMAN FEEDBACK."  Meta will define "USE" or "USED" to mean, in the context of training data for large language models, "downloading, [] training on, [and utilizing in the] fine-tuning [of models]."

7.      Meta objects to Instruction 1 to the extent that it purports to require more of Meta than any obligation imposed by law, would subject Meta to unreasonable, disproportionate and undue burden and expense, and would seek to impose upon Meta an obligation to investigate or discover information or materials in the possession, custody, or control of third parties.

8.      Meta objects to Instruction 2 as overbroad and unduly burdensome to the extent that it purports to require more of Meta than any obligation imposed by law and would subject Meta to unreasonable, disproportionate, and undue burden and expense.  Meta will provide Plaintiff with a privilege log in accordance with Rule 26 and the ESI Order entered in this case (Dkt. 60).

## III.    GENERAL OBJECTIONS

Meta hereby incorporates the following general objections into each of its specific responses and objections to the individual Interrogatories as if fully set forth therein:

1.      Meta incorporates by reference each and every General Objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection in any specific Response shall not be interpreted as a waiver of any General Objection to that Response.

2.      Any information provided in response to any individual Interrogatory is made without waiver of, and subject to, the General Objections and any additional objections asserted in response to that specific Interrogatory.

3.      Meta objects to the Interrogatories to the extent that they impose any differing or additional obligations from those required by the Federal Rules, the Local Rules, or any other applicable rule, law, or doctrine, the ESI and Protective Orders entered in this action (the "Applicable Laws, Rules, and Agreements"), on the ground that such a requirement exceeds the scope of permissible discovery and attempts to impose an unreasonable burden and expense on Meta.  To the extent any Interrogatory conflicts with, or purports to impose additional or different duties and obligations, Meta will respond in accordance with the Applicable Laws, Rules, and Agreements.

4.      Meta objects to the Interrogatories to the extent that they are overly broad, vague, ambiguous, and unduly burdensome; or seek documents and information that are neither relevant nor proportional to the needs of this action.

5.      Meta objects to the Interrogatories to the extent they seek information or documents or seek to impose a search for information or documents: (a) not within Meta's possession, custody, or control; (b) not maintained by Meta in the normal course of business; (c) already in the possession, custody, or control of Plaintiff; (d) readily available through public sources or from sources that are more convenient, less burdensome, or less expensive; or (e) from sources that are more readily available to Plaintiff than to Meta.  Meta further objects to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

**6.** Meta objects to the Interrogatories to the extent that they seek documents and information protected from disclosure by privileges and other protections from production, including, without limitation: (a) the attorney-client privilege; (b) the work-product doctrine; or (c) any other constitutional, statutory, common law or regulatory protection, immunity, or proscription from disclosure. In responding to the Interrogatories, Meta will not provide information or documents protected by such privileges. Where Meta withholds information under claim of privilege, Meta will adhere to the requirements under the ESI Order. Meta does not intend the inadvertent production of any privileged or protected information to constitute a waiver of Meta's rights to assert any applicable privilege or protection, and Meta further reserves the right to demand that Plaintiff return, destroy, or sequester any privileged or protected documents inadvertently produced and all copies thereof consistent with Fed. R. Civ. P. 26(b)(5)(B) and the terms and conditions of the ESI and Protective Orders entered in this action.

**7.** Meta objects to the Interrogatories to the extent that they purport to require Meta to provide information or documents in violation of a legal, contractual, or other obligation of nondisclosure owed to a third party. Meta will not provide information or documents subject to any such obligation unless and until it receives the necessary consent from any such third party or, in the absence of such consent, unless and until it is ordered to do so by a court of competent jurisdiction.

**8.** Meta objects to the Interrogatories to the extent they call for, or can be interpreted as calling for, Meta to make legal conclusions, or to the extent they assume disputed issues or are phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper.

**9.** Meta objects to the Interrogatories to the extent that they seek confidential, trade secret, competitively sensitive, business, financial, or other proprietary information. To the extent documents or information containing any such information is nonprivileged, responsive to the Interrogatories, and are not otherwise objectionable, Meta will only produce such documents and information subject to the ESI and Protective Orders entered in this action. Meta further reserves the right to redact or otherwise withhold any confidential, proprietary, trade secret, or competitively

sensitive information that is neither relevant nor proportional to the needs of this action.

**10.**    Meta objects to the Interrogatories to the extent they seek information or documents that are not proportionate to the needs of the case and/or not relevant to any party's claims or defenses.

**11.**    Meta objects to the Interrogatories that seek to impose an obligation to investigate or discover information or materials from third parties or sources that are equally accessible to Plaintiff as duplicative, overbroad, unduly burdensome, and oppressive.

**12.**    Meta reserves the right to assert additional objections, or to supplement its Responses as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

**IV.    OBJECTIONS AND RESPONSES TO INDIVIDUAL INTERROGATORIES**

**INTERROGATORY NO. 19:**

For each version of LLAMA, identify by title, author, ISBN (if applicable), and publication date each work that is: (a) identified in Ex A to the complaint; (b) published under Entrepreneur Press imprint; (c) an issue of Entrepreneur Magazine; (d) an article published in Entrepreneur Magazine; or (e) any other content bearing the name "Entrepreneur Media," "Entrepreneur Press," "Entrepreneur Magazine," or "Franchise 500" in its metadata, copyright notice, or text that was included in any dataset USED for pretraining, fine-tuning, or reinforcement learning with human feedback (RLHF) of that version of LLAMA. For each such work, identify the dataset(s) in which it appeared and the source from which META obtained the work, including but not limited to Books3/LibGen, Common Crawl, or licensed acquisition.

**RESPONSE TO INTERROGATORY NO. 19:**

Meta incorporates by reference its objections and definitions above, including to the terms "LLAMA," "USED," and "RLHF."

Meta objects to this Interrogatory as vague and ambiguous as to the terms "dataset" and "source."

Meta objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, including because it purports to require Meta to determine whether any of

Plaintiff's purported works, including those not yet identified by Plaintiff, are contained within particular datasets.

Meta objects to this Interrogatory to the extent that it seeks information outside of Meta's possession, custody, and control.

Meta objects to this Interrogatory on the ground that Meta has produced and will produce potentially relevant datasets to Plaintiff, which render the information sought by this Interrogatory as equally accessible to Plaintiff as it is to Meta.

**This response is designated as Highly Confidential - Attorneys' Eyes Only under the Protective Order.**

Subject to and without waiving the foregoing objections, Meta states as follows: To date, Meta has produced datasets with potentially relevant information therein as follows: with respect to Llama 1 and Llama 2, Meta refers Plaintiff to the "b3g" dataset produced at META_KADREY_DATA_001, the "c4" and "edouard_cc" datasets produced at META_KADREY_DATA_002, and the "ccnet_new" dataset produced at META_KADREY_DATA_003. With respect to Llama 3, Meta refers Plaintiff to the "b3g" dataset produced at META_KADREY_DATA_001, the "Libgen," "c4," and "cc_md" datasets produced as part of META_KADREY_DATA_004 and META_KADREY_DATA_005. With respect to Llama 4, Meta refers Plaintiff to the "b3g" dataset produced at META_KADREY_DATA_001 and the "Libgen" and "Anna's Archive" datasets produced as part of META_ENTREPRENEUR_DATA_001. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Meta will search for and produce any additional datasets used in the pre- or post-training of Llama that contain potentially relevant information responsive to this Interrogatory.

