[counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC,<br><br>          Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>          Defendant. | Case No. 3:25-cv-09579-VC-TSH<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Trial Date:        May 24, 2027<br>Date Action Filed:  November 6, 2025 |

Pursuant to the Court's July 31, 2026, Minute Order (Dkt. 101), Plaintiff Entrepreneur Media, LLC ("Entrepreneur") and Defendant Meta Platforms, Inc. ("Meta") submit this Joint Case Management Statement in advance of the Further Case Management Conference set for August 14, 2026. The parties first identify the matters they expect will require further attention from the Court before providing additional updates on developments since the last Case Management Conference on July 31, 2026.

<b>ENTREPRENEUR'S POSITIONS</b>

Entrepreneur raises two issues for the Court's consideration: (A) identification of Entrepreneur's works in Meta's training data and the consequence for the pleadings; and (B) Rule 30(b)(6) Examination Hours. Section (C) below addresses the status of remaining discovery.

**A.      Identification of Entrepreneur Works in Meta's Training Data, and the Consequence for the Pleadings**

Meta is the only party that knows what it copied. It acquired and trained on Entrepreneur's works without asking, and it did so on a scale that it now says makes identifying them difficult. The scale of the taking cannot be the reason the taker is excused from saying what was taken. This Court made the same point on May 22: "I'm not sure why burden matters. Meta copied lots of stuff without permission, and it has an obligation to figure out what that is, and if it—even if it's extraordinarily burdensome." 5/22/2026 CMC Tr. 8:24–9:3.

Meta has repeatedly represented that it would identify the Entrepreneur works in its training data. It has not done so. It has not committed to a date by which it will do so. Meta has set two dates for the identification and met neither, and it has not stated when or how it will complete one.

*1.      The representations.*

- **March 10, 2026.** EM served Interrogatory No. 19 asking Meta to identify the Entrepreneur works in its training data. EM granted Meta an extension to respond to April 23.

- **April 23, 2026.** Meta responded by invoking Rule 33(d) and directing EM to multi-terabyte production drives.

- **April 24, 2026.** EM sent a conferral letter identifying the deficiency.

- **Early May 2026.** EM prepared a discovery motion, including a declaration from EM's technical expert, and served its portions of the joint submission on Meta. Meta asked EM not to file so that Meta could comply. Based on Meta's representations, EM did not file.

- **May 22, 2026.** At the case management conference, EM advised the Court that its motion was written and ready, and that EM was giving Meta "one final opportunity to answer these interrogatories." Tr. 7:16-21. The Court observed that if Meta could not determine which works it copied, "there has to be some inference drawn that it copied the works, right, because it was downloading stuff en masse." Tr. 9:7-11. Meta's counsel responded that Meta was "working very hard to try to determine which works of Entrepreneur's were downloaded and in the training data," that the disclosure would be made on a rolling basis, and that "[b]y the end of June is our expectation, barring any unforeseen circumstances." Tr. 10:22–11:1.

- **June 30, 2026.** Meta's stated deadline passed without the identification.

- **July 20, 2026.** At the case management conference, the Court directed the parties to formalize the identification "short of amending the complaint" so that discovery on the identified works could proceed. Tr. 9:16-20. The Court confirmed that "the fact that the works are not yet asserted in an amended complaint is not a basis for resisting any legitimate discovery request." Tr. 9:22-25.

- **July 27, 2026.** EM sent an email stating "Meta's results remain preliminary and partial. Please provide a date certain for completed supplemental results." Meta responded that it would supplement by August 4, 2026.

- **August 4, 2026.** Meta served a supplemental response, five weeks after its stated deadline and thirteen weeks after EM's motion was withheld at Meta's request. Meta's supplemental responses do not identify Entrepreneur's works in the datasets.

  2.    *What the August 4 response does and does not do.*

Meta's August 4 response attaches four exhibits. Each row identifies a training-data record located by a text search. Meta describes the searches as run to identify works that "may be present" in the training data.

As of August 4, 2026, EM had produced 431 unique books in digital form. Meta's search reached 335 of them. For 301 of those 335—approximately ninety percent—Meta's exhibits identify one or more matching training-data records. The remaining 34 returned no match. EM asserts each of the 301, as set out below.

Meta's August 4 response is incomplete in three respects. The first two concern what Meta's search reached. The third concerns what the search does.

**First, Meta's search reached only part of what EM had produced.** The highest Entrepreneur Bates number appearing anywhere in Meta's four exhibits is EM092193. Of the 431 books EM had produced before August 4, 335 bear Bates numbers at or below that line and 87 bear Bates numbers above it. Within the first group, Meta's search matched roughly nine books in ten. EM produced the 87 other books to Meta on July 22, July 25, and July 28, 2026, and identified the Bates ranges to Meta by email on each of those dates. Meta had every one of them in hand before it served its August 4 response. It searched none of them. Whenever Meta ran its search, it knew when it served the response that the search had not reached 87 books EM had produced and identified, and the response does not say so. At the rate observed below the line, approximately 78 of those 87 would have matched. The disparity is a fact about the search, not the books.

**Second, EM's productions have continued and Meta has searched none of them.** Since and including August 4, EM has produced 101 digital books at EM1416488–EM1419574, EM1477227–EM1492486, and EM1562632– EM1571531; magazine issues spanning 2017 through 2026 at EM1492487–EM1496701, EM1496930–EM1501977, and EM1502086–EM1503684; and magazine issues from 2009 and 2011 through 2016 at EM1514386–EM1556971. Adding those to the 87 books the August 4 search did not reach, at least 157 Entrepreneur books, and every Entrepreneur magazine issue other than the twelve 2010 issues, have never been searched or identified as in the training data. Meta has not identified a date by which it will search them.

**Third, Meta ran a record-matching exercise against EM's production files rather than the work-level identification the interrogatory requires.** Where EM produced the same work twice, Meta's search returned different answers for the same work.

*The books:*

EM produced *Ultimate Small Business Marketing Guide*, ISBN 9781599180373, at EM002425–EM003008 and again at EM028680–EM029263. Meta's exhibits report 32 matching records against the first copy and 2 against the second. The same pattern appears with *Start Your Own Information Marketing Business*, ISBN 9781599181745, produced at EM004542–EM004792 and again at EM027264–EM027511, where Meta reports one matching records against one copy and zero against the other. The record count is a fact about which file Meta searched, not about the work. EM cannot determine from the exhibit how much of a work is present, in how many copies, or in what form, which is what Interrogatory No. 19 asked.

