# EXHIBIT A

HUESTON HENNIGAN LLP
Moez M. Kaba (#257456)
mkaba@hueston.com
Michael M. Purpura (#338216)
mpurpura@hueston.com
Lee Linderman (#280743)
llinderman@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

NEWMEYER & DILLION LLP
Michael B. McClellan (#241570)
Michael.McClellan@ndlf.com
Benjamin P. Pugh (#202025)
Benjamin.Pugh@ndlf.com
Jason L. Morris (#295271)
Jason.Morris@ndlf.com
Harlye S. Carlton (#261641)
Harlye.Carlton@ndlf.com
895 Dove Street, Second Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Plaintiff
Entrepreneur Media, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Entrepreneur Media, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>Meta Platforms, Inc.,<br><br>                    Defendant. | Case No. 3:25-cv-09579-VC<br><br>**PLAINTIFF ENTREPRENEUR MEDIA, LLC's NOTICE OF 30(b)(6) DEPOSITION**<br><br>Date:        August 2, 2026<br>Location: To be agreed upon by the parties |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Meta Platforms, Inc. ("Meta") is hereby directed to designate one or more officers, directors, managing agents, or other persons who consent to testify and are most knowledgeable and competent to testify regarding the following topics and related or supporting facts occurring between January 1, 2022 and the present (the "Relevant Period").

**DEFINITIONS:**

"MODELS" means the Llama models (Llama 1 through Llama 4, all versions) and Muse Spark (internally, "Avocado").

"META AI" means Meta's user-facing generative AI assistant, including the chat interfaces accessible through Facebook, Instagram, WhatsApp, Messenger, and meta.ai.

"PLAINTIFF'S WORKS" means (a) the works identified in Exhibit A to the Complaint (Dkt. 1-1); (b) the works identified by ISBN provided to Meta on May 27, 2026; (c) content authored or owned by Entrepreneur Media, LLC and published on entrepreneur.com, franchise500.com, entm.ag, howsuccesshappens.com, secondact.com, secondactmag.com, secondactliving.com, to the extent such content was acquired or ingested through web crawlers or web-scraped datasets, including the Common Crawl data identified in Meta's Supplemental Response to Plaintiff's Interrogatory No. 20 and SpiderMate data; and (d) content published in Entrepreneur Magazine or other magazines published by Entrepreneur Media, LLC.

"ENGAGEMENT METRICS" means the user-engagement metrics and dashboards described in Meta's Supplemental Response to Plaintiff's Interrogatory No. 10, including but not limited to those identified therein.

**MATTERS FOR EXAMINATION:**

**Topic 1:** The datasets, data sources, ingestion, and processing pipeline used or planned for Llama 4, including the ingestion and processing of Anna's Archive and the composition of the Llama 4 pre-training data mix.

**Topic 2:** Meta's determination of whether content from the Books3, LibGen, Anna's Archive, Z-Library, or Internet Archive datasets was included in, excluded from, or carried over into the training data for Muse Spark (a/k/a "Avocado"), including the content-level scanning described in Meta's Supplemental Response to Plaintiff's Interrogatory No. 21, the methodology used, the persons who performed or directed it, and the results; and the sources of the training data actually used for Muse Spark, including any purchased or scanned content.

**Topic 3:** The "fiction removal," including the content removed, referenced in, e.g., META_ENTRE_KADREY_00255175.

**Topic 4:** Meta's fine-tuning and post-training of the MODELS, including supervised fine-tuning (SFT) and reinforcement learning from human feedback (RLHF), and any tuning objectives directed at user engagement, session length, or retention.

**Topic 5:** Whether and how Meta designed, tuned, or configured META AI to answer within Meta's own surfaces and to reduce or discourage users' clicking through to external sources, and how Meta measured that objective. See Meta's Responses and Supplemental Responses to Plaintiff's Interrogatory Nos. 10 and 12.

**Topic 6:** Meta's user research and studies concerning how users interact with META AI, including information-seeking behavior, reliance on META AI in lieu of consulting external sources or original publications, and any research bearing on whether META AI substitutes for professional, instructional, or business publications.

**Topic 7:** The user-engagement and retention ENGAGEMENT METRICS Meta tracks for META AI—in other words, how Meta measures whether META AI is working, whether people are coming back to it, and what they do with its answers—including whether users click on sources linked with outputs, the "search trigger rate," repeat prompting, reactions, copying, and forwarding, and the dashboards on which those metrics are maintained. *See* Meta's Supplemental Response to Plaintiff's Interrogatory No. 10.

**Topic 8:** Meta's use-case and topic taxonomies and classifiers for META AI, as described in, e.g., META_ENTRE_KADREY_00035316—in other words, the categories Meta uses to understand and sort what its users are asking META AI about—including the classification and measurement of instructional, "how-to," business/professional, and "business and finance" prompts.

**Topic 9:** The use of retrieval-augmented generation (RAG), document stores, and source links or citations in META AI, including design decisions about whether and how outputs cite or link to external sources and data concerning user engagement with those links.

**Topic 10:** Whether Meta designed, tested, enabled, or restricted the generation of book-length or chapter-length outputs, or step-by-step instructional business or professional content, and the reasons for those choices. *See* Meta's Supplemental Response to Plaintiff's Interrogatory No. 11.

