September 1, 2026
Via ECF
The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, Case No. 3:25-cv-09579-VC
**Joint Letter Brief RE: Meta's Motion to Compel Plaintiff's Discovery Responses**

Dear Magistrate Judge Hixson:

Defendant Meta Platforms, Inc. ("Meta") and Plaintiff Entrepreneur Media, LLC ("EM"), parties to the above-captioned action, submit this letter brief regarding EM's responses to Meta's First and Third Sets of Requests for Admission ("RFAs"), relevant excerpts of which are attached herewith as Exhibits 1, 2, and 3 (Responses to RFAs). Meta served four sets of RFAs, on April 10, 2026; April 17, 2026; June 10, 2026; and August 5, 2026. EM served responses and objections on May 22, 2026 (Set One); June 1, 2026 (Set Two); and July 20, 2026 (Set Three). EM's responses to the fourth set are due September 4, 2026.

The parties met and conferred on Friday, August 7, 2026, during which EM confirmed it intended to stand on its responses to RFA Nos. 2, 23, 33-34, 83, 89, 91, 98, 166, 168-170, 176-177, and 182. On August 16, 2026, Meta provided EM with the first draft of a letter motion to compel EM to amend responses to those RFAs. After reviewing Meta's portion of this letter, EM served amended responses to RFA Nos. 2, 23, 83, 89, 98, 166, 169, and 170, which Meta currently is reviewing. The requests at issue in this letter are RFA Nos. 33, 34, 91, 168, 176, and 182, which are from Meta's First and Third Sets of RFAs. As explained below, Meta's position is that EM's responses are deficient and it respectfully requests the Court's help in getting responsive answers from EM. EM's position is that its responses comply with Rule 36, and EM respectfully asks that the motion be denied as to these requests.

## I. **META'S POSITION**

Meta moves to compel a subset of RFAs for which EM has evaded response, either by rewriting the RFAs or providing "unnecessary commentary" violating Federal Rule of Civil Procedure 36 ("Rule 36"). EM should amend those responses to strike the commentary and answer the RFAs as written without caveat.[1] Meta reserves the right to move on RFA Nos. 2, 23, 83, 89, 98, 166, 169, and 170, all of which Meta is evaluating since EM amended.

**RFA Nos. 33-34:** RFA No. 33 asks EM to admit that all the Asserted Works are available to be read online, either for free or for a subscription fee. RFA No. 34 asks the same as to those Asserted Works that are serials, so that a denial resting on a single non-serial work does not obscure EM's position as to the serials. EM denied both, but not on the terms Meta asked. In its July 31 amended response to No. 33, EM objected that the request "conflates authorized availability with unauthorized availability"—that is, that the RFA does not distinguish between copies EM authorized and copies posted without its permission—and denied on that basis. But these RFAs ask only whether the works are available online, not who or whether anyone "authorized" that availability. EM cannot add an element of "authorization" and on that basis deny it. *See Pellerin v. Wagner*, 2016 WL 950792, at *4 (D. Ariz. Mar. 14, 2016). EM's analogy to *Los Angeles News Service v. CBS Broadcasting, Inc.*, 305 F.3d 924 (9th Cir. 2002), is misplaced because that decision related to an RFA that asked if the defendant had "used" a video "without authorization of the copyright owner." The Ninth Circuit agreed that "used" was vague in that case because the public could "use" a video even without infringing any copyright. The RFAs here are entirely different, including because they do not include the word "authorization" or require an assessment of copyright law. EM injected the term "authorized" to change what the RFA asks, and EM cannot rely on its editing of the RFAs to create vagueness that does not exist. The Court should compel EM to admit or deny RFA Nos. 33 and 34 as drafted.

