**LEE LINDERMAN**
llinderman@hueston.com
D: 213-788-4053
T: 213 788 4340
F: 888 866 4825

523 West 6th Street
Suite 400
Los Angeles, CA 90014

**HUESTON HENNIGAN LLP**

September 1, 2026

Magistrate Judge Thomas S. Hixson
Phillip Burton Federal Building
450 Golden Gate Avenue
Courtroom E - 15th Floor
San Francisco, CA 94102

Re: *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, Case No. 3:25-cv-09579-VC-TSH

Dear Judge Hixson:

Pursuant to the Court's minute order (Dkt. 132), Plaintiff Entrepreneur Media, LLC ("EM" or "Entrepreneur") submits this discovery status statement. This is a copyright action concerning Meta's use of EM's works to train its large language models. Fact discovery closes September 4, 2026, and trial is set for May 2027.

EM asks the Court to set a further discovery conference on September 8, 2026. EM does not seek any extension of the September 11 deadline under Civil Local Rule 37-3; it will present by joint statement, on or before that date, whatever the conference does not resolve.

EM does not contend the parties are at impasse on the matters below. The difficulty is timing. On each, Meta has agreed to supplement or to consider supplementing, and nothing has been served. Fact discovery closes September 4 and the Local Rule 37-3 deadline falls seven days later, which leaves EM without the time to confer on a position Meta has not yet taken and, if necessary, prepare a joint statement. EM therefore asks the Court to direct Meta to state its position on the items in Parts II through IV on or before September 4, so that any remaining dispute can be presented at the September 8 conference. Part V identifies four matters EM preserves but does not present.

For the Court's information, Entrepreneur has complied with the three orders entered at the August 19 conference. It filed the Slack status report on August 24 (Dkt. 136), substantially completed the productions for Messrs. Frazier and Strain by August 27,[1] and substantially completed the productions for the remaining custodians by August 31. Slack and Google Chat messages for all custodians have been produced, as have Google Drive documents and data, with one further Drive production to follow. On September 1, Entrepreneur provided Meta a written disclosure setting out the scope of its collections and the limited categories it has not produced.

## I. Request for a Further Discovery Conference

EM proposes September 8 because it is the first business day after the close of fact discovery; because several matters below do not ripen until September 4, when Meta's supplemental responses to Interrogatory Nos. 12, 19, 20, and 21 are expected and Meta's Rule 30(b)(6) designee on Topics 7 and 8

[1] Supplemental productions for Mr. Frazier after that date corrected a vendor ingestion defect rather than reflecting incomplete collection.

sits; and because a conference that day would let both parties report an accurate discovery posture to Judge Chhabria the following day.

Under the Court's Discovery Standing Order, a joint statement requires Meta's portion. EM will circulate its portion promptly after the conference, and asks for leave to file alone if Meta's portion does not arrive in time to permit a September 11 filing. If the Court would prefer joint statements before a conference, EM will submit on that schedule instead.

## II. Interrogatory Nos. 22, 23, and 24

Meta served these responses on August 24, 2026. The parties conferred on August 28. Meta's responses and objections are attached as Exhibit A, consistent with the Court's Discovery Standing Order. EM sets out the deficiencies below so that the Court and Meta have them in one place, and so that Meta's position can be stated before the conference rather than at it.

### A. Meta answered narrower interrogatories than the ones served.

Each interrogatory asks Meta to identify each natural person who "made, authorized, or approved" a particular decision. Each answer substitutes a different question, visibly on the face of the response.

- Interrogatory No. 22 asks who decided "to obtain or download" any Shadow Library Dataset containing Plaintiff's Works. Meta answered by identifying persons "involved in DECISIONS related to the acquisition of" four datasets. Download drops out.

- Interrogatory No. 23 asks who "made, authorized, or approved" any decision to obtain, download, upload, or distribute by BitTorrent. Meta answered by stating who performed certain downloads. The decision-makers drop out.

