LEE LINDERMAN
llinderman@hueston.com
D: 213-788-4053
T: 213 788 4340
F: 888 866 4825
523 West 6th Street
Suite 400
Los Angeles, CA 90014

HUESTON HENNIGAN LLP

September 11, 2026 – VIA ECF

The Honorable Thomas S. Hixson, U.S. Dist. Court (N.D. Cal.)

Re: *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, Case No. 3:25-cv-09579-VC
Joint Letter Brief re: Meta's Responses to Interrogatory Nos. 22, 23, and 24

Dear Magistrate Judge Hixson:

Plaintiff Entrepreneur Media, LLC ("EM") and Defendant Meta Platforms, Inc. ("Meta"), submit this joint letter brief regarding Meta's responses to EM's Interrogatory Nos. 22, 23, and 24 (the "Contested Interrogatories") served on July 24, 2026. Meta served responses on August 24 and supplemental responses on September 4, the last day of fact discovery. The requests, responses, and supplemental responses are attached as Exhibits A, B, and C. Deposition excerpts of Xiaolan Wang, Nikolay Bashlykov, and Shaun Lindsay are attached as Exhibits D, E and F. The parties conferred on August 28, 2026, September 8, 2026, September 9, 2026, and September 11, 2026. Meta has advised EM that it may supplement further but has not committed to a date; Civil Local Rule 37-3 requires that this dispute be presented today.

## I. EM'S POSITION

Meta obtained training content from shadow libraries, by torrenting that content via BitTorrent, and by acquiring and scanning physical books through Project Vellum. The Contested Interrogatories ask one question as to each: who "made, authorized, or approved" the decision to proceed that way. The answers bear on willfulness, on EM's contributory and Section 106(3) claims, and on the positions Meta may take at summary judgment and trial.

Meta has not verified any of these responses. Rule 33(b)(3) and (b)(5) require that interrogatories be answered under oath signed by the person making them. Meta represented that it would serve verifications by today; as of this filing, it has not.

Meta narrowed the Contested Interrogatories by objection. EM's definition of "IDENTIFY," as to a natural person, calls for name, role, approximate dates of involvement, and "whether the person made or contributed to the decision and/or authorized, ratified, directed, permitted, or approved it." Ex. A at 2. Meta objected and announced that it "will construe 'IDENTIFY' to identify the person's name." Ex. B at 2. Rule 33(b)(3) requires that each interrogatory "be answered separately and fully in writing under oath," and a responding party may not substitute a narrower interrogatory of its own drafting. *See In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 4999762, at *2 (N.D. Cal. Aug. 21, 2015) ("An answer to an interrogatory must be responsive to the question" and "[i]t should be complete in itself." (alteration and internal quotation marks omitted)); *Rubalcava v. City of San Jose*, No. 20-cv-04191-BLF (VKD), Dkt. No. 182, at 2–3 (N.D. Cal. May 22, 2023) (a party "may not avoid answering the question posed by providing an answer to a different question"). An objection does not narrow an interrogatory; it presents a question for the Court.

### A. Interrogatory No. 22

Interrogatory No. 22 asks who made, authorized, or approved any decision "to obtain or download any Shadow Library Dataset containing Plaintiff's Works." Meta's supplement answers

HUESTON HENNIGAN LLP

a different question, identifying persons "believed to have been involved in the decisions to *use* downloaded books-related datasets," Ex. C at 6 (emphasis added), and attributing approval of the LibGen acquisition to "the FAIR organization" rather than to any natural person.