Meta's investigation is ongoing, including its collection and production of datasets, and Meta will supplement this Interrogatory as additional potentially relevant datasets are produced.

**INTERROGATORY NO. 20:**

Identify and describe all content from, inter alia, entrepreneur.com, franchise500.com, entm.ag, howsuccesshappens.com, secondact.com, secondactmag.com, secondactliving.com, or from any other website that bears the name "Entrepreneur," "Entrepreneur Media," "Entrepreneur

Press," or "Franchise 500" in its domain name, URL path, or metadata that was included in any dataset USED for pretraining, fine-tuning, or RLHF of any version of LLAMA, including by identifying the dataset(s) in which such content appeared and, the approximate volume of such content (measured in tokens or documents).

**RESPONSE TO INTERROGATORY NO. 20:**

Meta incorporates by reference its objections and definitions above, including to the terms "USED," "RLHF," and "LLAMA."

Meta objects to this Interrogatory as vague and ambiguous as to the terms "content" and "dataset."

Meta objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, including because it purports to require Meta to determine whether any of Plaintiff's purported works (or portions thereof), including those not yet identified by Plaintiff, are contained within particular datasets. Meta further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks information about all data that include the word "Entrepreneur."

Meta objects to this Interrogatory to the extent that it seeks information outside of Meta's possession, custody, and control.

Meta objects to this Interrogatory on the ground that Meta has produced and will produce potentially relevant datasets to Plaintiff, which render the information sought by this Interrogatory as equally accessible to Plaintiff as it is to Meta.

**This response is designated as Highly Confidential - Attorneys' Eyes Only under the Protective Order.**

Subject to and without waiving the foregoing objections, Meta states as follows: To date, Meta has produced datasets with potentially relevant information therein as follows: with respect to Llama 1 and Llama 2, Meta refers Plaintiff to the "c4" and "edouard_cc" datasets produced at META_KADREY_DATA_002, and the "ccnet_new" dataset produced at META_KADREY_DATA_003. With respect to Llama 3, Meta refers Plaintiff to the "c4" and "cc_md" datasets produced as part of META_KADREY_DATA_004. Pursuant to Rule 33(d) of

the Federal Rules of Civil Procedure, Meta will search for and produce any additional datasets used in the pre- or post-training of Llama that contain potentially relevant information responsive to this Interrogatory.

Meta's investigation is ongoing, including its collection and production of datasets, and Meta will supplement this Interrogatory as additional potentially relevant datasets are produced.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20 (JUNE 11, 2026):**

**This response is designated as Highly Confidential - Attorneys' Eyes Only under the Protective Order.**

Subject to and without waiving the foregoing objections, and following a reasonable inquiry, Meta further responds as follows:

Meta supplements this response as part of a compromise reached with Entrepreneur regarding the Common Crawl associated datasets previously produced and identified above in Meta's initial response to Interrogatory No. 20 ("c4", "edouard_cc", "ccnet_new" and "cc_md" datasets) and the "ccnet" dataset (a dataset associated with Llama 1 and produced at META_KADREY_DATA_002A) (collectively, "the CC Datasets"). Relying on the seven domains expressly identified by Entrepreneur in the text of Interrogatory No. 20 (namely, entrepreneur.com, franchise500.com, entm.ag, howsuccesshappens.com, secondact.com, secondactmag.com, and secondactliving.com) (the "Identified EM Domains"), Meta had a reasonable search of the URL metadata of the CC Datasets conducted to identify content indicated as originating from a URL containing an Identified EM Domain.

The results of that search are included in the native Excel spreadsheet attached as Exhibit A. For Entrepreneur's convenience, each row of Exhibit A includes aggregated information about each unique URL containing an Identified EM Domain located in the URL metadata of the CC Datasets. That aggregated information includes (1) the unique URL, (2) the CC Datasets that include content with that unique URL, (3) the specific file(s) of the CC Datasets that include content with that unique URL, (4) the number of CC Datasets that include content with that unique URL, (5) the total number of times content with that unique URL was identified in the CC Datasets, and (6) the Identified EM Domain associated with that unique URL.

Meta's investigation is ongoing, including its collection and production of datasets, and further analysis thereof. Meta will supplement this Interrogatory as additional responsive information becomes available.

DEF. 1ST SUPP. RESP. TO
PLTF'S 3RD SET OF ROGS
CASE NO. 3:25-CV-09579-VC

Dated: June 11, 2026

COOLEY LLP

By:/s/ *Phillip E. Morton*
    Phillip E. Morton

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email:  khartnett@cooley.com
mweinstein@cooley.com
lstameshkin@cooley.com

Bobby A. Ghajar
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Phillip E. Morton (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON
LLP

11

1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of California.  I am employed in Santa Clara County, California. I am over the age of eighteen years, and not a party to the within action. My business address is Cooley LLP, 3175 Hanover Street, Palo Alto, CA 94304. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT META PLATFORMS, INC.'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S THIRD SET OF INTERROGATORIES [NOS. 19-20]**

(BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

HUESTON HENNIGAN LLP
Moez M. Kaba (#257456)
Michael M. Purpura (#338216)
Lee Linderman (#280743)
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Email: mkaba@hueston.com
Email:  mpurpura@hueston.com
Email:  llinderman@hueston.com

NEWMEYER & DILLION LLP
Michael B. McClellan (#241570)
Benjamin P. Pugh (#202025)
Jason L. Morris (#295271)
Harlye S. Carlton (#261641)
895 Dove Street, Second Floor
Newport Beach, California 92660
Email:  Michael.McClellan@ndlf.com
Email:  benjamin.pugh@ndlf.com
Email:  Jason.Morris@ndlf.com
Email:  Harlye.Carlton@ndlf.com

Executed on June 11, 2026, at Palo Alto, California.