*The magazines:*

The magazines confirm the same defect under controlled conditions. Meta reported results for the only Entrepreneur magazine issues EM had produced in digital form when the searches were run: the twelve 2010 issues asserted in the complaint. EM produced eleven of those twelve issues twice (once in a subscriber version and once in a newsstand version). The two versions differ only in cover art; the interior content is identical. Meta's search returned a different set of matching records for every one of the eleven pairs, and in four of the eleven, the divergence appears within datasets Meta assembled from pirated sources—an issue reported as present in such a dataset while the identical copy of the same issue is reported as matching nothing in any dataset.

EM does not contend that Meta's exhibits are wrong where they report a match. A match indicates that content from an Entrepreneur work is in the identified dataset, and EM relies on those matches accordingly. The defect runs the other way and in one direction only: because Meta searched files rather than works, a non-match establishes nothing, and a match does not tell EM in what form the work is present, how much of it, or in how many copies. That is why Meta's response reports what "may be present" rather than what is present, and it is why the response cannot be taken as an identification even as to the books it covers.

### 3.     What EM is doing

Consistent with the Court's July 20 direction, EM is serving on Meta concurrently with the filing of this statement *Schedule A*, identifying by title, author, ISBN, and Bates range the **302 Entrepreneur books EM asserts**—the 59 books pleaded in the Complaint and 243 additional books. For 301 of the 302, Meta's August 4 exhibits identify one or more matching training-data records. The exception is *Ultimate Guide to Platform Building*, ISBN 9781613083536, produced at EM011337–EM011576, which is pleaded in the Complaint and which Meta searched without reporting a match.

EM is also serving *Schedule B*, identifying 221 books whose status remains unresolved: 33 that Meta searched without reporting a match, 87 that EM produced on July 22, July 25, and July 28, 2026 and that Meta held before serving its August 4 response without searching, and 101 that EM produced after August 4 and that Meta has neither searched nor committed to search. EM does not assert those works at this time and reserves all rights as to each.

EM's asserted magazine issues remain as pleaded. Meta has not searched any Entrepreneur magazine issue beyond the 2010 issues, and EM is not in a position to identify additional magazine works until it does.

### 4.     What EM asks

The sufficiency of Meta's response is a discovery matter. EM will present it to Judge Hixson at the August 19 conference and will ask him to order Meta (i) to search every Entrepreneur book and magazine issue EM has produced, EM's production of its works being complete as of August 18, 2026; (ii) to state, as to each such work, whether Meta contends it is present in the training data; and (iii) to disclose in advance the method it will use, the works it will search, and the form in which the result will be provided, so that a method repeating the defects described above can be corrected before it is run rather than after. EM will ask that the methodology be disclosed by August 21 and the identification be completed by August 29, 2026.

EM raises the issue here because the consequences run to this Court's schedule and to the pleadings, and because it was this Court that directed the parties on July 20 to formalize the

identification. EM asks for the following, neither of which requires any change to the summary judgment schedule or the May 24, 2027 trial date:

1. **A deadline to conform the pleadings.** That EM be granted leave to move to amend within 14 days after Meta serves a complete response to Interrogatory No. 19. EM raises the timing now so that it is fixed in advance rather than litigated in September. Meta has been able to take work-specific discovery on the identified books since July 20, when the Court confirmed that the absence of an amended complaint was not a basis to resist it and directed that it get done, Tr. 9:22-25, and EM stated on the record that it did not object. EM has served Schedule A concurrently with the filing of this statement so that Meta may proceed as to every work EM asserts.

2. **A date by which the works at issue are fixed.** EM files the opening summary judgment brief on December 11, 2026. That brief cannot be written until the universe of works is settled. EM asks the Court to set November 6, 2026 as the date by which the pleadings will be conformed, whether or not Meta has completed its response by then, so that the parties brief fair use knowing what it applies to.[1]

Meta has now had five months, a deadline of its own choosing, and one further supplementation. If Meta does not complete the identification by the date set, EM will ask the Court to address the consequence it identified on May 22: that a party which downloaded works en masse and cannot say which works it took may be found to have taken them. Tr. 9:7-11. EM does not seek that relief now.

Meta's Position: As Meta has consistently represented to the Court and Entrepreneur, Meta is undertaking extraordinary efforts to identify Entrepreneur's works in the training data and is providing

---

[1] EM does not seek, and does not believe there is any basis for, an extension of the case schedule in connection with the contemplated amendment. The works EM would add are works Meta identified from its own datasets, and Meta has possessed the datasets and EM's productions throughout. EM's theory of harm is directed to the market for its catalog rather than to any individual title, and the addition of works Meta itself identified requires no discovery from Meta and no change to any expert deadline. Whatever third-party discovery Meta believes it needs as to those works, it has been free to take since July 20, per the Court's CMC statement that the absence of an amended complaint was not a basis for resisting discovery on unidentified works. 7/20/2026 Tr. 9:22-25. On a rolling basis, and in any event no later than the date Entrepreneur conforms its pleadings, EM will produce—and has, in fact, already started producing—copyright registrations, author agreements, and other chain-of-title documents for each work it asserts.

that information to Entrepreneur as promptly as it reasonably can.  Because Meta has not identified reliable and complete records in its possession from which it can identify whether a particular Entrepreneur work in the downloaded datasets was part of the produced training data, Meta undertook the substantial effort and expense of searching over 10 terabytes of training data for Plaintiffs' works, employing a third-party vendor to construct a method for searching the training data at the cost of hundreds of thousands of dollars.

The searches at issue are not simple text searches for a word or phrase in a legal brief or a memo. They require building a complex text searching infrastructure that can conduct searches for hundreds of works across terabytes of training data.  The system also must take into account the many imperfections in both the produced copy of the text from Entrepreneur and the text in the training data (e.g., OCR errors, formatting differences).  Meta expended significant resources building this infrastructure, running Entrepreneur's works through the pipeline, and validating the results.  A substantial amount of time and effort is required to prepare the copies of works provided by Entrepreneur to format them for searching. Moreover, the quality of the OCR text that Entrepreneur has provided has been mixed, which has increased the amount of time and work needed to complete the searching runs.  Depending on the amount of text being searched, the searching runs can require tens of thousands of hours of computing time to complete.