**Topic 11:** The effect of the MODELS and META AI on whether people visit third-party websites and on the markets for professional, instructional, or business-oriented publishing,

PLAINTIFF'S NOTICE OF 30(b)(6) DEPOSITION

including (a) any analyses, assessments, or data, whether or not styled as a formal "study," concerning whether META AI is replacing, reducing, or diverting traffic from traditional sources of the kind of content Plaintiff publishes—including substitution, cannibalization, referral suppression, off-domain referral traffic, or search substitution; (b) the scope and results of the reasonable inquiry underlying Meta's Responses to Plaintiff's Interrogatory Nos. 8 and 9; and (c) the existence and general subject matter of any such analyses or assessments withheld on grounds of privilege.

**Topic 12:** Meta's testing, measurement, and findings regarding verbatim or near-verbatim reproduction by the MODELS of content from training works of the types at issue (books, guides, and instructional or business content), and any output-side mitigations. *See* Meta's Supplemental Response to Plaintiff's Interrogatory No. 13.

**Topic 13:** Meta's internal measurement of the contribution or value of copyrighted book, magazine, and instructional or scientific content to the performance and quality of the MODELS, including any ablation or benchmark studies.

**Topic 14:** Meta's consideration, negotiation, or valuation of licensing or purchasing books, magazines, or professional or instructional content for use with the MODELS, and any internal assessment of the cost, availability, or existence of a market for such licenses or purchases, including any internal assessment of the economic value to Meta of using content already obtained from Library Genesis, Anna's Archive, Z-Library, Internet Archive, or similar sources in lieu of licensing or purchasing equivalent content.

**Topic 15:** The monetization and commercialization of the MODELS, including revenue models, pricing, enterprise and consumer deployment, and internal projections of the commercial value of Llama-based products.

**Topic 16:** Project Vellum, including its purpose, scope, decision-making, and its relationship to licensing, to the training data for the MODELS (including Muse Spark), and to PLAINTIFF'S WORKS.

**Topic 17:** Meta's identification, inclusion, and use of PLAINTIFF'S WORKS within the training corpora for the MODELS, and any reproduction of PLAINTIFF'S WORKS in the output

PLAINTIFF'S NOTICE OF 30(b)(6) DEPOSITION

of MODELS.

**Topic 18:** How Meta has marketed, promoted, or publicly positioned the MODELS, including marketing materials, press releases, keynote presentations, public statements by Meta executives, developer outreach, and internal marketing strategy, and any statements regarding the capabilities of the MODELS in domains relevant to PLAINTIFF'S WORKS.

**Topic 19:** Usage and adoption statistics for the MODELS beyond META AI, including open-source downloads, API access, enterprise and developer outbound licensing or deployment of the MODELS, and any metrics Meta captures regarding third-party applications or services built on or incorporating the MODELS.

**Topic 20:** Meta's assessment of the addressable market or markets for the MODELS and META AI, including any competitive-landscape analyses, estimates of the size or dollar value of the market or markets for the MODELS, and how Meta defines the markets in which Llama-based products or META AI compete.

**Topic 21:** Meta's document retention policies and litigation-hold practices as they relate to this action, including the date(s) on which Meta's preservation obligations arose (including any obligation arising from related litigations, including *Kadrey v. Meta Platforms, Inc.*), the scope and timing of any litigation holds, the custodians and data sources subject to preservation, and any destruction or loss of documents or data relevant to the topics identified in this Notice.

Dated:  July 2, 2026

HUESTON HENNIGAN LLP

By: _____
Moez M. Kaba
Michael M. Purpura
Lee Linderman
Attorneys for Plaintiff
Entrepreneur Media, LLC

NEWMEYER & DILLION LLP
Michael B. McClellan
Benjamin P. Pugh
Jason L. Morris
Harlye S. Carlton
Attorneys for Plaintiff
Entrepreneur Media, LLC

PLAINTIFF'S NOTICE OF 30(b)(6) DEPOSITION

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 523 West 6th Street, Suite 400, Los Angeles, California 90014.

On July 2, 2026, I served the foregoing document described as: **PLAINTIFF ENTREPRENEUR MEDIA, LLC'S NOTICE OF 30(b)(6) DEPOSITION** on the interested parties in this action as stated below:

**ATTORNEYS FOR META PLATFORMS, INC.**

Jessica E Phillips, Esq.
Karen Leah Dunn, Esq.
Kyle N. Smith, Esq.
John Paredes, Esq.
Dunn Isaacson Rhee LLP
401 Ninth Street, N.W.
Washington, DC 20004
Telephone:    (202) 240-2900
E-mail:    jphillips@dirllp.com
          kdunn@dirllp.com
          ksmith@dirllp.com
          jparedes@dirllp.com

Anna Stapleton, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone:    (628) 432-5100
Facsimile:    (628) 232-3101
E-mail:    astapleton@paulweiss.com

Kathleen R. Hartnett, Esq.
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone:    (415) 693-2071
Facsimile:    (415) 693-2222
E-mail:    khartnett@cooley.com

Bobby A. Ghajar, Esq.
Cooley LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone:    (310) 883-6400
Facsimile:    (310) 883-6500
E-mail:    bghajar@cooley.com

Phillip Morton, Esq.
Cooley LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone:    (202) 842-7800
E-mail:    pmorton@cooley.com

Mark R. Weinstein, Esq.
Elizabeth Lee Stameshkin, Esq.
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400
E-mail:    mweinstein@cooley.com
          lstameshkin@cooley.com

[X]    BY E-MAIL OR ELECTRONIC TRANSMISSION: I served the persons at the e-mail addresses listed above from email address llinderman@hueston.com.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct. Executed on July 2, 2026, at Los Angeles, California.

_____
Lee Linderman

-6-