**RFA No. 91:** RFA No. 91 asks EM to admit that it does not possess "logs or other direct technical evidence" that any Meta AI Model "was trained on specific files containing any ASSERTED WORK." Though the RFA was focused on direct technical evidence, EM reimagined it, stating that it possesses "evidence, including documents produced in the related *Kadrey v. Meta* litigation, establishing" that Meta "trained its AI models on datasets that are known to contain the Asserted Works." Its response thus answers a different question. The RFA asks for file-level technical evidence—logs or the like—that particular files containing an Asserted Work were used in training. EM's response points to generalizations about large datasets that allegedly included the works. That a work sits within a large dataset Meta acquired does not establish that the file containing it was among those on which any model was actually trained. EM's own answer confirms the gap, stating that its experts "are in the process of analyzing" Meta's hard-drive productions "to further identify the specific files and data on which Defendant's models were trained"—an acknowledgment that EM does not now possess the evidence the request describes. EM must admit or deny No. 91 as drafted. EM's response in this letter appears to concede as much, and it must amend its response to RFA No. 91 to reflect the admission that EM is not in possession of such evidence independent from whatever technical evidence Meta has or will

[1] Rule 36 permits an explanatory answer only where the responding party states "in detail" why it "cannot truthfully admit or deny," where "good faith requires" qualification, or where it lacks knowledge after "reasonable inquiry." None of those circumstances are present here.

produce.

**<u>RFA Nos. 168, 176 & 182:</u>** These requests ask EM to admit that it lacks knowledge about third parties who allegedly received Asserted Works from Meta via torrenting: that it has no documents showing that any third party received a portion of an Asserted Work (No. 168); that it cannot identify any direct infringer (No. 176); and that it does not know whether any third party redistributed a copy (No. 182). EM's response answered none of these RFAs as drafted.

EM denied RFA Nos. 168, 176, and 182 with a generalized theory in place of an answer: that logs "reflecting the rates at which Meta uploaded torrent files," the report of Meta's expert "filed in the related *Kadrey* action," and "the operation of the BitTorrent protocol" establish that unnamed swarm participants necessarily received, reproduced, and redistributed portions of the Asserted Works, "independent of any individual participant's name." That is not responsive. No. 168 seeks an admission regarding documents EM has (or does not have); No. 176 asks whether EM can identify a third party who received a copy of its asserted works from Meta via torrenting; and No. 182 relates to EM's knowledge or lack thereof. A protocol-level inference about what must have happened is not a document, an identification, or knowledge. Nor does EM's inference answer the question asked: whether EM has documents or knowledge evidencing whether "any third party" received its asserted works in particular from Meta via torrenting and what they did with those asserted works in particular. The Court should compel EM to admit or deny these RFAs as drafted, without qualification or commentary, including about inferences that do not answer the specific question asked. In its response in this letter, EM claims it is justified in denying the RFA because the third parties are "participants in the relevant swarms who downloaded portions of the asserted works from Meta." The RFAs on their face ask for "any third party" in the singular (i.e., not in a group) and, even if they did not, whatever EM may know about "swarms who downloaded portions of the asserted works from Meta" does not answer what the RFAs ask.

## II. <u>ENTREPRENEUR MEDIA'S POSITION</u>

EM served amended responses to RFA Nos. 2, 23, 83, 89, 98, 166, 169, and 170 on August 24, 2026. Only six requests remain in dispute—RFA Nos. 33, 34, 91, 168, 176, and 182—out of the 198 total requests Meta has served. Meta asks the Court to strike EM's explanations and compel bare answers "without qualification or commentary." Rule 36(a)(4) says the opposite: when good faith requires a party to qualify an answer, "the answer must specify the part admitted and qualify or deny the rest." Moreover, a motion under Rule 36(a)(6) tests whether an answer is responsive and specific, while Rule 37(c)(2) tests after trial whether a denial was well founded. *Netlist Inc. v. Samsung Elecs. Co.*, 341 F.R.D. 650, 657 (C.D. Cal. 2022). A motion to compel cannot be granted merely "because Plaintiff may be dissatisfied with the responses or he did not get the responses he wanted to secure." *Cross v. Jaeger*, 2015 WL 1412785, at *3 (D. Nev. Mar. 27, 2015). Here, each of the six responses contains a specific denial and satisfies Rule 36.