- Interrogatory No. 24 asks who decided "to undertake, fund, or approve the acquisition or scanning of physical books in connection with Project Vellum, including any decision to allocate funding therefor." Meta answered only as to persons who made decisions "related to acquisition or scanning." Funding drops out.

Meta asserted no objection preserving any of these narrowings, and a responding party may not substitute a narrower interrogatory of its own drafting for the one served. Fed. R. Civ. P. 33(b)(3).

The consequence is concrete. In response to Interrogatory No. 22, Meta identifies Ahmad Al-Dahle, Sergey Edunov, and Joelle Pineau as to LibGen, and Mr. Edunov as to Anna's Archive. In response to Interrogatory No. 23, in the same document, Meta identifies Nikolay Bashlykov, Stephen Roller, and Guillaume Lample as having downloaded LibGen, and Xiaolan Wang as having downloaded from Anna's Archive. None of those four appears in the answer to Interrogatory No. 22, which asks who obtained or downloaded. Meta's January 26, 2026 response to Interrogatory No. 4 identified Mr. Bashlykov and Ms. Wang as the current Meta employees with knowledge of how Meta acquired textual training data. Neither appears there either.

### B. Meta's construction of "IDENTIFY" leaves the answers unusable.

HUESTON HENNIGAN LLP

Meta objects to EM's definition of "IDENTIFY" and states it "will construe 'IDENTIFY' to identify the person's name." The result is a list of names with no dates and no indication of who made, who authorized, and who approved. EM cannot tell whether Mr. Edunov approved the LibGen acquisition, directed it, or was consulted about it, or when.

### C. Interrogatory No. 23 is unanswered as to uploading and seeding.

Three gaps in Meta's response to No. 23 are consequential. Meta states that Mr. Bashlykov downloaded LibGen Scimag via BitTorrent "after direct downloads of that portion of the dataset were unsuccessful," but identifies no one who decided to switch methods once the direct downloads failed. Meta states it "is not currently aware" of who decided that Messrs. Roller and Lample would torrent LibGen, though a corporate party must furnish the information available to it and Meta collected custodial materials for both individuals in *Kadrey*. Fed. R. Civ. P. 33(b)(1)(B). And Meta states it "is not currently aware of any persons who made, authorized, or approved any DECISION to upload or distribute any 'Shadow Library Datasets,'" without stating whether it contends no seeding occurred, who configured the BitTorrent clients, or whether non-Meta networks were used. Those identifications go to EM's distribution and contributory infringement claims and are no longer obtainable by other means.

### D. Meta has asserted a privilege objection to identifying decision-makers and has served no log.

Meta's Objections to Instructions and Definitions state that Meta "objects to the definition of 'DECISION' to the extent identifying the involvement of counsel in a decision that is the subject of the Interrogatory would reveal the substance of privileged and/or work product communications," and that Meta "will not respond to the extent the response would reveal privileged and/or protected information." Each response incorporates that objection by reference.

The identity of a person who approved a decision is a fact, and it does not become privileged because counsel participated in the discussion. The "to the extent" formulation leaves EM unable to tell whether Meta has withheld any identification, or how many. Meta has served no privilege log as to these interrogatories. *See* Fed. R. Civ. P. 26(b)(5)(A).

EM asks that Meta be directed to state, on or before September 4, whether it will (1) answer each interrogatory as served, including as to downloading (No. 22), the decisions underlying the torrenting (No. 23), and funding (No. 24); (2) state, for each person identified, whether that person made, authorized, or approved the decision, and the dataset and approximate date; (3) describe the inquiry conducted as to Messrs. Roller and Lample; and (4) state whether it has withheld any responsive identification on privilege grounds and, if so, log it. If Meta declines any of these, EM will present the dispute by joint statement.