The answer is also incomplete on Meta's own evidence. Meta states that it "has not identified any persons who made DECISIONS related to the acquisition of Books3" and was "unable to identify particular individuals who formally made or approved decisions to acquire or use books" for Llama 1 and 2. Shaun Lindsay testified that Books3 "was approved for use," that datasets of that kind "required some director or VP level approval to use for training," and that Messrs. Al-Dahle, Edunov, and Manohar Paluri (who appears nowhere in Meta's answer) were the chain that "likely would have been involved in those decisions," with Anna's Archive and LibGen following "the same structure." Ex. F (9/1/26 Shaun Lindsay Tr.) 256:3–19, 256:23–257:20, 258:3–5. Approval was thus required; Meta's answer is that none occurred. Nor does Meta mention that the Anna's Archive effort was halted when Mr. Lindsay confirmed it was a "huge 'don't touch it,'" then resumed after "some decision changed" and the team "got a good-to-go on ingesting and ablating Anna's Archive." 7/16/26 Frank Zhang Tr. 170:24–171:20, 174:21–175:16. Mr. Zhang could not recall who conveyed that decision. *Id.* 175:24–176:21. That no witness recalls the approval does not excuse Meta from identifying, from the information available to it, who held approval authority. *See* Fed. R. Civ. P. 33(b)(1)(B).

EM requests an order compelling Meta to (i) answer Interrogatory No. 22 as drafted, including as to the decision to obtain or download each dataset; (ii) state, for each person identified, that person's role and dates of involvement and which decision he or she made, authorized, or approved, as to which dataset; and (iii) identify the natural persons who approved the LibGen acquisition within FAIR and the persons who approved resuming the Anna's Archive download, or state under oath that Meta has identified none.[1]

**B. Interrogatory No. 23**

Interrogatory No. 23 asks who made, authorized, or approved the decision to obtain, download, upload, or distribute shadow-library content by BitTorrent. Meta's response identifies who carried the downloads out, and states that a "decision" was made "only in the sense" that Messrs. Roller and Lample "carried out the download using torrents." Ex. C at 8. Meta may qualify its answer; it may not answer only the qualification.

Meta's emphasis on "decision" proves too much. On Meta's account the decisions were consensus-based rather than individual; Ms. Wang decided only "in the limited sense" of running a script; Messrs. Roller and Lample decided only "in the sense" of carrying out downloads; and Messrs. Bell, Zhang, and Kerkez decided nothing at all. On that construction no one at Meta decided to torrent anything, yet Meta torrented shadow libraries repeatedly from 2022-2024.

Three gaps remain:

[1] Meta states below that it is not withholding any responsive identification on privilege grounds, and that it has agreed to supplement its response to Interrogatory No. 24, which asks who decided to "undertake, fund, or approve" the Project Vellum acquisitions "including any decision to allocate funding therefor." EM asks that both be stated in a verified response by a date certain.

- *Who chose torrenting.* Meta says only that Mr. Bashlykov chose torrents for LibGen Scimag "after discussing the issue with the team." Ms. Wang testified that the people who told her to begin the Anna's Archive work were her manager, Sean Bell, and her team lead, Frank Zhang. Ex. D (8/10/26 Xiaolan Wang Tr.) 18:23–19:5. Mr. Zhang testified that he canvassed the team for people who knew "how to download torrents," that Mr. Bashlykov pointed him to the libtorrent library, and that Mr. Bashlykov then asked Mr. Kerkez how he had installed it. Zhang Tr. 180:10–184:21. Meta's answer names none of them.
- *Former employees*. Meta states it "is not currently aware of who made decisions to conduct the downloads via BitTorrent of Libgen that were performed by former employees Stephen Roller and Guillaume Lample." A corporate party must furnish the information available to it, Fed. R. Civ. P. 33(b)(1)(B).
- *Uploading and distribution*. Meta has never answered this clause, stating only that it is "not currently aware of any persons." A Meta logbook Ms. Wang reviewed before beginning the Anna's Archive download records a decision on precisely that subject: "Decided to go with direct file uploads without using torrents for the following reasons: Using torrents would entail seeding the file such as sharing content outside. This would be legally not okay." Ex. D (Wang Tr.) 192:4-15, 193:10-13. Someone made that decision, and someone made the opposite decision for LibGen Scimag and Anna's Archive. Mr. Bashlykov testified that "the issue of seeding was raised and discussed"—in meetings and with his manager—because seeding "would assume distributing or . . . potential distributing of documents," meaning "potentially third parties could download data from Meta servers," and that "actions were undertaken to mitigate that." Ex. E (8/7/26 Nikolay Bashlykov Tr.) 47:4-6, 49:14–50:6, 51:10–14. Mr. Bashlykov, tasked by Melanie Kambadur, "assumed I have the authority to proceed." *Id.* 46:12–24, 47:23–48:2. Neither Ms. Kambadur nor his manager, Aurelien Rodriguez, appears in Meta's answer.