*/s/ Elizabeth L. Stameshkin*
Elizabeth L. Stameshkin

DEF. 1ST SUPP. RESP. TO
PLTF'S 3RD SET OF ROGS
CASE NO. 3:25-CV-09579-VC

# EXHIBIT 3

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900


CLEARY GOTTLIEB STEEN &
HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
151 University Avenue
Palo Alto, CA 94301
Telephone: (650) 815-4131

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN (260865)
lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
BOBBY A. GHAJAR (198719)
bghajar@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
PHILLIP E. MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800


*Attorneys for Defendant Meta Platforms, Inc.*


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC, | Case No. 3:25-cv-09579-VC |
| Plaintiff, | **DEFENDANT META PLATFORMS, INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| v. | |
| META PLATFORMS, INC., | |
| Defendant. | |

**PROPOUNDING PARTY:**    **PLAINTIFF ENTREPRENEUR MEDIA, LLC**

**RESPONDING PARTY:**    **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:**    **FOUR**

Pursuant to Federal Rules of Civil Procedure Rules 26 and 34, and Local Rule 34 of the United States District Court for the Northern District of California, Defendant Meta Platforms, Inc. ("Meta") hereby supplements its objections and responses as follows to Plaintiff Entrepreneur Media, LLC's ("Plaintiff") Fourth Set of Requests for Production ("Requests").

## I.    Responses to All Requests

1.    Meta's responses to the Requests are made to the best of Meta's present knowledge, information, and belief.  Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and Meta reserves the right to amend, revise, correct, supplement, or clarify the responses and objections propounded herein.

2.    Meta reserves the right to make any use of, or to introduce at any hearing and at trial, documents responsive to the Requests but discovered subsequent to the date of Meta's initial production, including, but not limited to, any documents obtained in discovery herein.

3.    To the extent that Meta agrees to produce documents in response to any Requests, Meta will respond with responsive, non-privileged information currently in its possession, custody, or control.  Meta has no duty to produce or identify information outside of its possession, custody, or control.  By stating in these responses that Meta will produce documents or is searching for documents, Meta does not represent that any document actually exists, but rather that it will make a good faith search and reasonable inquiry to ascertain whether documents responsive to these Requests do, in fact, exist and to produce such documents if they are found to exist and are within Meta's possession, custody, or control.

4.    To the extent that Meta responds to a Request by stating that Meta will provide documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the Protective Order (Dkt. 53) governing the unauthorized use or disclosure of such information or documents with a

DEF. SUPPL. RESP. TO PLTF 4TH SET OF RFPS
CASE NO. 3:25-CV-09579-VC

designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction.  Meta will produce Documents, including Communications, pursuant to the terms of the protocol regarding Electronic Discovery ("ESI Order") entered by the Court (Dkt. 60), and any agreement to produce such Documents and Communications is explicitly in view of the terms of the ESI Order.  To the extent that Meta responds to a Request, including by agreeing to search for relevant, non-privileged communications in Meta's possession, custody, or control, such response is not a representation that any particular custodian or search term is appropriate.  Meta expressly reserves the right to object to any custodians and search terms proposed by Plaintiff.

5.      The provision of a response to any of these Requests does not constitute a waiver of any objection regarding the use of said response in these proceedings.  Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility as evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever of this response and any document or thing produced in response to the Requests.

6.      Meta reserves the right to object on any ground and at any time to such other or supplemental requests for production that Plaintiff may propound involving or relating to the subject matter of these Requests.

7.      Unless otherwise stipulated in a production protocol or ordered by the Court, Meta will produce each document in response to these Requests in a form in which it is ordinarily maintained or in a reasonably usable form in accordance with the terms of the ESI Order entered by the Court (Dkt. 60).

## II.    Objections to Instructions and Definitions

Whether or not separately set forth in response to each Request, Meta makes these objections to the following Instructions and Definitions.

1.      Meta objects to the definition of "META," "YOU," and "YOUR" as overbroad, unduly burdensome, and disproportionate to the needs of the case.  Meta will construe "META," "YOU," or "YOUR" to mean Meta Platforms, Inc.

**2.** Meta objects to the definitions of "COMMUNICATION," "DOCUMENT(S)," or "INFORMATION" to the extent these definitions are inconsistent with and otherwise seek to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the ESI Order entered by the Court. Meta will produce documents, including communications, pursuant to the terms of the ESI Order, and any agreement to produce such documents is explicitly in view of the terms of the ESI Order. To the extent that Meta responds to a Request, including by agreeing to search for relevant, non-privileged communications in Meta's possession, custody, or control, such response is not a representation that any particular custodian or search term is appropriate. Meta expressly reserves the right to object to any custodians and search terms proposed by Plaintiff.

**3.** Meta further objects to the definitions of "COMMUNICATION," "DOCUMENT(S)" or "INFORMATION" to the extent they seek to expand or alter the scope of the Federal Rules of Civil Procedure, the Local Rules of this Court, or the ESI Order entered in this case. Meta further objects to these definitions to the extent they seek Meta to produce "INFORMATION" that is not already in the form of a "COMMUNICATION" or "DOCUMENT." Meta further objects to these definitions to the extent they seek Meta to produce documents that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), which are unduly burdensome to preserve and search, or which otherwise, under the proportionality factors, should not be preserved.

**4.** Meta objects to the definition of "LLAMA" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the phrase "any predecessor, successor, derivative, fine-tuned, distilled, or modified versions thereof" fails to adequately describe the scope of this term. Similarly, inclusion of any "components, training processes, evaluation processes, datasets, embeddings, or systems used to develop, train, fine-tune, evaluate, or deploy such models" renders the definition confusing and overly broad. Meta will construe "LLAMA" to mean Llama 1, Llama 2, Llama 3, and Llama 4.

**5.** Meta objects to the definition of "GENERATIVE AI TOOL" as vague and

ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the phrase "any software, system, model, application, or service developed, operated, or deployed by META that uses artificial intelligence or machine learning" is overly broad and encompasses tools and services that are not relevant to any party's claims or defenses. Similarly, the inclusion of "multimodal models" and models that produce "code, images, or other content," renders the definition confusing and overly broad. Meta further objects to this definition to the extent that it purports to require Meta to produce documents or information concerning large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiff's allegedly copyrighted works. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the term "LLAMA." Meta will construe "GENERATIVE AI TOOL" to mean the publicly released Llama 1, Llama 2, Llama 3, Llama 4, and Muse Spark models and the user-facing Meta AI interface.

6.    Meta objects to the definition of "REINFORCEMENT LEARNING WITH HUMAN FEEDBACK" or "RLHF" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the phrase "or any similar technique in which human judgments are used to shape or refine the model's outputs" renders the definition vague, ambiguous, overly broad, and confusing.

7.    Meta objects to the definition of "CLOUD COMPUTING PROVIDER" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the phrase "hosted, distributed, made available for inference, or otherwise commercialized" is vague and ambiguous and renders the definition overly broad and confusing. Meta further objects to this definition to the extent it seeks information not in the possession, custody, or control of Meta. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the term "LLAMA."

8.    Meta objects to the definition of "USE" or "USED" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, "otherwise exploiting content in any manner" is unintelligibly ambiguous and fails to adequately

describe the scope of these terms.  In addition, the terms "accessing, copying, downloading, storing, ingesting, pretraining on, training on, fine-tuning with, . . . evaluating, testing, indexing, embedding, transforming" and "development, training, alignment, or deployment" are not defined, and are susceptible to multiple definitions, rendering this definition ambiguous.  Meta further objects to this definition to the extent that it incorporates the objectionable portions of the term "REINFORCEMENT LEARNING WITH HUMAN FEEDBACK."  Meta will define "USE" or "USED" to mean, in the context of training data for large language models, "downloading, [] training on, [and utilizing in the] fine-tuning [of models]."