Entrepreneur provides a one-sided version of events.  Entrepreneur neglects to mention that Meta has repeatedly met and conferred with Entrepreneur's counsel about its progress, been candid about the challenges, and provided multiple tranches of preliminary results to Entrepreneur's counsel for review (on June 22, June 26, and June 30).   From the beginning of this process, Meta was upfront with Entrepreneur that it needed text searchable copies of all of the works that Meta would be searching.  Meta ran the initial tranches of over 300 works through its pipeline and provided a supplemental interrogatory response addressing those works.  Entrepreneur has slowly trickled out smaller batches of additional works over the past few weeks followed by additional productions just this past week totaling nearly 200 more works to search.  Meta understands that the reason Entrepreneur has taken time to produce copies of its own works to Meta is because Entrepreneur did not possess copies of many of its own works, having "pulped" (or destroyed) copies of its works years before this lawsuit, which has resulted in Entrepreneur purchasing copies of its own works on the secondary market for production in this case.  Meta's searching system has

been occupied with searching thousands of works for the Three C's cases, and Meta is now running the more recently produced EM works through the searching pipeline and will continue to work cooperatively with Entrepreneur on running any additional works that Entrepreneur represents will be produced by August 18. Meta will also supplement its response to Entrepreneur's Interrogatory No. 19 as those searches are expected to be completed within the next two weeks.

Since receiving a draft of this statement, Meta has conferred with Entrepreneur's counsel in an effort to better understand their concerns with Meta's responses and to determine what further supplementation would satisfy them. Meta is taking Entrepreneur's comments into account and is identifying ways it can further supplement its response to Interrogatory No. 19 to attempt to satisfy Entrepreneur's concerns. To the extent any disputes remain, the parties will continue to meet and confer and address them with Judge Hixson next week.

Regarding the deadline for supplementing pleadings, Meta remains willing to work with Entrepreneur to determine an appropriate deadline for filing an amended complaint in this case to allow Entrepreneur to potentially assert additional works. Key to any supplementation of pleadings though will be Entrepreneur producing proof that it possesses rights to assert the works. To the extent Entrepreneur intends to assert any additional works in this case, it should produce evidence that it has the right to assert each of the copyrights now.[2] There should be no surprises later that Entrepreneur made Meta undertake the costly burden of searching for works that Entrepreneur cannot assert or that Entrepreneur attempts to assert works in which it does not maintain appropriate rights.

### B. Rule 30(b)(6) Examination Hours

The Court allotted 14 hours for Rule 30(b)(6) examination across the coordinated Plaintiffs' cases, before Meta's designations were known. Meta has since designated six witnesses to testify on 20 of EM's

---

[2] Entrepreneur represents in its Footnote 1 that it will "produce the copyright registrations for each work it asserts" on the date Entrepreneur amends its pleadings to incorporate additional Asserted Works. But this ignores that Meta has propounded several discovery requests related to the Asserted Works that are necessary to the defense of this case. In addition to the copyright registrations, Entrepreneur must produce documents responsive to those requests for any supplemental works it is asserting, and should not delay doing so until the complaint is formally amended at some point in the future. Neither the Federal Rules of Civil Procedure nor the case calendar permits Entrepreneur to sit on responsive, relevant, and critical information simply because Entrepreneur wants to delay production until its amendment.

21 noticed topics, spread across ten sessions. EM asks that the allotment be revisited against that structure.[3]

EM's examination on Topic 18 illustrates the problem. Topic 18 concerns how Meta has marketed, promoted, and publicly positioned its models. Meta designated a witness on part of the topic on July 24, then narrowed the designation twice more without conferral: on July 28, when Meta stated on the record that the designee was not designated as to communications or public positioning, and on August 7, when the witness stated at the outset that she could address only certain aspects of marketing.[4] EM spent 42 minutes on July 28 determining that scope and obtained no substantive testimony.

The August 7 session ran approximately three and a half hours on the record and did not complete Topic 18. Of approximately 468 questions posed by two plaintiff examiners, the designee responded on at least 60 occasions by asking counsel to repeat the question or to be more specific, without answering.[5]

The deflections were not confined to any disputed margin. Topic 18 expressly reaches "internal marketing strategy" and "developer outreach":

> Q.    Does that include internal marketing strategy?
>
> A.    What do you mean by internal marketing strategy?
>
> Q.    Just as it says here in the topic, internal marketing strategy.

Montalvo Rough Tr. at 13.

The witness then testified that internal marketing strategy is handled primarily by the comms team, on which Meta has stated she is not designated. Asked three times what "developer outreach" is and whether it was part of her team's work, she asked counsel to define the term or supply a time frame; when

---

[3] Meta's reference to 47 topics aggregates EM's notice with the 3Cs'. This is EM's statement, and EM served 21 topics, on 20 of which Meta agreed to designate a witness. Meta served 18 Rule 30(b)(6) topics on EM. Meta's objection is therefore not to the number of topics a single party may notice, but to the aggregate across coordinated cases, which is a function of coordination Meta itself sought. Nor did EM choose the structure: Meta elected to spread its designations on EM's 20 topics across six witnesses and ten sessions.

[4] Meta states that it is identifying another witness to cover the portions of the topic on which Ms. Montalvo was not designated. Meta has not identified that witness or a date. The concession confirms both that Topic 18 remains uncovered and that further Rule 30(b)(6) time will be required before September 4, which is the relief EM seeks here.

[5] The rate was materially the same for both examiners: 52 of EM's 416 questions and 8 of the 3Cs' 52. Counts are approximate and drawn from the uncertified rough transcript.

counsel adopted her own substitute, "developer marketing," she asked whether he meant a specific campaign or the function generally. Tr. at 82-83.

Beyond the topic's enumerated terms, the deflections extended to how Meta marketed and positioned its generative AI products to consumers. Meta's answer as to those questions is that they concerned "Meta AI" rather than "the MODELS." Meta's designee resolved that objection herself, and the exchange in which she did so also shows what the requests for specificity were worth:

> Q.   In 2023, did Meta AI use Meta's models?
>
> MS. DUNNING: Object to the form. Vague as to models.
>
> THE WITNESS: Can we be more specific on which model you are referring to?
>
> BY MR. LINDERMAN:
> Q. No.
>
> A. In 2023, Meta AI was using a Llama model.

Montalvo Rough Tr. at 53.

She further testified that text responses from Meta AI come from Llama models, identifying only image-generation models from other providers as exceptions. Tr. at 54. Topic 18 reaches how Meta has publicly positioned the models and any statements regarding their capabilities in domains relevant to EM's works, and Meta AI is the surface through which Meta makes those statements to consumers. Questions about that surface are not "far afield" of Topic 18. EM will present the scope of Meta's designation to Judge Hixson on August 19.

The consequence is straightforward. The designee did not testify on whether Meta's marketing organization has ever analyzed the effect of its generative AI products on book or magazine publishers, measured use of those products for instructional or how-to content, or received complaints from publishers or authors. When EM asked instead who at Meta would know the answers, the designee asked counsel for a more specific question. Montalvo Rough Tr. at 117. EM has not obtained that testimony from any witness. Meta states it is identifying a further witness for the portions of the topic on which Ms. Montalvo was not designated, but has named no one and offered no date, with fact discovery closing September 4.