**<u>RFA Nos. 33 and 34</u>:** RFA No. 33 asks EM to admit that ***all*** asserted works are available to be read online for free or for a subscription fee; No. 34 asks the same as to the serials. EM denied both. Meta now accuses EM of adding an element of authorization even though the requests as written ask only whether the works are available to be read online for free or for a subscription fee. But Meta omits EM's lead objection, which is that this phrase is "vague and ambiguous" because it does not distinguish between the availability of works EM has authorized to be read

online and those posted by third parties without EM's permission.

"Requests which are phrased so as to infer unfairly a particular or varied conclusion from the fact admitted are objectionable." *Johnstone v. Cronlund*, 25 F.R.D. 42, 45 (E.D. Pa. 1960). The Ninth Circuit has upheld a vagueness objection to a similarly ambiguous request in the copyright context. In *Los Angeles News Service v. CBS Broadcasting, Inc.*, the district court sustained a vagueness objection to an interrogatory that the defendant had "used" the plaintiff's videotape without the copyright holder's authorization because there can be "use" of a copyrighted work without infringement. 305 F.3d 924, 932 (9th Cir. 2002). The Ninth Circuit affirmed, recognizing that the plaintiff "would seek to use its response as evidence" of copyright infringement "when, as the district court correctly concluded, the phrasing of the interrogatory was insufficiently specific for an affirmative answer to be given that specific construction." *Id.* at 937.

Meta's attempt to distinguish *Los Angeles News Service* misreads what made the request there objectionable. The defect at issue was that the word "used" embraced both infringing and non-infringing conduct. 305 F.3d at 937. "Available" carries the identical defect. A work may be "available to be read online" because its rightsholder has authorized it to be, or because it has been posted through shadow libraries without permission. Those are different facts with opposite significance, and Meta's intended use proves the point: Meta will offer any "availability" admission at summary judgment to argue that the Asserted Works were already available for the taking and that its copying therefore caused no market harm. EM did not "inject" authorization into the request; it identified the ambiguity latent in "available," just as the objection in *Los Angeles News Service* identified the ambiguity latent in "used." *Id.*

**RFA No. 91:** EM denied the request. A denial is a complete answer under Rule 36(a)(4), and "a denial is a sufficient response to a request for admission under Rule 36." *Workman v. Chinchinian*, 807 F. Supp. 634, 648 (E.D. Wash. 1992). Meta's issue is not with the form of EM's answer but with the request Meta drafted.

Rule 36 cannot do the work Meta asks of it. Admissions serve "to facilitate proof with respect to issues that cannot be eliminated from the case" and "to narrow the issues by eliminating those that can be." *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007). They are "not principally discovery devices," *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998), and presuppose that the requesting party already knows the facts, 8B Wright & Miller, Federal Practice and Procedure § 2253. Whether Meta trained on the Asserted Works is the central disputed issue in this case; no admission can eliminate it. Meta seeks a concession about the state of EM's proof on that issue—at a moment when Meta's own responses cannot say which of EM's works it trained on.[2] That the request is framed in the negative compounds the problem, but EM

[2] Meta is the only party that has ever had logs of the specific works it used. Meta built the models, assembled the datasets, ran the training, and controls the logs. EM has sought that identification since March. EM served Interrogatory No. 19 on **March 10, 2026**, asking Meta to identify EM's works in Meta's training data. Meta responded on April 23 under Rule 33(d) by pointing to multi-terabyte hard drives. EM identified deficiencies on April 24 and circulated a letter brief in early May; Meta committed to supplement to avoid motion practice and told Judge Chhabria on May 22 that it expected to identify the works by the end of June. It did not. On August 4, Meta served a supplemental response identifying works that "may be present," supported by exhibits that did not reach 87 of the books EM produced. At the August 14, 2026 hearing, Judge Chhabria observed that if "Meta is not capable of reliably confirming or denying … that the book was used for training purposes, I assume that we would need to . . . just presume that it was, right, because … Meta has to be able to reliably identify which books that it used for training purposes. And if it

answered anyway, and "a denial is a sufficient response to a request for admission under Rule 36." If Meta believes the denial is unfounded, its remedy is Rule 37(c)(2) after trial. *Netlist*, 341 F.R.D. at 657.