## III. Interrogatory No. 12 and Source-Engagement Data

At the parties' August 17 conferral, Meta agreed to supplement Interrogatory No. 12 to describe the corpora indexed by the retrieval systems supporting Meta AI's search functionality, to state whether the EM domains are included in that index, and to state its position on the extent to which it tracks click-through and related engagement data. No supplement has been served. Whether EM's own content sits

HUESTON HENNIGAN LLP

in the index that Meta AI draws on to answer user queries bears on EM's market-harm theory, and only Meta can answer it.

The click-through half is complicated by a tension in Meta's verified responses. Meta's May 15, 2026 supplemental response to Interrogatory No. 10 states that Meta tracks engagement metrics on a dashboard identified as *Meta AI Top-line Metrics & Analytics*, including "whether the user clicks on the sources linked with the output." At the August 17 conferral, Meta represented that such data is limited and not comprehensively tracked. Nothing from that dashboard has been produced. Meta's Rule 30(b)(6) designee on Topics 7 and 8 sits September 4 and is to be prepared on click-through rates, but testimony about a metric is not a substitute for the metric.

EM asks that Meta be directed to serve the agreed supplement on or before September 4, and to state by that date whether it will produce the source-engagement data maintained on the Meta AI Top-line Metrics & Analytics dashboard or the periodic reporting of that data. If Meta contends no such data exists in retrievable form, EM asks that it say so under oath and describe what is retained, for what period, at what level of aggregation, and where.

## IV. Outstanding Commitments

Each of the following was memorialized in EM's August 18 discovery status letter so that it could be raised promptly if it did not occur as agreed. EM did not seek relief on any of them in August because Meta had agreed to resolve them. That these matters reach the Court in the last week of fact discovery is a consequence of EM's forbearance in reliance on those commitments, not of any delay in raising them.

**Interrogatory Nos. 19, 20, and 21**. By September 4, Meta agreed to supplement: Interrogatory No. 19 in full; No. 20 with a fuller description of what was extracted from crawled pages, in what form, and whether and how it was retained, with representative examples corresponding to produced crawl records; and No. 21 to state whether crawl data from the identified EM domains was used for any post-training purpose and whether the crawl data used in connection with Muse Spark is substantially similar to the Llama 4 crawl data from September 2024 forward.

The content of the supplements will determine whether anything further is needed. EM will receive Meta's answers on the last day of discovery, with no deposition remaining at which to test them, and seven days in which to confer and, if necessary, prepare a joint statement. That compression is the principal reason for the September 8 date request.

**RFP Nos. 42, 44, and 52.** Meta agreed to state that it had not identified preprocessing logs of the type described in RFP No. 42(c); to confirm whether evaluation scoring is included in its productions (RFP No. 44); and to investigate producing aggregate data reflecting the scale, usage, and adoption of Meta AI over time, rather than standing on its blanket objections (RFP No. 52). Meta has done none of the three. EM asks that Meta be directed to complete each on or before September 4.

## V. Matters Preserved.

EM identifies the following so that they may be raised if they do not resolve.

### A. Use-case and topic taxonomy data.

HUESTON HENNIGAN LLP

Consistent with the Court's August 19 direction, Meta provided descriptions of the ten columns in the multi-terabyte raw table on August 28, and the parties conferred again on August 31. Meta represented that the aggregated 2026 spreadsheet it produced existed in the ordinary course and that no comparable aggregate exists for 2024–2025. EM is arranging delivery of the drive. Its remaining questions concern usability—the permissible values for the two label columns and the taxonomy versions in effect across the period—and it will confer promptly. EM preserves whether the production is in reasonably usable form under Rule 34(b)(2)(E)(ii).

**B. Meta's responses to EM's Seventh Set of Requests for Production (Nos. 70–87).**

Every response is identical in substance: that Meta "is willing to meet and confer with Plaintiff regarding the appropriate scope, if any, of the remainder of this Request." No response states whether Meta will produce documents or whether any material is being withheld. See Fed. R. Civ. P. 34(b)(2)(B), (C). They arrived three business days before the close of fact discovery, and Meta has served fourteen productions in the preceding seven days. EM does not criticize the volume, which it sought, but cannot yet say what may already have been produced. EM will confer promptly.