EM requests an order compelling Meta to (i) identify each person who participated in the discussion preceding Mr. Bashlykov's torrenting, each person who approved proceeding by torrent, and each person who directed or approved Ms. Wang's April 2024 download; (ii) state whether it searched Messrs. Roller's and Lample's custodial materials and inquired of their supervisors; and (iii) identify each person who selected and configured the BitTorrent clients used for these downloads and the seeding parameters applied, or state that Meta has identified no such person.

### C. Verification

Meta's portion below states that its investigation determined Messrs. Bell, Zhang, and Kerkez made, authorized, or approved no decision to use BitTorrent; that no person made, authorized, or approved a decision to upload or distribute shadow-library content; that Meta withholds nothing on privilege grounds; and that Meta will supplement to address Mr. Paluri. Those are answers to the Contested Interrogatories, offered in a brief instead of under oath. EM asks that Meta be ordered to state them in a verified response, together with verifications of all responses, by a date certain.

HUESTON HENNIGAN LLP

## II. META'S POSITION

Meta has fully responded to the contested interrogatories, and EM's motion to compel should be denied. EM did not serve the contested interrogatories until July 24, 2026, to which Meta responded on August 24, 2026. Meta supplemented its response with additional explanation in an attempt to explain issues EM raised at the time. But EM's positions have been a moving target; every time one complaint is addressed, a new one seems to appear, which says more about EM's strategy than the sufficiency of Meta's responses.

With respect to verifications, Meta has agreed to supplement its response to Interrogatory No. 24 (which was addressed in EM's Thursday letter brief but is now relegated to a footnote) to further clarify its answer regarding funding decisions, so this issue is moot. Because Meta has already agreed to supplement at least some responses, it intends to serve verifications next week with any supplementations so they can be verified at one time.

With respect to **Interrogatory No. 22**, it asks Meta to identify "each natural person who made, authorized, or approved any decision to obtain or download any Shadow Library Dataset containing Plaintiff's Works." EM's letter brief raises a dispute based on its definition of "IDENTIFY," but EM knows the titles, roles, and organizational units in which the individuals identified in Meta's response worked – most of those people, in fact, were deposed in this case or in *Kadrey* (whose discovery record was provided to EM at the outset of discovery), and they are mentioned in innumerable Meta documents produced in discovery. EM's complaint here puts form over function.

Moving to its substantive arguments, the fundamental flaw with EM's motion is that it assumes that Meta can precisely pin dataset acquisition or use decisions, in all cases, on particular individuals. As described in Meta's response, decisions about the use of datasets at Meta were often the result of consensus amongst teams (especially pre-2023 dataset acquisitions by FAIR, Meta's internal AI research group) and not a specific decision dictated by a particular individual. Meta explained that for earlier models, "researchers moved forward with projects and initiatives based on shared understanding and conversations with colleagues, and as Meta's AI organizations grew and matured, the initial informal approach gave way to more structured review and approval processes." (Rog. 22 at 5-6.) For this reason, as reflected in its interrogatory response, Meta provided more specificity for later datasets than earlier ones. For the very earliest at-issue dataset (Books3), Meta explained that it has "been unable to identify particular individuals who formally made or approved decisions to acquire or use books for use in the research, development, and training of its Llama 1 and 2 models," and "has not identified any persons who made DECISIONS related to the acquisition of Books3." (Rog. 22 at 6, 5.) Similarly, Meta has not identified further information regarding approval of the acquisition of Libgen by FAIR beyond what it has provided. In both cases, Meta identified the leadership of the FAIR organization at the time these datasets were acquired.