9.    Meta objects to the definition of "META AI MODELS" as vague and confusing to the extent it purports to "supplement[]" and "supersede[]" a "corresponding definition in Plaintiff's prior discovery requests."  It is unclear to Meta to which prior definition Plaintiff refers.  Meta further objects that this definition is vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the phrases "foundation models developed, trained, fine-tuned, or aligned by Meta or on Meta's behalf" and "any successor, derivative, variant, or replacement model" fail to adequately describe the scope of this term.  Similarly, Meta objects to this definition to the extent that it purports to require Meta to produce documents or information concerning AI models that were not publicly released and/or were not trained on corpuses of text that include any of Plaintiff's allegedly copyrighted works.  Specifically, Meta objects to the terms "Avocado" and "Watermelon" to the extent they refer to precursor, experimental, or unreleased models.  Subject to and without waiver of the foregoing objections, Meta states that "Avocado" is the internal name used at Meta for the Muse Spark model and that "Watermelon" is an internal name used at Meta to describe an under-development model that may or may not be released in the future.  Meta will construe "META AI MODELS" to mean Llama 1, Llama 2, Llama 3, Llama 4, and Muse Spark.

10.    Meta objects to Instruction 1 to the extent that it purports to require more of Meta than any obligation imposed by law, would subject Meta to unreasonable, disproportionate and undue burden and expense, and would seek to impose upon Meta an obligation to investigate or

discover information or materials in the possession, custody, or control of third parties.

**11.** Meta objects to Instruction 2 as overbroad and unduly burdensome to the extent that it purports to require more of Meta than any obligation imposed by law and would subject Meta to unreasonable, disproportionate, and undue burden and expense. Meta will provide Plaintiff with a privilege log in accordance with Rule 26 and the ESI Order entered by the Court.

**12.** Meta objects to Instructions 3, 4, and 6 as overbroad and unduly burdensome to the extent that they purport to require more of Meta than any obligation imposed by law and would subject Meta to unreasonable, disproportionate, and undue burden and expense. Meta also objects to these instructions to the extent that they purport to require Meta to investigate and opine on documents that are not within Meta's possession, custody, or control. Meta further objects to these instructions as improperly demanding a narrative response, which is the proper subject of an interrogatory, and thereby seeking to circumvent the interrogatory limit.

**13.** Meta objects to Supplemental Instruction 1 as vague, confusing, and unduly burdensome to the extent that Plaintiff does not specify for which prior Interrogatories the "supplemental" definition of "META AI MODELS" is applicable. Meta further objects to this instruction to the extent that it purports to require more of Meta than any obligation imposed by law.

**III. General Objections**

Meta hereby incorporates the following general objections into each of its specific responses and objections to the individual Requests as if fully set forth therein:

**1.** Meta incorporates by reference each and every General Objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection in any specific Response shall not be interpreted as a waiver of any General Objection to that Response.

**2.** Any information provided in response to any individual Request is made without waiver of, and subject to, the General Objections and any additional objections asserted in response

6

to that specific Request.

3.    Meta objects to the Requests to the extent that they impose any differing or additional obligations from those required by the Federal Rules, the Local Rules, or any other applicable rule, law, or doctrine, the ESI and Protective Orders entered in this action (the "Applicable Laws, Rules, and Agreements"), on the ground that such a requirement exceeds the scope of permissible discovery and attempts to impose an unreasonable burden and expense on Meta. To the extent any Request conflicts with, or purports to impose additional or different duties and obligations, Meta will respond in accordance with the Applicable Laws, Rules, and Agreements.

4.    Meta objects to the Requests to the extent that they are overly broad, vague, ambiguous, and unduly burdensome; or seek documents and information that are neither relevant nor proportional to the needs of this action.

5.    Meta objects to the Requests to the extent they seek information or documents or seek to impose a search for information or documents: (a) not within Meta's possession, custody, or control; (b) not maintained by Meta in the normal course of business; (c) already in the possession, custody, or control of Plaintiff; (d) readily available through public sources or from sources that are more convenient, less burdensome, or less expensive; or (e) from sources that are more readily available to Plaintiff than to Meta. Meta further objects to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

6.    Meta objects to the Requests to the extent that they seek documents and information protected from disclosure by privileges and other protections from production, including, without limitation: (a) the attorney-client privilege; (b) the work-product doctrine; or (c) any other constitutional, statutory, common law or regulatory protection, immunity, or proscription from disclosure. In responding to the Requests, Meta will not produce documents protected by such privileges. Where Meta withholds information under claim of privilege, Meta will adhere to the requirements under the ESI Order entered by the Court. Meta does not intend the inadvertent production of any privileged or protected information to constitute a waiver of Meta's rights to

assert any applicable privilege or protection, and Meta further reserves the right to demand that Plaintiff return, destroy, or sequester any privileged or protected documents inadvertently produced and all copies thereof consistent with Fed. R. Civ. P. 26(b)(5)(B) and the terms and conditions of the ESI and Protective Orders entered in this action.

7.      Meta objects to the Requests to the extent that they purport to require Meta to produce documents in violation of a legal, contractual, or other obligation of nondisclosure owed to a third party.  Meta will not provide documents or information subject to any such obligation unless and until it receives the necessary consent from any such third party or, in the absence of such consent, unless and until it is ordered to do so by a court of competent jurisdiction.

8.      Meta objects to the Requests to the extent they call for, or can be interpreted as calling for, Meta to make legal conclusions, or to the extent they assume disputed issues or are phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper.

9.      Meta objects to the Requests to the extent that they seek confidential, trade secret, competitively sensitive, business, financial, or other proprietary information.  To the extent documents containing any such information are nonprivileged, responsive to the Requests, and are not otherwise objectionable, Meta will only produce such documents and information subject to the ESI and Protective Orders entered in this action.  Meta further reserves the right to redact or otherwise withhold any confidential, proprietary, trade secret, or competitively sensitive information that is neither relevant nor proportional to the needs of this action.

10.      Meta objects to the Requests to the extent they seek documents that are not proportionate to the needs of the case and/or not relevant to any party's claims or defenses.

11.      Meta objects to each of the Requests to the extent that they call for the identification or production of "all" documents and communications under circumstances in which a subset of documents would be sufficient to show the pertinent information, as such Requests are overly broad, unduly burdensome, and disproportionate to the needs of the case.

12.      Meta objects to the Requests that seek to impose an obligation to investigate or

discover information or materials from third parties or sources that are equally accessible to Plaintiff as duplicative, overbroad, unduly burdensome, and oppressive.