The 30(b)(6) allotment has been substantially consumed, and not by examination. Four hours and fifteen minutes were charged against the coordinated Plaintiffs' 14 hours on a portion of one topic, which will consume at least three sessions. Fewer than ten hours of 30(b)(6) testimony remain. That time must cover EM's nineteen other designated topics, the 3Cs' topics, the remainder of Topic 18, and the additional witness Meta has yet to name, across at least five further designees Meta has scheduled or offered between August 18 and September 4. A 21-hour allotment leaves under seventeen hours for that work. EM does not seek to expand the examination; it seeks the time to complete the examination Meta's designation structure requires.

EM proposes, and the 3C's join in requesting, that the allotment be set at 21 total Rule 30(b)(6) hours.

Meta's Position:

Plaintiffs' complaints about needing more time for 30(b)(6) depositions is a problem of their own making. Knowing that the Court allowed Plaintiffs fourteen (14) hours for 30(b)(6) depositions, Entrepreneur and the Three Cs chose to serve a combined total of forty-seven (47) 30(b)(6) topics, which if divided evenly would only allow less than 18 minutes of testimony per served topic. The Plaintiffs' topics broadly and deeply cover the large swaths of Meta's Generative AI activities, including data acquisition, processing, training, product performance, contracts with third parties, finance, marketing, public communications, competitive analysis, and usage statistics, among other topics. Plaintiffs already have an extensive deposition record from the *Kadrey* case (including on several overlapping topics) and up to 20 individual depositions (party and non-party) in this case. Plaintiffs should be looking for ways to streamline their 30(b)(6) topics, not demanding that Meta's witnesses spend yet more time preparing for and being deposed on Plaintiffs' expansive topics with only a few weeks remaining in discovery.

Plaintiffs also complain about the 30(b)(6) deposition of Ms. Britt Montalvo, a senior marketing director at Meta. Ms. Montalvo was designated on the underlined portions[6] of the following marketing topics from the EM and 3C 30(b)(6) notices:

---

[6] Meta is identifying another witness to cover the non-underlined portions of the topics that relate to public communications about Meta's Generative AI Models.

| Entrepreneur Topic 18 | Three Cs Topic 14 |
|---|---|
| **How Meta has marketed, promoted, or publicly positioned the MODELS, including marketing materials,** press releases, keynote presentations, public statements by Meta executives, **developer outreach, and internal marketing strategy**, and any statements regarding the capabilities of the MODELS in domains relevant to PLAINTIFF'S WORKS. | **How Meta has marketed, promoted, or publicly positioned the MODELS, including marketing materials,** press releases, keynote presentations, public statements by Meta executives, **developer outreach, and internal marketing strategy,** and any statements regarding the capabilities of the MODELS in domains relevant to PLAINTIFFS' WORKS. |

Exs. A & B (Entrepreneur and Three Cs 30(b)(6) Notices)

Plaintiffs complain that Ms. Montalvo was not prepared to testify on "whether Meta's marketing organization has ever analyzed the effect of Meta AI on book or magazine publishers, whether it has measured use of Meta AI for instructional or how-to content, and whether it has received complaints from publishers or authors." Once again, Plaintiffs' complaints are a problem of their own making because none of the information Ms. Montalvo was allegedly not prepared to provide is within the scope of the designated 30(b)(6) topics in the table above or even or within the ordinary scope of the term "marketing."

Moreover, Entrepreneur's complaints about Ms. Montalvo's purported lack of knowledge about "Meta AI" reveals how far afield Plaintiffs' demands above are from the topics that Plaintiffs defined and served on Meta. Ms. Montalvo was presented on the marketing, promotion, and positioning of Meta's LLM "MODELS," not on "META AI," the user-facing generative AI assistant product that Plaintiffs went out of their way to define separately from "MODELS" in the 30(b)(6) notices. *See* Exs. A at 1-2 & B at 2 (defining "MODELS" as "the Llama models (Llama 1 through Llama 4, all versions) and Muse Spark (internally, 'Avocado')" (Entrepreneur) and "machine learning model, neural network, generative artificial intelligence model, transformer model, or similar computational system trained on large quantities of text or other data to process, predict, generate, summarize, classify, or otherwise manipulate natural language or content, including but not limited to YOUR 'Llama' models (Llama 1 through Llama 4, all versions) and Muse Spark (internally, 'Avocado')" (Three Cs) and "META AI" as "Meta's user-facing generative AI assistant, including the chat interfaces accessible through Facebook, Instagram, WhatsApp, Messenger, and meta.ai" (Entrepreneur) and "Meta's user-facing generative AI assistant and related surfaces" (Three Cs)).

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:25-cv-09579-VC-TSH

13

With respect to Plaintiffs' attacks on Ms. Montalvo's requests for clarification, it is clear from the transcript that Plaintiffs had an agenda during the 30(b)(6) deposition to ask questions outside the scope of the 30(b)(6) topics, which Ms. Montalvo did her best to respond to:

> Q.  Ms. Montalvo, before we went off the record, we were talking about whether Meta's marketing organization analyzed the effects of Meta AI on magazine publishers.  Do you remember that question?
>
> A.  I do.
>
> Q.  And your answer was that you don't know?
>
> A.  Based on my experience and what I've seen, I'm not familiar that we've done that.

Montalvo Rough Tr. at 49.

> Q.  So I don't mean to repeat myself, but just to be clear, Meta, today is unable to tell me whether it's marketing organization has ever analyzed the effect of Meta AI on book publishers?
>
> MS. DUNNING:  Object to the form.  Exceeds the scope of the designation on the topic.
>
> THE WITNESS:  Based on my scope in marketing and my understanding, that's what I can speak to, and I am not familiar that we have done that from the marketing perspective.

Montalvo Rough Tr. at 55-56.  The Court should not reward Plaintiffs for serving untailored 30(b)(6) deposition notices and for poorly using their 30(b)(6) time so far.  Plaintiffs should be held to the fourteen (14) hours of 30(b)(6) testimony that was allowed by the Court and the time spent with Ms. Montalvo should count against that 14 hour limit in full.

Regarding Plaintiffs' complaints about the timing of custodial document productions, Meta is doing everything it reasonably can to produce documents as promptly as possible ahead of depositions.  Meta is willing to meet and confer with Plaintiffs and address any concerns Plaintiffs may have with Judge Hixson if the parties reach an impasse.  Any extra time that Plaintiffs may seek for depositions of witnesses due to document productions should be evaluated against how efficiently and appropriately Plaintiffs used the time they already spent on the deposition and whether Plaintiffs wasted

time deposing witnesses on topics that are outside the knowledge of the witness, as Plaintiffs did with Ms. Montalvo.