**<u>RFA No. 168</u>:** RFA No. 168 asks EM to admit that it has "no documents" showing that any third party received any portion of an asserted work from Meta via torrenting. EM denied the request, pointing to documents produced by Meta, including but not limited to "logs reflecting the rates at which Meta uploaded torrent files corresponding to the datasets containing the Asserted Works to other peers." These logs are documents. What Meta really takes issue with is the inference that EM legitimately draws from those documents showing Meta's torrenting, but that is a merits question for a factfinder to resolve, not a Rule 36 defect. The Ninth Circuit's sufficiency inquiry asks whether the answer specifically denies or explains why the party cannot admit or deny, *Asea*, 669 F.2d at 1245; it does not ask whether the inferences the responding party may draw from the evidence are correct. Meta says that a "protocol-level inference about what must have happened is not a document," but EM is not offering a mere "protocol" as a substitute for documents. The protocol is reflected in documents, and EM responded to this RFA based on its understanding of legitimate inferences as to what the documents show: Meta acquired the datasets containing the asserted works using a protocol that is by default configured so that downloaded files can be reuploaded to other computer systems. Meta is free to argue at summary judgment that its upload logs do not show what EM says they show. But Meta is not entitled to an order striking EM's answer just because it disagrees with EM's reading of the produced documents.

**<u>RFA Nos. 176 and 182</u>:** These requests ask EM to admit that it is "unable" to or "cannot" identify any third party who received an asserted work from Meta through torrenting and who then engaged in "direct copyright infringement" of the same work (RFA No. 176), and whether any third party redistributed a copy of an asserted work (RFA No. 182). EM specifically denied both requests because EM ***can*** identify the actors and their conduct: the participants in the relevant swarms who downloaded portions of the asserted works from Meta, each of whom then made an unauthorized reproduction upon receipt. And EM knows that because of Meta's own upload logs and the default operation of the torrenting protocol Meta selected. Whether EM's basis for that knowledge withstands scrutiny is a question for Rule 37(c)(2) after trial, not Rule 36(a)(6) now.

Meta's argument that "any THIRD PARTY" is singular and so requires EM to identify one specific individual reads a naming requirement into the request that is not there. The word "any" means at least one; a showing that third parties—the participants in the swarms—received portions of the Asserted Works necessarily establishes that any such party did. EM cannot be compelled to answer as though the requests demanded a named individual when they do not. Meta's remaining objection—that receipt of portions of datasets containing the Asserted Works is not receipt of the Asserted Works "in particular"—disputes what EM's evidence proves, not whether EM answered. Rule 36(a)(6) tests responsiveness; Rule 37(c)(2) tests foundation after trial.

---

can't do that and if there is reason to believe that the book was used—like because it was part of a shadow library that Meta had downloaded—then I don't see … what conclusion could possibly be drawn in the case other than that Meta used the work for training purposes." (*See* Ex. D (Aug. 14, 2026 Hearing Tr.) at 10:19–11:11.) On August 17, Meta agreed to serve third supplemental responses by August 29 (books) and September 4 (magazines). Opening expert reports are due September 18.

Dated: September 1, 2026

Respectfully submitted,

By: *<u>/s/ Lee Linderman</u>*
Lee A. Linderman
Attorneys for Plaintiff Entrepreneur Media LLC

By: *<u>/s/ Karen L. Dunn</u>*
Karen L. Dunn
Attorneys for Meta Platforms, Inc.