**C. Meta's responses to EM's Third Set of Requests for Admission (Nos. 44–84)**

Meta served these responses on August 31. EM preserves the sufficiency, under Rule 36(a)(4), of Meta's responses to RFA Nos. 51–62, 69, 72, 73, and 84, each of which neither admits nor denies or qualifies the response in a manner EM does not believe the Rule permits. EM will confer.

**D. Matters ripening on or after September 4.**

The sufficiency of Meta's supplemental responses to Interrogatory Nos. 12, 19, 20, and 21 once served; and the adequacy of Meta's Rule 30(b)(6) designee on Topics 7 and 8, who sits September 4. EM further reserves as to the scope and scheduling of any remaining depositions and any issue arising from productions made on or after today.

Respectfully submitted,

Lee Linderman

# EXHIBIT A

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

*Counsel for Defendant Meta Platforms, Inc.*

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
BOBBY A. GHAJAR (198719)
bghajar@cooley.com
3 Embarcadero Center 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000

MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN
(260865) lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000

PHILLIP MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:25-cv-09579-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIFTH SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:** **PLAINTIFF ENTREPRENEUR MEDIA, LLC**

**RESPONDING PARTY:** **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:** **FIVE**

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 33, Defendant Meta Platforms, Inc. ("Meta") hereby objects and responds as follows to Plaintiff Entrepreneur Media, LLC's ("Plaintiff") Third Set of Interrogatories ("Interrogatories").

## I. RESPONSES TO ALL INTERROGATORIES

1. Meta's responses to these Interrogatories are made to the best of Meta's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of Meta's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

2. To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the Protective Order (Dkt. 53) governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction.

3. Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II. OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Meta incorporates by reference its objections to Instructions and Definitions set forth in Plaintiff's First through Fourth Sets of Interrogatories.

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions specifically enumerated in Plaintiff's Fifth Set of Interrogatories.

1. Meta objects to the definition of "IDENTIFY" as overbroad, unduly burdensome, and disproportionate to the needs of the case. Meta will construe "IDENTIFY" to identify the person's name.
2. Meta objects to the definition of "DECISION" to the extent identifying the involvement of counsel in a decision that is the subject of the Interrogatory would reveal the substance of privileged and/or work product communications. Meta will not respond to the extent the response would reveal privileged and/or protected information.

## III. GENERAL OBJECTIONS

Meta hereby incorporates the following general objections into each of its specific responses and objections to the individual Interrogatories as if fully set forth therein:

1. Meta incorporates by reference each and every General Objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection in any specific Response shall not be interpreted as a waiver of any General Objection to that Response.
2. Any information provided in response to any individual Interrogatory is made without waiver of, and subject to, the General Objections and any additional objections asserted in response to that specific Interrogatory.
3. Meta objects to the Interrogatories to the extent that they impose any differing or additional obligations from those required by the Federal Rules, the Local Rules, or any other applicable rule, law, or doctrine, the ESI and Protective Orders entered in this action (the "Applicable

Laws, Rules, and Agreements"), on the ground that such a requirement exceeds the scope of permissible discovery and attempts to impose an unreasonable burden and expense on Meta. To the extent any Interrogatory conflicts with, or purports to impose additional or different duties and obligations, Meta will respond in accordance with the Applicable Laws, Rules, and Agreements.

4. Meta objects to the Interrogatories to the extent that they are overly broad, vague, ambiguous, and unduly burdensome; or seek documents and information that are neither relevant nor proportional to the needs of this action.