EM's newly-cited deposition testimony is not inconsistent with this approach. Mr. Lindsay's Rule 30(b)(1) testimony cited above does not pin approval on any person. For Books3, he did not know who approved it. Ex. F (Lindsay Depo., 256:14-19.) Nor did he identify a specific person for Llama 3; he identified three VPs and directors that were "in the chain" that "likely would have

HUESTON HENNIGAN LLP

been involved in those decisions." (*Id.*, 256:20-257:4-14.) Two of the individuals Mr. Lindsay identified (*i.e.* Messrs. Al-Dahle and Edunov) were identified in Meta's interrogatory response. To the extent EM's argument boils down to the fact that a third individual (Mr. Paluri) was not identified in Meta's interrogatory response, this does not make Meta's response inaccurate or incomplete. EM never raised any issue with Mr. Paluri's omission from the interrogatory response until its Friday afternoon letter brief, and if it will help resolve that issue, Meta is willing to supplement to address that individual.

Moving to **Interrogatory No. 23**, it is similar in many respects to Interrogatory No. 22, but it seeks individuals who made decisions to obtain, download, upload, or distribute shadow-library content by BitTorrent. EM's complaints here are also without merit. With respect to the downloads carried out by Ms. Wang, EM's arguments ignore the call of the interrogatory, which merely requests persons who "***made, authorized, or approved any <u>decision</u>***" to download via BitTorrent. It does not ask Meta to canvas every Meta employee who knew about the use of BitTorrent, or who may have assisted or directed Ms. Wang in carrying out the download, or who may have spoken to her about it. Messrs. Bell, Zhang, and Kerkez were not identified in the interrogatory response for the simple reason that, based on Meta's investigation, they did not make, authorize or approve any <u>decisions</u> to use BitTorrent. EM's arguments are without merit.

With respect to Messrs. Roller and Lample, Meta acknowledges that it has more limited information about their downloading activities, because these individuals left Meta in 2023, before the filing of this lawsuit. Mr. Lample is a resident of France, and as the Court is aware, Mr. Roller is the subject of a separate pending motion with respect to a third party subpoena. Both have their own separate counsel. Nevertheless, EM has received thousands of documents and files from Mr. Roller and Mr. Lample's custodial files, and does not point to any documents suggesting Meta possesses any additional responsive information omitted from its response. Meta has provided the information it has available to it with respect to these downloads.

With respect to the "upload" clause of this Interrogatory No. 23, Meta responded that it "is not currently aware of any persons who made, authorized, or approved any DECISION to upload or distribute any 'Shadow Library Dataset.'" (Rog. 23 at 8.) EM's dissatisfaction with that response does not mean that there is further information to provide here – there is none. EM's arguments again ignore the call of this interrogatory, which is directed to persons who "made, authorized, or approved any ***decision***" to upload via BitTorrent. It does not call for identification of persons who may have appreciated a risk of "seeding" data when using BitTorrent. As the testimony cited by EM above confirms, actions were taken to mitigate seeding risks. In any case, there is no basis for EM's speculation that someone at Meta must have "approved" a "decision" to perform a seeding activity that specific mitigations were deployed to avoid.

With respect to EM's concerns regarding privilege (*see supra,* footnote 1), other than a legal review process described in Meta's response to Interrogatory No. 23, with which EM does not take issue, Meta is not withholding responsive information on the grounds of privilege.

HUESTON HENNIGAN LLP

Respectfully submitted,

**HUESTON HENNIGAN LLP**

By: ______________________
Lee Linderman (280743)
*Attorneys for Plaintiff Entrepreneur Media, LLC*

**COOLEY LLP**

By: /s/ Phillip E. Morton______________
Phillip E. Morton (*pro hac vice*)

*Attorneys for Defendant Meta Platforms, Inc.*