**13.** Meta reserves the right to assert additional objections, or to supplement its Responses as appropriate, particularly if any additional information regarding the Requests or the underlying claims at issue is provided.

**IV.    OBJECTIONS AND RESPONSES TO INDIVIDUAL DOCUMENT REQUESTS**

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS concerning the training data, training datasets, and data sources used to train, fine-tune, align, or evaluate the model known internally as "Avocado" and publicly released as "Muse Spark," and any successor model known internally as "Watermelon," including any DOCUMENTS identifying, cataloging, or describing the composition of training datasets, and any DOCUMENTS concerning whether content from Books3, LibGen, Anna's Archive, Z-Library, Internet Archive, Common Crawl, SpiderMate, or any other dataset or source containing copyrighted books, magazines, or periodicals was included in the training data for any such model.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Meta incorporates by reference its objections and definitions above, including to the terms "DOCUMENTS."

Meta objects to this Request as vague and ambiguous, and overly broad and unduly burdensome, as to the terms "training," "fine-tune," "align," and "evaluate," as it relates to Muse Spark. Meta will construe these terms as it ordinarily uses the terms with respect to Muse Spark and will meet and confer with Plaintiff to the extent Plaintiff intended a particular meaning for the terms.

Meta objects to the terms "Avocado" and "Watermelon" to the extent they refer to precursor, experimental, or unreleased models. Meta will construe this Request to apply only to the publicly released Muse Spark model.

Meta further objects to this Request as vague and ambiguous, and overly broad and unduly burdensome, as to the phrase "copyrighted books, magazines, or periodicals" as the Request does

not identify any and Meta is not in a position to know whether any particular work is subject to copyright protection.

Meta further objects to this Request as not relevant to any claim or defense in this action.

Meta further objects to this Request to the extent it seeks "All" responsive documents on the requested topic.  To the extent that Meta agrees to produce documents responsive to this Request, Meta will undertake a reasonable and proportionate search of materials within Meta's possession, custody, or control.

Meta objects to this Request because, on its face, it does not exclude documents and communications exchanged with or at the direction of Meta's attorneys concerning legal advice or opinions, which are subject to attorney-client privilege and/or attorney work product doctrine.  Such documents will not be produced.

Subject to and without waiving the foregoing objections, Meta will search for and produce, if any exist, non-privileged documents concerning training data, training datasets, and data sources used to train its Muse Spark model, including any description of the composition of the datasets used.  Any such production shall be on a rolling basis, and the timing of any such production shall be governed by terms of the Scheduling Order (Dkt. 40).

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS concerning whether any content from the ASSERTED WORKS, or from entrepreneur.com, franchise500.com, entm.ag, howsuccesshappens.com, secondact.com, secondactmag.com, secondactliving.com, or from any other website that bears the name "Entrepreneur," "Entrepreneur Media," "Entrepreneur Press," or "Franchise 500" in its domain name, URL path, or metadata that was included in any dataset used to train, fine-tune, align, or evaluate Muse Spark (a/k/a "Avocado"), "Watermelon," or any other META AI MODEL beyond those versions of Llama addressed in Interrogatory No. 19.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Meta incorporates by reference its objections and definitions above, including to the terms "DOCUMENTS," "ASSERTED WORKS," and "META AI MODEL."

**DEF. SUPPL. RESP. TO PLTF 4TH SET OF RFPS
CASE NO. 3:25-CV-09579-VC**

Meta objects to this Request as vague and ambiguous, and overly broad and unduly burdensome, and disproportionate to the needs of the case as to the terms "train," "fine-tune," "align," and "evaluate," as it relates to Muse Spark. Meta will construe these terms as it ordinarily uses the terms with respect to Muse Spark and will meet and confer with Plaintiff to the extent Plaintiff intended a particular meaning for the terms.

Meta objects to the terms "Avocado" and "Watermelon" to the extent they refer to precursor, experimental, or unreleased models. Meta will construe this Request to apply only to the publicly released Muse Spark model.

Meta further objects to this Request as vague and ambiguous, overly broad and unduly burdensome insofar as it seeks all documents "from any other website that bears the name 'Entrepreneur,' 'Entrepreneur Media,' 'Entrepreneur Press,' or 'Franchise 500' in its domain name, URL path, or metadata" because "Entrepreneur" is a generic term and because Meta is not in a position to know whether any particular website belongs to, or is otherwise associated with or connected to, Plaintiff.

Meta further objects to this Request as not relevant to any claim or defense in this action. Meta further objects to this Request to the extent it seeks "All" responsive documents on the requested topic.  To the extent that Meta agrees to produce documents responsive to this Request, Meta will undertake a reasonable and proportionate search of materials within Meta's possession, custody, or control.

Meta further objects to this Request as not relevant to any claim or defense in this action.

Meta objects to this Request because, on its face, it does not exclude documents and communications exchanged with or at the direction of Meta's attorneys concerning legal advice or opinions, which are subject to attorney-client privilege and/or attorney work product doctrine.  Such documents will not be produced.

Subject to and without waiving the foregoing objections, Meta will search for and produce, if any exist, non-privileged documents concerning whether any content from the asserted works, or from entrepreneur.com, franchise500.com, entm.ag, howsuccesshappens.com, secondact.com,

DEF. SUPPL. RESP. TO PLTF 4TH SET OF RFPS
CASE NO. 3:25-CV-09579-VC

secondactmag.com, and secondactliving.com was included in any dataset used to train Meta's Muse Spark model. Meta will also conduct a reasonable search for documents concerning domain names, URL paths, or metadata containing "Entrepreneur Media," "Entrepreneur Press," or "Franchise 500" in its domain name, URL path, or metadata that was included in any dataset used to train, fine-tune, align, or evaluate Meta's Muse Spark model. Any such production shall be on a rolling basis, and the timing of any such production shall be governed by terms of the Scheduling Order (Dkt. 40).

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS concerning the transition from Meta's Llama-based AI development organization to the reconstituted AI division under Alexandr Wang or any other organizational restructuring of Meta's generative AI development, including any DOCUMENTS addressing whether training datasets, data processing pipelines, preprocessing scripts, CMI-stripping scripts, or model checkpoints used in developing any version of Llama were carried over, reused, adapted, or incorporated into the development of Muse Spark, "Watermelon," or any other META AI MODEL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Meta incorporates by reference its objections and definitions above, including to the terms "DOCUMENTS" and "META AI MODEL."

Meta objects to this Request as vague and ambiguous, and overly broad and unduly burdensome, and disproportionate to the needs of the case as to the terms "used," "developing" or "development," as it relates to Muse Spark. Meta will construe these terms as it ordinarily uses the terms with respect to Muse Spark and will meet and confer with Plaintiff to the extent Plaintiff intended a particular meaning for the terms. Meta further objects to this Request as vague and ambiguous, and overly broad and unduly burdensome, as to the phrases "concerning the transition" and "any other organizational restructuring of Meta's generative AI development."