### C.    Status of Remaining Discovery

#### 1.    Written discovery

The parties are conferring regarding Meta's responses, objections, and productions in response to EM's requests for production and interrogatories, and regarding EM's responses and objections to Meta's requests for production, interrogatories, and requests for admission. Consistent with Judge Hixson's instruction, the parties will submit a discovery status report on August 18, 2026, and will present any unresolved disputes at the August 19, 2026, discovery conference.

Written discovery served since the last conference is as follows. EM served its Third Set of Requests for Admission (Nos. 44-84) on July 31, 2026, its Fourth Set of Requests for Admission (Nos. 85-95) on August 5, 2026, and its Seventh Set of Requests for Production (Nos. 70-87) on July 31, 2026. Meta served its Fourth Set of Interrogatories (Nos. 19-20) on July 28, 2026, its Fifth Set of Interrogatories to EM (Nos. 21-25) on August 5, 2026, and its Fifth Set of Requests for Production (Nos. 155-197) on August 5, 2026. Responses to Meta's August 5 requests come due September 4, 2026, the date fact discovery closes.

#### 2.    Depositions

EM has taken nine depositions of Meta witnesses across ten sessions. Ten additional depositions are confirmed or have been offered by Meta between August 18 and September 4, 2026, including three in the final four days of the fact discovery period and a three-day session for Meta's designee on ten of EM's Rule 30(b)(6) topics. Confirmations remain outstanding on several of the dates Meta has offered. Meta has yet to offer dates for EM's Rule 30(b)(6) Topics 7 and 8.

On August 7, 2026, Meta served a Rule 30(b)(6) notice containing 18 topics on Entrepreneur. Entrepreneur is preparing its responses and objections and intends to promptly identify designees.

#### 3.    Document Production

Deficiencies remain in the timing and scope of Meta's productions, including several eleventh-hour productions on the eve of depositions and incomplete custodial productions and search term lists.

EM will raise specific disputes with Magistrate Judge Hixson and reserves all rights with respect to Meta's late and incomplete productions.

Meta's Position: Meta disagrees with Entrepreneur's characterizations of its document productions. Meta is taking all reasonable efforts to comply with the Court's deadlines. Meta will continue to meet and confer with Entrepreneur to address any concerns they may have.

## META'S AFFIRMATIVE POSITIONS

Meta's Position: To date, Entrepreneur has produced the files of five custodians, and all of them are admittedly and woefully deficient. Entrepreneur appears to have learned for the first time from deposition testimony that many of its own employees (including three out of the four already deposed custodians) use Slack messaging on a near-daily basis for work-related issues. Accordingly, Entrepreneur only now has begun to collect such messages and, as of this filing, could not confirm that any such efforts are complete, when they would be, or when it would apply search terms to any such collection. Same with documents stored on Google Drive. Even though certain deponents admitted to storing relevant work documents on their individual Entrepreneur Google Drive folders, Entrepreneur has not collected these custodial Drive folders, relying instead on individual custodians to identify discrete relevant documents, meaning Meta has received documents based only on individual employee memory or happenstance. Entrepreneur did not commit to changing its approach to Google Drive, and also did not provide confirmation that it would produce other forms of messages individual employees admitted to using for work purposes. The only communications contained in the custodial productions to date are emails, and even those are incomplete, including because there are large gaps in time (such as an absence of substantive emails for Entrepreneur's CEO Ryan Shea post-dating 2022). Meta cannot assess the reasons for the deficient custodial productions to date for the first three witnesses deposed (Ryan Shea, Michael Frazier, and Sean Strain) because Entrepreneur has not provided Meta with the search protocol disclosures required by Section 4(a) of the ESI Protocol—which are overdue since the initial productions took place more than fourteen (14) days ago.[7]   However, the search terms Entrepreneur appears to have

---

[7] Entrepreneur made the first production of Frazier custodial documents on July 23, 2026; the first production of Shea custodial documents on July 24, 2026; and the first production of Strain documents on July 26, 2026. The deadline for Entrepreneur to provide Meta with its search protocol disclosures for each

used for the other two custodians are inadequate on their face. As far as non-custodial documents, Entrepreneur has not completed producing all of the works and registration materials on which it is asserting claims, and has lodged unfounded objections to many of Meta's requests (about which the parties are conferring). Despite the production deficiencies, Meta has taken, noticed, or scheduled ten (10) depositions of Entrepreneur witnesses. Based on review of productions to date and deposition testimony, Meta anticipates needing to depose a limited number of third parties, and respectfully requests the Court grant leave for Meta to take an additional five (5) depositions.

Entrepreneur's written discovery fares no better: Meta intends to move to compel Entrepreneur to amend responses to a large number of responses to requests for admission that inappropriately caveat admissions or denials. Meta has identified a number of deficient interrogatory responses, about which the parties are conferring. In sum, it is unclear whether or how Entrepreneur intends to satisfy its discovery obligations prior to the close of discovery on September 4, including to provide Meta with sufficient time to meaningfully review custodial files such that it can finish the remaining depositions or complete those that remain open.

### A.    Potential Issues with Completing Discovery by September 4, 2026 Fact Discovery Cutoff

All parties in the case have been operating with extreme urgency to complete all fact discovery by the Court-ordered deadline of September 4, 2026. By that time, Meta will have produced upwards of twenty (20) fact-witnesses for deposition, as well as fourteen (14) hours of 30(b)(6) witness testimony spread across multiple witnesses (some additional beyond the fact witnesses). Meta has made—and will continue to make—extraordinary efforts to substantially complete document productions for witnesses at least four days before the deposition, as the Court ordered at the July 20, 2026, case management conference. Meta presently believes that all of its remaining deposition witnesses will be presented for deposition by September 4, 2026, and that their document productions will be substantially complete in

of these productions was August 6, August 7, and August 9, 2026, respectively. Entrepreneur has represented to Meta that it will provide the required search disclosures on August 12, 2026 for Mssrs. Shea and Strain, and on August 19, 2026 for Mr. Frazier. Failure to provide this information sooner prejudices Meta, given that the parties cannot meet and confer over additional, appropriate search terms until quite late in the fact discovery period.

accord with the four-day rule before their depositions.  However, Meta now needs to raise for the Court the possibility that document productions for <u>non</u>-deponent custodians may not be completed by September 4.