**APPENDIX: RFAs and Substantive Responses**

| | |
|---|---|
| **Meta RFA No. 33** | Admit that all of the ASSERTED WORKS are available to be read online either for free or for a subscription fee. |
| **EM Substantive Response to RFA No. 33** | Plaintiff further objects that this Request conflates authorized availability with unauthorized availability, and that the availability of any of the Asserted Works through unauthorized channels is not attributable to Plaintiff. Subject to and without waiving the foregoing objections, Plaintiff denies this Request. |
| **Meta RFA No. 34** | Admit that each of the ASSERTED WORKS that are serials are available to be read online either for free or for a subscription fee. |
| **EM Substantive Response to RFA No. 34** | In addition to Plaintiff's Preliminary Statement and General Objections, which are incorporated herein, Plaintiff incorporates its objections to Request for Admission No. 33 herein. Subject to and without waiving the foregoing objections, Plaintiff denies this request. |
| **Meta RFA No. 91** | Admit that YOU do not possess logs or other direct technical evidence that any META AI MODEL was trained on specific files containing any ASSERTED WORK. |
| **EM Substantive Response to RFA No. 91** | Subject to and without waiving the foregoing objections, Plaintiff denies this Request. Plaintiff possesses evidence, including documents produced in the related *Kadrey v. Meta* litigation, establishing that Defendant trained its AI models on datasets that are known to contain the Asserted Works. Plaintiff's experts are in the process of analyzing Defendant's hard drive productions to further identify the specific files and data on which Defendant's models were trained. Plaintiff's ability to fully respond to this Request has been impaired by the incomplete state of Defendant's discovery productions. |
| **Meta RFA No. 168** | Admit that YOU have no documents showing that a THIRD PARTY received from Meta via TORRENTING a copy of any section or portion of any of YOUR ASSERTED WORKS. |
| **EM Substantive Response to RFA No. 168** | Subject to and without waiving those objections, Plaintiff denies the Request. Documents produced in this Action, including logs reflecting the rates at which Meta uploaded torrent files corresponding to the datasets containing the Asserted Works to other peers, together with the analysis of Meta's torrenting activity set forth in the report of Meta's expert filed in the related Kadrey action, evidence that third parties received portions of the Asserted Works from Meta via torrenting; the operation of the BitTorrent protocol and the subject of expert analysis served on the schedule set by Rules 26(a)(2) and 26(b)(4), further establishes such receipt. |
| **Meta RFA No. 176** | Admit that YOU are unable to identify any THIRD PARTY who received from Meta via TORRENTING a copy of any of YOUR ASSERTED WORKS that engaged in direct copyright infringement of the same ASSERTED WORK. |
| **EM Substantive Response to RFA No. 176** | Subject to and without waiving the foregoing, Plaintiff denies the Request. When Meta acquired datasets containing the Asserted Works from shadow libraries via torrenting, other participants in the relevant swarms downloaded portions of the Asserted Works from, and from data made available by, Meta; |

| | |
|---|---|
| | each such participant that downloaded a portion of an Asserted Work thereby made an unauthorized reproduction of that portion in violation of 17 U.S.C. § 106(1), and, to the extent such participants in turn uploaded the data they received to further peers, they engaged in unauthorized distribution in violation of 17 U.S.C. § 106(3). None of these participants was authorized to reproduce or distribute the Asserted Works. That infringement is established by the operation of the BitTorrent protocol and by the data reflecting Meta's acquisition, independent of any individual participant's name. |
| **Meta RFA No. 182** | Admit that YOU do not know whether any THIRD PARTY redistributed a copy of any of YOUR ASSERTED WORKS that they received from Meta via TORRENTING. |
| **EM Substantive Response to RFA No. 182** | Subject to and without waiving that objection, Plaintiff denies the Request. The BitTorrent protocol by which Meta acquired the Asserted Works operates through reciprocal uploading and downloading among swarm participants; under the protocol's default operation, participants who downloaded portions of an Asserted Work from, and from data made available by, Meta uploaded those portions to further peers, thereby redistributing them without authorization. Plaintiff accordingly knows, and denies that it does not know, that third parties redistributed portions of the Asserted Works received from Meta via torrenting. |