5. Meta objects to the Interrogatories to the extent they seek information or documents or seek to impose a search for information or documents: (a) not within Meta's possession, custody, or control; (b) not maintained by Meta in the normal course of business; (c) already in the possession, custody, or control of Plaintiff; (d) readily available through public sources or from sources that are more convenient, less burdensome, or less expensive; or (e) from sources that are more readily available to Plaintiff than to Meta. Meta further objects to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

6. Meta objects to the Interrogatories to the extent that they seek documents and information protected from disclosure by privileges and other protections from production, including, without limitation: (a) the attorney-client privilege; (b) the work-product doctrine; or (c) any other constitutional, statutory, common law or regulatory protection, immunity, or proscription from disclosure. In responding to the Interrogatories, Meta will not provide information or documents protected by such privileges. Where Meta withholds information under claim of privilege, Meta will adhere to the requirements under the ESI Order. Meta does not intend the inadvertent production of any privileged or protected information to constitute a waiver of Meta's rights to assert any applicable privilege or protection, and Meta further reserves the right to demand that Plaintiff return, destroy, or sequester any privileged or protected documents inadvertently produced and all copies thereof consistent with Fed. R. Civ. P. 26(b)(5)(B) and the terms and conditions of the ESI and Protective Orders entered in this action.

7. Meta objects to the Interrogatories to the extent that they purport to require Meta to provide

information or documents in violation of a legal, contractual, or other obligation of nondisclosure owed to a third party. Meta will not provide information or documents subject to any such obligation unless and until it receives the necessary consent from any such third party or, in the absence of such consent, unless and until it is ordered to do so by a court of competent jurisdiction.

8. Meta objects to the Interrogatories to the extent they call for, or can be interpreted as calling for, Meta to make legal conclusions, or to the extent they assume disputed issues or are phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper.

9. Meta objects to the Interrogatories to the extent that they seek confidential, trade secret, competitively sensitive, business, financial, or other proprietary information. To the extent documents or information containing any such information is nonprivileged, responsive to the Interrogatories, and are not otherwise objectionable, Meta will only produce such documents and information subject to the ESI and Protective Orders entered in this action. Meta further reserves the right to redact or otherwise withhold any confidential, proprietary, trade secret, or competitively sensitive information that is neither relevant nor proportional to the needs of this action.

10. Meta objects to the Interrogatories to the extent they seek information or documents that are not proportionate to the needs of the case and/or not relevant to any party's claims or defenses.

11. Meta objects to the Interrogatories that seek to impose an obligation to investigate or discover information or materials from third parties or sources that are equally accessible to Plaintiff as duplicative, overbroad, unduly burdensome, and oppressive.

12. Meta reserves the right to assert additional objections, or to supplement its Responses as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

## IV. OBJECTIONS AND RESPONSES TO INDIVIDUAL INTERROGATORIES

**INTERROGATORY NO. 22:**

IDENTIFY each natural person who made, authorized, or approved any decision to obtain or

download any Shadow Library Dataset containing Plaintiff's Works.

**RESPONSE TO INTERROGATORY NO. 22:**

Meta incorporates by reference its objections and definitions above, including to the term "IDENTIFY" and "DECISION".

Meta objects to this Interrogatory to the extent that it seeks information outside of Meta's possession, custody, and control.

Meta objects to this Interrogatory as overbroad, unduly burdensome and not proportional to the needs of the case to the extent it seeks information about acquisitions of datasets not related to the research, development and training of Meta's Llama and Muse Spark models.

After a reasonable investigation, Meta identifies the following persons who were involved in DECISIONS related to the acquisition of each of the following datasets:

**Books3:** To date, Meta has not identified any persons who made DECISIONS related to the acquisition of Books3.

**LibGen:** Ahmad Al-Dahle, Sergey Edunov, Joelle Pineau

**Anna's Archive (including Z-Library):** Sergey Edunov

**Sci-Hub:** The materials in Sci-Hub were obtained as part of Libgen Scimag, which was obtained as part of an acquisition of LibGen and Anna's Archive.

Meta's investigation is ongoing and Meta will supplement this Interrogatory as additional responsive information is identified.

**INTERROGATORY NO. 23:**

IDENTIFY each natural person who made, authorized, or approved any decision to obtain, download, upload, or distribute any Shadow Library Dataset, or any works contained therein, by means of the BitTorrent or other peer-to-peer protocol.