Meta objects to the terms "Avocado" and "Watermelon" to the extent they refer to precursor, experimental, or unreleased models. Meta will construe this Request to apply only to the publicly released Muse Spark model.

Meta objects to the phrase "Llama-based AI development organization" as vague and ambiguous. Meta will construe this phrase to apply to the team(s) that worked on the Llama models (e.g., Llama 1, 2, 3, and 4). Meta further objects to the phrase "reconstituted AI division under Alexandr Wang" as vague and ambiguous. Meta will construe this Request to apply to the team(s) that worked on the Muse Spark model.

Meta objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks all documents concerning the subject matter of the Request, including documents with limited, if any, relevance to Plaintiff's copyright infringement allegations and Meta's defenses thereto. Specifically, Meta objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case because the Request is not limited to Plaintiff's Asserted Works and instead seeks high-level, proprietary strategic documents regarding entire organizations at Meta regardless of relevance to the specific claims at issue.

Meta further objects to this Request to the extent it seeks "All" responsive documents on the requested topic. To the extent that Meta agrees to produce documents responsive to this Request, Meta will undertake a reasonable and proportionate search of materials within Meta's possession, custody, or control.

Meta further objects to this Request as not relevant to any claim or defense in this action.

Meta objects to this Request because, on its face, it does not exclude documents and communications exchanged with or at the direction of Meta's attorneys concerning legal advice or opinions, which are subject to attorney-client privilege and/or attorney work product doctrine. Such documents will not be produced.

Subject to and without waiving the foregoing objections, Meta will search for and produce, if any exist, non-privileged documents addressing whether training datasets, data processing pipelines, preprocessing scripts, CMI-stripping scripts, or model checkpoints used in developing

any version of Llama were carried over, reused, adapted, or incorporated into the development of Muse Spark model. Any such production shall be on a rolling basis, and the timing of any such production shall be governed by terms of the Scheduling Order (Dkt. 40).

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS concerning the decision to release Muse Spark as a closed-source (proprietary) model rather than continuing Meta's prior practice of open-weight distribution, including any internal analyses, communications, business assessments, or strategic reviews concerning the reasons for the change in distribution approach, whether related to competitive positioning, data provenance, intellectual property considerations, or any other factor.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Meta incorporates by reference its objections and definitions above, including to the term "DOCUMENTS."

Meta objects to this Request as not relevant to any claim or defense in this action.

Meta objects to this Request because, on its face, it does not exclude documents and communications exchanged with or at the direction of Meta's attorneys concerning legal advice or opinions, which are subject to attorney-client privilege and/or attorney work product doctrine, in particular as it explicitly requests "internal analyses . . . or strategic reviews" concerning "intellectual property considerations." Such documents will not be produced.

Subject to and without waiving the foregoing objections, Meta will search for and produce, if any exist, non-privileged documents sufficient to show the reasons for the decision to release Muse Spark as a closed-source model. Any such production shall be on a rolling basis, and the timing of any such production shall be governed by terms of the Scheduling Order (Dkt. 40).

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS concerning any fine-tuning, supervised learning samples, reinforcement learning with human feedback (RLHF) interventions, system prompts, or other post-training modifications to any META AI MODEL that were designed, in whole or in part, to alter, suppress, or modify the model's outputs in response to user prompts inquiring about the model's training

data, the sources of its training data, or whether copyrighted material was used in its training. This request includes, but is not limited to, curated question-and-answer pairs or other supervised fine-tuning data inserted into the model's training pipeline to cause the model to generate non-incriminating or evasive responses to user prompts about its training data sources (as described in the Fourth Amended Consolidated Complaint in *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC, Dkt. 702, ¶¶ 95–97), and any analogous interventions applied to any other META AI MODEL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Meta incorporates by reference its objections and definitions above, including to the terms "DOCUMENTS" and "META AI MODELS."

Meta objects to this Request as vague and ambiguous, overly broad and unduly burdensome, and disproportionate to the needs of the case as to the phrases "fine-tuning," "supervised learning samples," "reinforcement learning with human feedback (RLHF) interventions," "analogous interventions," as well as to the terms "modifications," "alter," and "modify."

Meta objects to this Request because, on its face, it does not exclude documents and communications exchanged with or at the direction of Meta's attorneys concerning legal advice or opinions, which are subject to attorney-client privilege and/or attorney work product doctrine. Such documents will not be produced.

Meta further objects to this Request to the extent it seeks "All" responsive documents on the requested topic. To the extent that Meta agrees to produce documents responsive to this Request, Meta will undertake a reasonable and proportionate search of materials within Meta's possession, custody, or control.

Meta further objects to this Request to the extent it is duplicative of other Requests, including Request No. 27.

Subject to and without waiving the foregoing objections, Meta will search for and produce, if any exist, non-privileged documents sufficient to show any post-training modifications designed to modify Meta's Llama or Muse Spark models' outputs in response to user prompts inquiring

about the model's training data, the sources of its training data, or whether copyrighted material was used in its training.  Any such production shall be on a rolling basis, and the timing of any such production shall be governed by terms of the Scheduling Order (Dkt. 40).

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS concerning Meta's use of the SpiderMate web crawler or any other proprietary or third-party web crawler to collect, scrape, index, or download content for use in any META AI MODEL training dataset, including: (a) any DOCUMENTS identifying which websites or domains were crawled; (b) any DOCUMENTS identifying which websites, domains, or URL patterns  were placed on any blocklist, exclusion list, or robots.txt override; (c) any COMMUNICATIONS concerning whether shadow libraries, piracy-related websites, or any of the websites identified in Interrogatory No. 20 were included in or excluded from the crawl scope; and (d) any DOCUMENTS reflecting the volume of content crawled from any of the websites identified in Interrogatory No. 20.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Meta incorporates by reference its objections and definitions above, including to the terms "DOCUMENTS," "META AI MODELS," and "COMMUNICATIONS."

Meta objects to this Request as vague and ambiguous, overly broad and unduly burdensome, and disproportionate to the needs of the case as to the terms "use," "collect," "scrape," "index," and "download," and as to the phrase "crawl scope."

Meta further objects to this Request as not relevant to any claim or defense in this action.

Meta further objects to this Request to the extent it seeks "All" responsive documents on the requested topic. To the extent that Meta agrees to produce documents responsive to this Request, Meta will undertake a reasonable and proportionate search of materials within Meta's possession, custody, or control.

Meta further objects to this Request because, on its face, it does not exclude documents and communications exchanged with or at the direction of Meta's attorneys concerning legal advice or

DEF. SUPPL. RESP. TO PLTF 4TH SET OF RFPS
CASE NO. 3:25-CV-09579-VC

opinions or confidential trade secrets, which are subject to attorney-client privilege and/or attorney work product doctrine. Such documents will not be produced.