Before addressing the details, Meta first notes that with respect to Entrepreneur Media's position on this issue, it can prioritize its work to accommodate exactly what Entrepreneur Media asks for. Specifically, Entrepreneur Media asks for there to be a focus on completing work by September 4 for the 10 custodians it identified pursuant to Paragraph 4 of the ESI Protocol (Dkt. 60).  Meta is willing to work with Entrepreneur Media to ensure that this occurs, and intends to confer further with Entrepreneur Media about this in the coming days in advance of making any application for relief from the September 4 deadline with respect to *other* custodians.  As Entrepreneur Media notes, 8 of its 10 selected custodians are deponents (and thus subject to the rule that productions must be complete four days before deposition—a requirement that Meta believes it will be able to meet as to remaining deponents). The other 2 of the 10 are not going to be deposed, but Meta is prepared to prioritize production of their documents, similar to what it was able to do with respect to a single witness (initials WL) who cannot sit for deposition but whose files were ordered produced on a prioritized basis by August 12 so that a replacement can be identified if necessary.  In short, the issue Meta raises and describes in more detail below is not that *nothing* can or will be done between now and September 4. Quite the contrary: a great deal has been done, is being done, and will be done by September 4. The problem is that completion of *everything*—in particular, production of custodial files for all of the approximately 20+ witnesses whom no one is seeking to depose—may not be possible by September 4. In any event, Entrepreneur Media has reasonably asked in this statement that there be a plan to ensure that productions from the 10 custodians Entrepreneur Media selected be prioritized and completed by September 4, and Meta is committed to achieving that.  Thus, there is very little, if anything, in dispute amongst the parties on the points Meta sets out in greater detail below.

With that in mind, Meta provides the following overview of the challenge it foresees in meeting *all* document production obligations—for the full roster of 40+ custodians—by September 4.  To give brief background: In addition to producing all custodial files for deponents, Meta is also under an

obligation to produce documents from an additional array of approximately twenty (20) non-deponent custodians, pursuant to the ESI Protocol in the case (Dkt. 60). Those individuals include significant expansions of productions from the custodial files of twenty-four (24) custodians in the *Kadrey* matter, plus ten (10) new custodians that Entrepreneur selected for this matter (as well as at least six (6) additional custodians by virtue of the Court's order that all deponents will also be custodians, bringing the overall total to at least forty (40)).

With  the September 4, 2026 fact discovery deadline approaching, Meta continues to work diligently to meet it and is not requesting an extension at this time. Meta notes, however, that it may need to return to the Court next week to seek a brief extension in order to complete non-deponent custodial data productions, in part due to the expansion of discovery obligations in this matter.  More specifically and notwithstanding Meta's substantial efforts to expand both technical and human resources, the massive volumes of data that are still required to be collected, processed, and reviewed for production in this matter may not be completed within the current schedule; it may not be possible for the remaining unprocessed data to be produced by the September 4 deadline.

Meta initially raised concerns about this with Plaintiffs approximately two weeks ago, and over the past two weeks has been working as hard as possible to avoid a situation where document productions are not completed by September 4. For instance, Meta's document review team consists of over 200 document reviewers, and work is happening seven days per week for reviewers as well as a large team of e-discovery personnel at Meta and its vendors undertaking extensive efforts to collect and process documents as quickly as possible. Despite those efforts, it is possible the document productions may not be completed on time given the technical constraints and the time needed to complete production of the documents.

Meta has been prioritizing production of custodial data for deponents (in accord with the four-day rule) so as to ensure that depositions remain on-schedule and stay on track to be fully completed by September 4.  Even if Meta requests an extension (and it expects to be able to make a formal request if necessary next week), Meta presently anticipates that the depositions will proceed as scheduled, with document productions substantially complete before the remaining depositions.

At this point, however, productions for individuals who are <u>not</u> being deposed may not be completed on time. Meta is working to determine exactly how much time beyond September 4 may be required to complete productions for non-deponent custodians.

Plaintiffs have indicated that they cannot take a position on any request to extend the September 4 deadline.  Meta wanted to be transparent in continuing to identify the challenges and potential issue for non-deponent custodian production now, so as to allow Meta and Plaintiffs to avoid spillover impact to other aspects of the case schedule.

**Entrepreneur's Position:** Entrepreneur does not seek an extension of the fact discovery cutoff. The Court advised on July 31 that it "cannot possibly imagine that there will be any continuances in … this first wave of cases." 7/31/2026 Tr. 15:19-20. EM has structured its remaining discovery accordingly and asks that the September 4 date stand.

As to EM's custodians, the premise of Meta's request does not hold. EM identified its ten custodians in May 2026: Beldock, Scissors, Civin, Foss, Montalvo, Niemczura, Scialom, Venus, Heafield, and Reis. Meta has had those names for three months. Nine of the ten are deposition witnesses, and their productions are governed by the four-day rule Meta says it is meeting. Four have already been deposed. Venus is set for August 18, Reis for August 25, Beldock for August 26-28, and Scissors for September 3. Mr. Heafield is a former employee residing outside the jurisdiction and is not available for deposition. Exactly one of EM's ten custodians is a non-deponent: Mr. Niemczura. Meta's request for additional time to produce non-deponent custodial files therefore concerns, as to EM, a single custodian identified in May.

EM takes no position on Meta's obligations to the coordinated Plaintiffs, whose custodian lists differ from EM's. EM asks only that any relief the Court considers be measured against the actual scope of what remains outstanding, and that it not be granted on a premise that does not describe EM's discovery.

**B.     Depositions**

In total, Entrepreneur will have completed ten (10) fact depositions of Meta witnesses in the months of July and the first two weeks of August. The parties have tentatively scheduled many of the remaining witnesses, as follows:

- Shelley Venus on August 18, 2026;

- Anna Grosul on August 21, 2026 (third party);

- Amrish Acharya on August 21, 2026 (as a Rule 30(b)(6) deponent);

- Affonso Reis on August 25, 2026 (third party);

- James Beldock on August 26–28, 2026 (in his individual capacity and as a Rule 30(b)(6) deponent);

- Han Fang on August 28, 2026;

- Shaun Lindsay on September 1 and 2, 2026 (as a Rule 30(b)(6) deponent);

- Lauren Scissors on September 3, 2026 (in her individual capacity and as a Rule 30(b)(6) deponent); and

- Karthik Sankararaman on September 4, 2026.

With regard to depositions of Entrepreneur witnesses, since July 29, 2026, Meta has deposed four (4) Entrepreneur witnesses, and is slated to depose several others by the end of the month:

- Chris Damore on August 17, 2026;

- Brittany Robins on August 18, 2026;

- Bill Shaw on August 19, 2026;

- Lucy Gekcyan on August 20, 2026; and

- Jason Feifer on August 25, 2026.