**RESPONSE TO INTERROGATORY NO. 23:**

Meta incorporates by reference its objections and definitions above, including to the term

"IDENTIFY" and "DECISION".

Meta objects to this Interrogatory to the extent that it seeks information outside of Meta's possession, custody, and control.

Meta objects to this Interrogatory as overbroad, unduly burdensome and not proportional to the needs of the case to the extent it seeks information about acquisitions of datasets not related to the research, development and training of Meta's Llama and Muse Spark models.

After a reasonable investigation, Meta responds as follows:

**Books3:** **Meta** does not believe it obtained this dataset via BitTorrent or other peer-to-peer protocol.

**Libgen:** For the download of Libgen Scimag engaged in by means of BitTorrent, it is Meta's current understanding that Nikolay Bashlykov downloaded that portion of the dataset via BitTorrent after direct downloads of that portion of the dataset were unsuccessful. Meta is not currently aware of who made decisions to conduct the downloads via BitTorrent of Libgen that were performed by former employees Stephen Roller and Guillaume Lample.

**Anna's Archive (including Z-Library):** Xiaolan Wang downloaded data from Anna's Archive (which was only available in bulk through torrents) via BitTorrent using methods similar to Nikolay Bashlykov's download of Libgen Scimag in 2023.

**Sci-Hub:** The materials in Sci-Hub were obtained as part of Libgen Scimag, which was obtained as part of acquisitions of LibGen and Anna's Archive, as discussed above.

Meta is not currently aware of any persons who made, authorized, or approved any DECISION to upload or distribute any "Shadow Library Datasets."

Meta's investigation is ongoing and Meta will supplement this Interrogatory as additional responsive information is identified.

**INTERROGATORY NO. 24:**

IDENTIFY each natural person who made, authorized, or approved any decision to undertake, fund, or approve the acquisition or scanning of physical books in connection with Project Vellum, including any decision to allocate funding therefor.

**RESPONSE TO INTERROGATORY NO. 24:**

Meta incorporates by reference its objections and definitions above, including to the term "IDENTIFY" and "DECISION".

Meta objects to this Interrogatory to the extent that it seeks information outside of Meta's possession, custody, and control.

After a reasonable investigation, Meta identifies the following persons who made DECISIONS related to acquisition or scanning of physical books for Project Vellum: Chris Cox, Nat Friedman, Aparna Ramani, and Susan Li.

Meta's investigation is ongoing and Meta will supplement this Interrogatory as additional responsive information is identified.

Dated: August 24, 2026

COOLEY LLP

By: */s/ Phillip E. Morton*
Phillip E. Morton

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: khartnett@cooley.com
mweinstein@cooley.com
lstameshkin@cooley.com

Bobby A. Ghajar
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Phillip E. Morton (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the District of Columbia. I am employed in Washington, District of Columbia. I am over the age of eighteen years, and not a party to the within action. My business address is Cooley LLP, 1299 Pennsylvania Ave NW Ste. 700, Washington, DC 20004. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIFTH SET OF INTERROGATORIES**

(BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

HUESTON HENNIGAN LLP
Moez M. Kaba (#257456)
Michael M. Purpura (#338216)
Lee Linderman (#280743)
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Email: mkaba@hueston.com
Email: mpurpura@hueston.com
Email: llinderman@hueston.com

NEWMEYER & DILLION LLP
Michael B. McClellan (#241570)
Benjamin P. Pugh (#202025)
Jason L. Morris (#295271)
Harlye S. Carlton (#261641)
895 Dove Street, Second Floor
Newport Beach, California 92660
Email: Michael.McClellan@ndlf.com
Email: benjamin.pugh@ndlf.com
Email: Jason.Morris@ndlf.com
Email: Harlye.Carlton@ndlf.com

Executed on August 24, 2026, at San Francisco, CA.

*/s/ Phillip E. Morton*

Phillip E. Morton