Subject to and without waiving the foregoing objections, Meta will search for and produce, if any exist, non-privileged documents sufficient to show Meta's use of the SpiderMate web crawler or any other proprietary or third-party web crawler to collect, scrape, index, or download content comprising the Asserted Works for use in any dataset used to train Meta's Llama or Muse Spark Models.  Any such production shall be on a rolling basis, and the timing of any such production shall be governed by terms of the Scheduling Order (Dkt. 40).

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Subject to and without waiving the foregoing objections, Meta will also search for and produce, if any exist, non-privileged documents sufficient to show Meta's use of the SpiderMate web crawler or any other proprietary or third-party web crawler to collect, scrape, index, or download content from the seven domains identified by Plaintiff in its Interrogatory No. 20 (namely, entrepreneur.com, franchise500.com, entm.ag, howsuccesshappens.com, secondact.com, secondactmag.com, and secondactliving.com) for use in any dataset used to train Meta's Llama or Muse Spark Models.

Meta further will search for and produce, if any exist, non-privileged documents sufficient to show the blocklists applied to Meta's use of web crawlers to prohibit crawling of certain websites and whether any of the seven domains identified by Plaintiff in its Interrogatory No. 20 were included on any such blocklist.

Any such production shall be on a rolling basis, and the timing of any such production shall be governed by terms of the Scheduling Order (Dkt. 40).

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS concerning torrent swarm activity during any Meta download via BitTorrent or any other peer-to-peer protocol, including: (a) logs, metrics, or analyses showing the number of peers or swarm members who received, downloaded, or otherwise accessed data uploaded, distributed, or made available by Meta during Meta's torrenting activity; (b) any DOCUMENTS

concerning whether Meta's torrenting scripts or configurations were designed or configured to permit or prevent seeding (i.e., uploading) of data to third-party peers; and (c) any DOCUMENTS concerning the total volume of data uploaded or made available by Meta to third parties via peer-to-peer protocols during Meta's acquisition of LibGen, Anna's Archive, Z-Library, Internet Archive, or any other dataset.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Meta incorporates by reference its objections and definitions above, including to the terms "DOCUMENTS."

Meta objects to this Request as vague and ambiguous, overly broad and unduly burdensome, and disproportionate to the needs of the case as to the terms "received," "downloaded," "uploaded," "accessed," "distributed," "acquisition," "designed," "seeding," and as to the phrases "peer-to-peer protocol," "made available," and "torrenting scripts."

Meta objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks information not kept in the ordinary course of business and information, including documents with limited, if any, relevance to Plaintiff's copyright infringement allegations and Meta's defenses thereto. Meta will construe this Request to apply to alleged instances of torrenting of datasets that may contain Plaintiffs' asserted works.

Meta further objects to this Request as not relevant to any claim or defense in this action.

Meta further objects to this Request to the extent it seeks "All" responsive documents on the requested topic. To the extent that Meta agrees to produce documents responsive to this Request, Meta will undertake a reasonable and proportionate search of materials within Meta's possession, custody, or control.

Meta further objects to this Request because, on its face, it does not exclude documents and communications exchanged with or at the direction of Meta's attorneys concerning legal advice or opinions, which are subject to attorney-client privilege and/or attorney work product doctrine. Such documents will not be produced.

Meta further objects to this Request to the extent that Meta has already searched for and produced documents responsive to this Request, including documents that were produced in the *Kadrey* matter.

Meta has produced documents responsive to this request in connection with the *Kadrey* matter, which have been produced to Plaintiff.  Meta will supplement that production if any additional non-privileged, relevant documents responsive to this Request that are specifically related to datasets containing Plaintiffs' Asserted Works, and are located through the discovery process, in accordance with the ESI Order entered by the Court. Any such production shall be on a rolling basis, and the timing of any such production shall be governed by terms of the Scheduling Order (Dkt. 40).

**REQUEST FOR PRODUCTION NO. 41:**

For each dataset acquired by Meta via torrenting, direct download, web crawling, or any other method that was USED in the training, fine-tuning, evaluation, or alignment of any META AI MODEL, produce all file lists, indices, catalogs, manifests, inventories, and metadata records sufficient to identify the individual works contained in the dataset at the article, chapter, issue, or document level (not solely the book or archive level), including any metadata reflecting title, author, publisher, ISBN, ISSN, DOI, filename, file path, file size, date of acquisition, and source URL. To the extent this request encompasses datasets that do not contain books, magazines, periodicals, or content from the websites identified in Interrogatory No. 20, Meta may limit its production to a summary identification of each such dataset (by name, source, approximate size, and date of acquisition) rather than producing the full metadata records. To the extent Meta contends that no such article-level or document-level index exists for any such dataset, identify the dataset and state the basis for that contention.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Meta incorporates by reference its objections and definitions above, including to the terms "USED" and "META AI MODEL."

Meta objects to this Request as vague and ambiguous, overly broad and unduly burdensome, and disproportionate to the needs of the case as to the terms "training," "fine-tuning," "evaluation," and "alignment."

Meta further objects to this Request as overbroad, unduly burdensome, unintelligible as to the scope sought, and disproportionate to the needs of the case to the extent that it seeks information not kept in the ordinary course of business and information, including documents with limited, if any, relevance to Plaintiff's copyright infringement allegations and Meta's defenses thereto.

Meta further objects to this Request to the extent it seeks "All" responsive documents on the requested topic. To the extent that Meta agrees to produce documents responsive to this Request, Meta will undertake a reasonable and proportionate search of materials within Meta's possession, custody, or control.

Meta further objects to this Request as improperly demanding a narrative response, which is the proper subject of an interrogatory, and thereby seeking to circumvent the interrogatory limit.

Subject to and without waiving the foregoing objections, Meta is willing to meet and confer with Plaintiff regarding the appropriate scope, if any, for this request.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Subject to and without waiving the foregoing objections, Meta is currently in the process of supplementing its responses to Plaintiff's Interrogatory Nos. 19 and 20, which, as the parties discussed, may implicate some information sought through this Request. Meta is willing to meet and confer with Plaintiff following the supplementation of Interrogatory Nos. 19 and 20 regarding what, if any, additional documents Plaintiff seeks that are responsive to this Request.

**REQUEST FOR PRODUCTION NO. 42:**

All metadata generated, recorded, or maintained by Meta in connection with the acquisition, processing, de-duplication, filtering, or cleaning of any dataset USED in the training of any META AI MODEL, including but not limited to: (a) timestamps, source URLs or file paths, download methods (e.g., torrent, direct download, web crawl), and hash values reflecting when and how Meta acquired each dataset or component thereof; (b) de-duplication logs or records reflecting which

files, documents, or text segments were identified as duplicates and removed, and the criteria or algorithms applied; and (c) preprocessing logs or records reflecting which rows, files, or text segments were removed, filtered, or modified during data cleaning, including any logs generated by CMI-stripping scripts, copyright-filtering processes, or content-classification processes.  To the extent this request encompasses datasets that do not contain books, magazines, periodicals, or content from the websites identified in Interrogatory No. 20, Meta may limit its production to a summary identification of each such dataset (by name, source, approximate size, and date of acquisition) rather than producing the full metadata records.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Meta incorporates by reference its objections and definitions above, including to the terms "USED" and "META AI MODEL"

Meta objects to this Request as vague and ambiguous, overly broad and unduly burdensome, and disproportionate to the needs of the case as to the term "metadata," "acquisition," "processing," "de-duplication," "filtering," "cleaning, "training," "download," and "preprocessing."