So far, Meta has held open all of the depositions due to Entrepreneur's deficient productions, and Meta reluctantly expects to have to do the same for the forthcoming depositions. Meta is making concerted efforts to streamline party depositions, such as determining the deposition of Jessica Thomas was not necessary at this time based on a review of her custodial production.

Last week, Meta served Entrepreneur with a Rule 30(b)(6) deposition notice outlining eighteen (18) topics of requested testimony.  As of the filing of this statement, Entrepreneur has not yet identified a corporate representative to testify concerning any of these 18 topics or served responses and objections.

Based on its review of custodial documents and the depositions of Entrepreneur's witnesses, Meta respectfully asks the Court for leave to depose up to five (5) third-party witnesses. Meta currently intends to serve deposition subpoenas on the following third parties: Bloomberg (who, according to Entrepreneur witness testimony, reached out to Entrepreneur regarding a licensing opportunity that never came to fruition), Advantage Media (with whom Entrepreneur entered into a book publishing licensee agreement in 2025), Jeff Herman (a literary agent who has worked with Entrepreneur and some of its authors), and Hallie Warshaw (former Director of Entrepreneur Press Books). Meta may identify additional third parties as depositions continue.

Entrepreneur's Position:

Concerning Meta's Rule 30(b)(6) notice, Meta served this notice in the late evening of Thursday August 6, 2026.  Entrepreneur Media is preparing its responses and objections and will provide the names of its corporate representatives in short order.

Concerning Meta's request for leave to depose up to five (5) third party witnesses, as of the filing of this statement, Meta has yet to identify, or as far as Entrepreneur is aware serve, a single third party witness.

**B.    Document Productions**

*Entrepreneur's Production and Responses to Meta's Requests for Production*

Meta's Position: Entrepreneur's productions have been and remain woefully deficient and incomplete, including its custodial productions.  During a conferral on August 7, 2026, counsel for Entrepreneur suggested that it was unaware prior to the initial depositions of its witnesses that they used Slack regularly to communicate about work-related matters.  Counsel confirmed that they had not previously engaged in a systematic collection of any Slack messaging, and only had just recently begun to do so.  They have not yet applied any search terms to the Slack messaging, and the handful of Slack messages produced to date were the result of screenshots taken by one of the deponents based on his own

identification of the messages. Entrepreneur's admitted failure to systematically collect, search, and produce responsive Slack messages from all (or any) of its custodians renders each of its custodial productions incomplete. As of this filing, Entrepreneur could not provide an estimated date for completed collection and search of Slack messaging, which makes it unclear whether Meta will have completed custodial production in sufficient time to continue deposition questioning of those witnesses prior to the close of discovery. Similarly, in response to testimony from custodians who indicated they used other forms of messaging (such as Google chat and text messages) to discuss work-related issues, Entrepreneur said only that it would get back to Meta with further information.

There are similar admitted deficiencies with respect to Entrepreneur's collection from Google Drive, which multiple deponents testified to using for purposes of storing work-related documents. Rather than collect Drives for custodians who used them for document storage, Entrepreneur conceded during the August 7 conferral that it asked custodians to collect any individual responsive documents that they recalled having saved in their Drives. The depositions to date reflect the deficiency of relying on witness memory alone, with multiple witnesses admitting to the existence of documents in Google Drive, including marketing plans and strategy documents, that Entrepreneur failed to produce. Entrepreneur has not committed to collecting Drives for custodians who admit to storing work-related documents in their individual Entrepreneur Google Drive folders, which raises Meta's concerns that the only documents it will receive are those that Entrepreneur's custodians happen to recall having, or happen to have attached to responsive emails, or happen to have testified about during their depositions.

These deficiencies are compounded by the fact that Entrepreneur is using incomplete and inadequate search terms for its custodial productions. To date, Entrepreneur has provided search term disclosures, as required by the ESI Protocol entered in this case, for only two of the five custodians (Charles Muselli and Jessica Thomas) for which it has made productions. These disclosures reveal meaningful gaps in Entrepreneur's search and collection of custodial files. For example, Entrepreneur did not include the term "copyright" or any variant thereof in its disclosed searches, purportedly because the hit count for that term alone was too high. Instead of crafting a narrowing Boolean search or other solution, Entrepreneur decided to omit the search term altogether. Entrepreneur's search terms also omit

key terms related to Advantage Media Group, the entity with which Entrepreneur entered into a trademark-licensing and royalty agreement.  Specifically, the terms do not account for the email domain used by Advantage Media personnel, common shorthand for the company (including "AM," "AMG," and "Advantage"), or key Advantage Media personnel.  Entrepreneur also failed to include search terms that would reveal documents reflecting certain licensing opportunities as well as assessments or activities (including Entrepreneur's own activities) relevant to the market for Entrepreneur's asserted works, including "pulp," "out of print," "obsolescence reserve," "overvalue," or any variants thereof.  Entrepreneur's provided list of search terms does not instill confidence that it effectively identified and reviewed documents and communications likely to contain responsive information.

In addition to incomplete and deficient productions, Entrepreneur appears not to have finished producing materials from custodial email mailboxes.  Meta received the first documents (totaling 1,245 documents) from the mailbox of Entrepreneur's CEO, Ryan Shea, one day *after* the July 23, 2026, court-ordered deadline (on July 24, 2026), and received additional productions hours before his deposition was set to begin on July 30, 2026.  Entrepreneur made yet another production on August 10, 2026.  With regard to Entrepreneur's first deponent, Michael Frazier, whose custodial productions Entrepreneur has acknowledged were impacted by an unspecified technical error that caused emails that pre-date May 2025 to have not been processed, Entrepreneur informed Meta on August 7 that it was starting his collection, review, and production from scratch.  Entrepreneur also did not complete its production of Charles Muselli's custodial file four days prior to his deposition as required by this Court's order, producing an additional 7,000 documents three days prior to the deposition.  For each of the depositions for which Entrepreneur failed to comply with the Court-ordered deadline, Meta has had insufficient time to do a full, thorough, and meaningful review of each production before the depositions. And given the time remaining in discovery, and Entrepreneur's inability to commit to a date of complete custodial productions that include Slack and Google Drive documents, it remains unclear how much, if any, time Meta will have to review the full custodial files prior to the close of discovery on September 4, 2026.