Meta objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks documents with limited, if any, relevance to Plaintiff's copyright infringement allegations and Meta's defenses thereto.

Meta further objects to this Request as overbroad, unduly burdensome, unintelligible as to the scope sought, and disproportionate to the needs of the case to the extent that it seeks information not kept in the ordinary course of business and information, including documents with limited, if any, relevance to Plaintiff's copyright infringement allegations and Meta's defenses thereto.

Meta further objects to this Request as not relevant to any claim or defense in this action.

Meta further objects to this Request to the extent it seeks "All" responsive documents on the requested topic.  To the extent that Meta agrees to produce documents responsive to this Request, Meta will undertake a reasonable and proportionate search of materials within Meta's possession, custody, or control.

Subject to and without waiving the foregoing objections, Meta is willing to meet and confer with Plaintiff regarding the relevance of such metadata and to obtain additional detail about precisely what Plaintiff is seeking through this Request.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Subject to and without waiving the foregoing objections, Meta is currently in the process of supplementing its responses to Plaintiff's Interrogatory Nos. 19 and 20, which, as the parties discussed, may implicate some information sought through this Request. Meta is willing to meet and confer with Plaintiff following the supplementation of Interrogatory Nos. 19 and 20 regarding what, if any, additional documents Plaintiff seeks that are responsive to this Request.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS concerning the preservation, retention, or destruction of server logs, devserver data, AWS EC2 instance data, or other records relating to Meta's torrenting activity or peer-to-peer file-sharing activity, including any litigation hold notices, preservation instructions, or COMMUNICATIONS concerning the retention or destruction of such records on or after July 7, 2023.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Meta incorporates by reference its objections and definitions above, including to the terms "DOCUMENTS" and "COMMUNICATIONS."

Meta objects to this Request as vague and ambiguous, overly broad and unduly burdensome, and disproportionate to the needs of the case as to the terms "preservation," "retention," "destruction," and as to the phrases "server logs."

Meta further objects to this Request as not relevant to any claim or defense in this action.

Meta objects to this Request on the ground that it seeks improper discovery on discovery.

Meta further objects to this Request because, on its face, it does not exclude documents and communications exchanged with or at the direction of Meta's attorneys concerning legal advice or opinions, which are subject to attorney-client privilege and/or attorney work product doctrine, in particular to the extent this Request seeks "litigation hold notices, preservation instructions, or

COMMUNICATIONS concerning the retention or destruction." Such documents will not be produced.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Meta further objects to this Request to the extent that Meta has already searched for and produced documents responsive to this Request, including documents that were produced in the *Kadrey* matter.

Subject to and without waiving the foregoing objections, Meta will search for and produce, if any exist, non-privileged documents that both (i) concern the preservation, retention, or destruction of server logs, devserver data, or AWS EC2 instance data relating to Meta's torrenting activity or peer-to-peer file-sharing activity and (ii) relate to the merits of the parties' claims or defenses and do not constitute discovery on discovery. Any such production shall be on a rolling basis, and the timing of any such production shall be governed by terms of the Scheduling Order (Dkt. 40). For the avoidance of doubt, Meta will not produce documents and communications responsive to this Request, if any exist, that were exchanged with or at the direction of Meta's attorneys concerning legal advice or opinions, including "litigation hold notices, preservation instructions, or COMMUNICATIONS concerning the retention or destruction," or any other documents and communications subject to attorney-client privilege and/or attorney work product doctrine.

Dated:  June 20, 2026                              COOLEY LLP


                                        By:*/s/ Phillip E. Morton*
                                            Phillip E. Morton

                                        Karen L. Dunn (*pro hac vice*)
                                        Jessica E. Phillips (*pro hac vice*)
                                        Kyle N. Smith (*pro hac vice*)
                                        DUNN ISAACSON RHEE LLP
                                        401 9th Street NW
                                        Washington, DC 20004
                                        Telephone: (202) 240-2900
                                        Email: kdunn@dirllp.com
                                        jphillips@dirllp.com
                                        ksmith@dirllp.com

                                        Kathleen R. Hartnett
                                        Mark R. Weinstein
                                        Elizabeth Lee Stameshkin
                                        COOLEY LLP
                                        3175 Hanover Street
                                        Palo Alto, CA 94304
                                        Telephone: 650-843-5000
                                        Facsimile: 650-849-7400
                                        Email:  khartnett@cooley.com
                                        mweinstein@cooley.com
                                        lstameshkin@cooley.com

                                        Bobby A. Ghajar
                                        COOLEY LLP
                                        1333 2nd Street, Suite 400
                                        Santa Monica, CA 90401
                                        Telephone: (310) 883-6400
                                        Facsimile: (310) 883-6500
                                        Email: bghajar@cooley.com

                                        Phillip E. Morton (*pro hac vice*)
                                        COOLEY LLP
                                        1299 Pennsylvania Avenue NW, Suite 700
                                        Washington, DC 20004
                                        Telephone: (202) 842-7800
                                        Email: pmorton@cooley.com

DEF. SUPPL. RESP. TO PLTF 4TH SET OF RFPS
CASE NO. 3:25-CV-09579-VC

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON
LLP
151 University Avenue
Palo Alto, CA 94301
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of New York. I am employed in New York County, State of New York. I am over the age of eighteen years, and not a party to the within action. My business address is Dunn Isaacson Rhee LLP, 11 Park Place, New York, New York 10007. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT META PLATFORMS, INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS [NOS. 34-43]**

[X]   (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Dunn Isaacson Rhee LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

HUESTON HENNIGAN LLP
Moez M. Kaba (#257456)
Michael M. Purpura (#338216)
Lee Linderman (#280743)
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Email: mkaba@hueston.com
Email: mpurpura@hueston.com
Email: llinderman@hueston.com

NEWMEYER & DILLION LLP
Michael B. McClellan (#241570)
Benjamin P. Pugh (#202025)
Jason L. Morris (#295271)
Harlye S. Carlton (#261641)
895 Dove Street, Second Floor
Newport Beach, California 92660
Email:  Michael.McClellan@ndlf.com
Email:  benjamin.pugh@ndlf.com
Email:  Jason.Morris@ndlf.com
Email:  Harlye.Carlton@ndlf.com

Executed on June 20, 2026, at Brooklyn, New York.

*/s/ Christine M. Ray*
Christine M. Ray

**DEF. SUPPL. RESP. TO PLTF 4TH SET OF RFPS
CASE NO. 3:25-CV-09579-VC**