Meta is continuing to evaluate the substance of Entrepreneur's non-custodial productions to date, but has identified certain deficiencies in the production and in Entrepreneur's responses and objections

("R&Os").  The vast majority of Entrepreneur's non-custodial documents consist of the asserted works, materials related to the copyright registration of some of the asserted works, some but not all author agreements, partnership and licensing agreements, and various spreadsheets of data.  But during a recent CMC, Entrepreneur represented that it is asserting claims as to its entire catalog, rather than solely the works asserted in Exhibit A of its complaint.  Entrepreneur has not produced its entire catalog, nor the copyright registration materials for the same. Entrepreneur's R&Os indicate that it is withholding categories of documents inappropriately, about which the parties are conferring.

Entrepreneur's Position:

Entrepreneur has produced 216,317 custodial documents to date, and items specifically identified for production by Meta following depositions are due by August 14, 2026.  In fact, many have been produced already.  Meta raises the issue of Charles Muselli's production, however, it fails to mention that Entrepreneur Media produced 58,080 custodial documents for Mr. Muselli on July 31, 2026.  Entrepreneur already committed to produce Slack messages and Google Drive documents and is on a schedule to both collect the items and provide Meta updates concerning the same.  It is unclear why Meta still claims Mr. Shea's production includes no emails after 2022 when Entrepreneur quickly identified the tagging issue and accordingly produced an additional 9,423 documents—where 3,033 of them post-date January 1, 2022—on July 30, 2026.  Concerning Mr. Frazier, Entrepreneur has been transparent with both Meta and the Court that DISCO failed to collect the majority of Mr. Frazier's mailbox, thus necessitating an entirely new production.  Entrepreneur has already committed to providing Mr. Frazier's follow-on production no later than August 19, 2026.  Entrepreneur and Meta are meeting and conferring on Entrepreneur's and Meta's search terms and methodology.  Entrepreneur Media and Meta have also agreed that Entrepreneur Media would provide search terms related to prior custodial productions on August 12, 2026.

Regarding non-custodial productions, Entrepreneur has produced 13,816 documents to date, including copyright registration documents, author agreements, writer agreements, reversion of rights agreements, distributor agreements, requests for permissions for reprint, corporate succession documents, communications concerning AI accounts, books and article spreadsheets, internal communications and documents concerning AI and this litigation, global user reports, sales and shipment information, specific

items requested by Meta following depositions, and more. As Meta is already aware, Entrepreneur is supplementing its discovery responses and is not withholding any responsive, non-privileged documents in its possession, custody, or control based on an objection. Concerning its catalogue, Entrepreneur has already produced magazines spanning the years 2009 to 2026 and 532 books. Meta now complains about Entrepreneur not producing its entire catalogue. Producing these works in their entirety—along with the painstaking process of purchasing and scanning hundreds of them—was only required because of Meta's purported decision to not track what works it used to train its LLM nor apparently having a method for identifying what works were used on the backend without possessing the entire work. Regardless, Entrepreneur anticipates the production of its works to be complete on August 18, 2026.

·   **C.   Written Discovery**

       **1.   Interrogatories**

*Entrepreneur's Responses to Meta's Interrogatories*

    <u>Meta's Position</u>: Meta has propounded five sets of interrogatories (on January 5, 2026, June 10, 2026, June 19, 2026, July 28, 2026, and August 5, 2026) totaling 25 interrogatories. Entrepreneur served R&Os on March 6, 2026 (Set One), April 30, 2026 (Supplemental Set One), and July 20, 2026 (Sets Two and Three). Responses to the fourth and fifth sets are due on August 27, 2026, and September 4, 2026, respectively. Meta repeatedly has informed Entrepreneur about the deficiencies in many of its interrogatory requests, including in response to Interrogatory Nos. 1-3, 5-6, 8-10, 12, and 16. Entrepreneur has agreed to amend each of these responses no later than August 14, 2026. Meta intends to inform Judge Hixson in advance of the next Discovery Status Conference about whether Entrepreneur's amendments cure the deficiencies.

    <u>Entrepreneur's Position</u>:

    Entrepreneur agrees with the above concerning its meet and confer efforts with Meta with the exception of agreeing to supplement its responses by August 14, 2026. Entrepreneur will confer with Meta concerning a reasonable date by which to supplement its responses.

### 2.  Requests for Admission (RFAs)

*Entrepreneur's Responses to Meta's RFAs*

Meta's Position: Meta has propounded three sets of RFAs (on April 10, 2026, April 17, 2026, and June 10, 2026), totaling 198 RFAs.  Entrepreneur served R&Os on May 22, 2026 (Set One); June 1, 2026 (Set Two); and July 20, 2026 (Set Three)).  On July 31, 2026, Entrepreneur served Amended R&Os to the first set of RFA and amended its responses to RFA Nos. 5, 6, 8-18, 33, 39, and 69.  The parties are at an impasse relating to Entrepreneur's deficient responses to RFA Nos., 2, 23, 33-34, 83, 89-91, 98, 166, 168-170, 176-177, and 182, which provide explanatory narrative that improperly caveats the admissions or denials.  Meta intends to seek relief from Judge Hixson in advance of the next Discovery Status Conference.  Entrepreneur has agreed to amend additional RFA responses that Meta identified as deficient by August 14, 2026.

Entrepreneur's Position:

Entrepreneur agrees with the above concerning its meet and confer efforts with Meta with the exception of agreeing to amend its responses by August 14, 2026.  Entrepreneur will confer with Meta concerning a reasonable date by which to amend its responses.

Dated: August 12, 2026

By *s/   Karen Dunn*

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
Meryl Governski (*pro hac vice)*
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com
mgovernski@dirllp.com

By     *s/ Moez M. Kaba*

**HUESTON HENNIGAN LLP**
Moez M. Kaba (457456)
Michael M. Purpura (338216)
Lee Linderman (280743)
Stephanie Xiao (340141)
Tai Chien (*pro hac vice*)

**NEWMEYER & DILLION LLP**
Michael B. McClellan (241570)
Benjamin P. Pugh (202025)
Jason L. Morris (295271)
Harlye S. Carlton (261641)

**COOLEY LLP**
Bobby A. Ghajar (SBN 198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Mark R. Weinstein (SBN 193043)
Elizabeth Lee Stameshkin (SBN 260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (SBN 314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Email: khartnett@cooley.com

Phillip E. Morton (*pro hac vice*)
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
Email: pmorton@cooley.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Angela Dunning
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant*
*META PLATFORMS, INC.*

*Attorneys for Plaintiff*
*ENTREPRENEUR MEDIA, LLC*

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:25-cv-09579-VC-TSH

**FILER'S ATTESTATION**

I, Lee Linderman, am the CM/ECF user whose ID and password are being used to file this Joint Case Management Statement. Pursuant to Civil Local Rule No. 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

By:
     *s/ Lee Linderman*