# EXHIBIT C

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

COOLEY LLP
BOBBY A. GHAJAR (198719)
bghajar@cooley.com
3 Embarcadero Center 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000

MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN (260865) lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000

PHILLIP MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

*Counsel for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:25-cv-09579-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIFTH SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:** **PLAINTIFF ENTREPRENEUR MEDIA, LLC**

**RESPONDING PARTY:** **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:** **FIVE**

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 33, Defendant Meta Platforms, Inc. ("Meta") hereby objects and provides the following supplemental responses to Plaintiff Entrepreneur Media, LLC's ("Plaintiff") Fifth Set of Interrogatories ("Interrogatories").

## I. RESPONSES TO ALL INTERROGATORIES

**1.** Meta's responses to these Interrogatories are made to the best of Meta's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of Meta's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

**2.** To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the Protective Order (Dkt. 53) governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction.

**3.** Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II. OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Meta incorporates by reference its objections to Instructions and Definitions set forth in Plaintiff's First through Fourth Sets of Interrogatories.

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions specifically enumerated in Plaintiff's Fifth Set of Interrogatories.

**1.** Meta objects to the definition of "IDENTIFY" as overbroad, unduly burdensome, and disproportionate to the needs of the case. Meta will construe "IDENTIFY" to identify the person's name.

**2.** Meta objects to the definition of "DECISION" to the extent identifying the involvement of counsel in a decision that is the subject of the Interrogatory would reveal the substance of privileged and/or work product communications. Meta will not respond to the extent the response would reveal privileged and/or protected information.

## III. GENERAL OBJECTIONS

Meta hereby incorporates the following general objections into each of its specific responses and objections to the individual Interrogatories as if fully set forth therein:

**1.** Meta incorporates by reference each and every General Objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection in any specific Response shall not be interpreted as a waiver of any General Objection to that Response.

**2.** Any information provided in response to any individual Interrogatory is made without waiver of, and subject to, the General Objections and any additional objections asserted in response to that specific Interrogatory.

**3.** Meta objects to the Interrogatories to the extent that they impose any differing or additional obligations from those required by the Federal Rules, the Local Rules, or any other applicable rule, law, or doctrine, the ESI and Protective Orders entered in this action (the "Applicable Laws, Rules, and Agreements"), on the ground that such a requirement exceeds the scope of permissible discovery and attempts to impose an unreasonable burden and expense on

Meta. To the extent any Interrogatory conflicts with, or purports to impose additional or different duties and obligations, Meta will respond in accordance with the Applicable Laws, Rules, and Agreements.

**4.** Meta objects to the Interrogatories to the extent that they are overly broad, vague, ambiguous, and unduly burdensome; or seek documents and information that are neither relevant nor proportional to the needs of this action.

**5.** Meta objects to the Interrogatories to the extent they seek information or documents or seek to impose a search for information or documents: (a) not within Meta's possession, custody, or control; (b) not maintained by Meta in the normal course of business; (c) already in the possession, custody, or control of Plaintiff; (d) readily available through public sources or from sources that are more convenient, less burdensome, or less expensive; or (e) from sources that are more readily available to Plaintiff than to Meta. Meta further objects to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

**6.** Meta objects to the Interrogatories to the extent that they seek documents and information protected from disclosure by privileges and other protections from production, including, without limitation: (a) the attorney-client privilege; (b) the work-product doctrine; or (c) any other constitutional, statutory, common law or regulatory protection, immunity, or proscription from disclosure. In responding to the Interrogatories, Meta will not provide information or documents protected by such privileges. Where Meta withholds information under claim of privilege, Meta will adhere to the requirements under the ESI Order. Meta does not intend the inadvertent production of any privileged or protected information to constitute a waiver of Meta's rights to assert any applicable privilege or protection, and Meta further reserves the right to demand that Plaintiff return, destroy, or sequester any privileged or protected documents inadvertently produced and all copies thereof consistent with Fed. R. Civ. P. 26(b)(5)(B) and the terms and conditions of the ESI and Protective Orders entered in this action.

**7.** Meta objects to the Interrogatories to the extent that they purport to require Meta to provide information or documents in violation of a legal, contractual, or other obligation of nondisclosure owed to a third party. Meta will not provide information or documents subject to

any such obligation unless and until it receives the necessary consent from any such third party or, in the absence of such consent, unless and until it is ordered to do so by a court of competent jurisdiction.

**8.** Meta objects to the Interrogatories to the extent they call for, or can be interpreted as calling for, Meta to make legal conclusions, or to the extent they assume disputed issues or are phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper.

**9.** Meta objects to the Interrogatories to the extent that they seek confidential, trade secret, competitively sensitive, business, financial, or other proprietary information. To the extent documents or information containing any such information is nonprivileged, responsive to the Interrogatories, and are not otherwise objectionable, Meta will only produce such documents and information subject to the ESI and Protective Orders entered in this action. Meta further reserves the right to redact or otherwise withhold any confidential, proprietary, trade secret, or competitively sensitive information that is neither relevant nor proportional to the needs of this action.

**10.** Meta objects to the Interrogatories to the extent they seek information or documents that are not proportionate to the needs of the case and/or not relevant to any party's claims or defenses.

**11.** Meta objects to the Interrogatories that seek to impose an obligation to investigate or discover information or materials from third parties or sources that are equally accessible to Plaintiff as duplicative, overbroad, unduly burdensome, and oppressive.

**12.** Meta reserves the right to assert additional objections, or to supplement its Responses as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

## IV. OBJECTIONS AND RESPONSES TO INDIVIDUAL INTERROGATORIES

**INTERROGATORY NO. 22:**

IDENTIFY each natural person who made, authorized, or approved any decision to obtain or download any Shadow Library Dataset containing Plaintiff's Works.

**RESPONSE TO INTERROGATORY NO. 22:**

Meta incorporates by reference its objections and definitions above, including to the term "IDENTIFY" and "DECISION".

Meta objects to this Interrogatory to the extent that it seeks information outside of Meta's possession, custody, and control.

Meta objects to this Interrogatory as overbroad, unduly burdensome and not proportional to the needs of the case to the extent it seeks information about acquisitions of datasets not related to the research, development and training of Meta's Llama and Muse Spark models.

After a reasonable investigation, Meta identifies the following persons who were involved in DECISIONS related to the acquisition of each of the following datasets:

**Books3:** To date, Meta has not identified any persons who made DECISIONS related to the acquisition of Books3.

**LibGen:** Ahmad Al-Dahle, Sergey Edunov, Joelle Pineau

**Anna's Archive (including Z-Library):** Sergey Edunov

**Sci-Hub:** The materials in Sci-Hub were obtained as part of Libgen Scimag, which was obtained as part of an acquisition of LibGen and Anna's Archive.

Meta's investigation is ongoing and Meta will supplement this Interrogatory as additional responsive information is identified.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 22:**

Meta incorporates its prior response to this Interrogatory. Meta has further identified below, to the best of its knowledge, information and belief, individuals who are believed to have been involved in the decisions to use downloaded books-related datasets for the research, development, and training of Meta's Llama models. Meta states, at the outset, that decisions to use or approve the use of data in connection with the research, development or training of the Meta's Llama models were often not the result of any single decision-maker but the result of collaborative discussions among teams of individuals resulting in consensus-based decisions. For earlier Llama models, researchers moved forward with projects and initiatives based on shared understanding and conversations with colleagues, and as Meta's AI organizations grew and matured, the initial

informal approach gave way to more structured review and approval processes. Additionally, existing datasets that had been used to train prior models were frequently carried over for the training of newer models without requiring an entirely new approval.

**Llama 1 and 2**: Meta has been unable to identify particular individuals who formally made or approved decisions to acquire or use books for use in the research, development, and training of its Llama 1 and 2 models. Early consideration of using Books3 (the books dataset ultimately used for Llama 1 and 2) likely began in late 2020 and 2021 within what was known as Facebook AI Research (FAIR), and Tim Dettmers and Luke Zettlemoyer were involved in early efforts involving Books3. Works from Books3 were incorporated into a dataset known internally as "B3G," which was a combination of data from Books3 and public domain books from Project Gutenberg. To the best of Meta's knowledge, information, and belief, B3G was assembled prior to 2023 by Meta's FAIR organization, which was led primarily by Joelle Pineau. That group used the B3G dataset in the research, development and training of a model internally known as Theorem Proving, which led to the Llama 1 model released in February 2023. The B3G dataset was also used for training Llama 2 and subsequent Llama models.

**Llama 3**: Llama 3 also included books data obtained from the Library Genesis (Libgen) repository. Prior to Llama 3, an acquisition of data from Libgen is believed to have commenced in October 2022, and was approved for acquisition and internal evaluation and experimentation for internal research models by the FAIR organization that was led primarily by Joelle Pineau. Libgen data was also acquired in 2023 and, within the Generative AI (GenAI) group at Meta led by Ahmad Al-Dahle, who is believed to have been involved in approving an expanded use of Libgen to train released (non-internal) models including the herd of Llama 3 models, the first of which was released in April 2024. To the best of Meta's knowledge, Mr. Al-Dahle was a primary decision-maker with respect to expanded use of Libgen data for Llama 3, and Sergey Edunov is believed to have been involved in facilitating and communicating that decision to others.

**Llama 4**: Llama 4 was trained on additional book data obtained from the Anna's Archive repository, as well as Libgen data used for Llama 3 and Books3 data used for Llama 1-3. To the best of Meta's knowledge, Sergey Edunov is believed to have communicated a decision and

approval to use data from Anna's Archive for training of the Llama 4 herd of models. The manner of acquisition of data from Anna's Archive also underwent an internal legal review process in early 2024, which included in-house lawyers Luc Dahlin and Ahuva Goldstand.

**INTERROGATORY NO. 23:**

IDENTIFY each natural person who made, authorized, or approved any decision to obtain, download, upload, or distribute any Shadow Library Dataset, or any works contained therein, by means of the BitTorrent or other peer-to-peer protocol.

**RESPONSE TO INTERROGATORY NO. 23:**

Meta incorporates by reference its objections and definitions above, including to the term "IDENTIFY" and "DECISION".

Meta objects to this Interrogatory to the extent that it seeks information outside of Meta's possession, custody, and control.

Meta objects to this Interrogatory as overbroad, unduly burdensome and not proportional to the needs of the case to the extent it seeks information about acquisitions of datasets not related to the research, development and training of Meta's Llama and Muse Spark models.

After a reasonable investigation, Meta responds as follows:

**Books3:** Meta does not believe it obtained this dataset via BitTorrent or other peer-to-peer protocol.

**Libgen:** For the download of Libgen Scimag engaged in by means of BitTorrent, it is Meta's current understanding that Nikolay Bashlykov downloaded that portion of the dataset via BitTorrent after direct downloads of that portion of the dataset were unsuccessful. Meta is not currently aware of who made decisions to conduct the downloads via BitTorrent of Libgen that were performed by former employees Stephen Roller and Guillaume Lample.

**Anna's Archive (including Z-Library):** Xiaolan Wang downloaded data from Anna's Archive (which was only available in bulk through torrents) via BitTorrent using methods similar to Nikolay Bashlykov's download of Libgen Scimag in 2023.

**Sci-Hub:** The materials in Sci-Hub were obtained as part of Libgen Scimag, which was obtained as part of acquisitions of LibGen and Anna's Archive, as discussed above.

Meta is not currently aware of any persons who made, authorized, or approved any DECISION to upload or distribute any "Shadow Library Datasets."

Meta's investigation is ongoing and Meta will supplement this Interrogatory as additional responsive information is identified.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:**

Meta incorporates its prior response to this Interrogatory. Additionally, beginning in or about October 2022, data from the online repository known as Library Genesis or Libgen was downloaded via torrents. To the best of Meta's knowledge and information after a reasonable investigation, Meta believes that the downloaded data included data from the Fiction and Scitech branches of Libgen, and that the download was conducted primarily by former Meta employee Guillaume Lample. Meta believes that Mr. Lample likely made the technical decision to conduct this download via torrents, as evidenced by a torrent download script named download.py (Meta_Kadrey_00238129), a version of which he is believed to have used in performing this download. Also beginning in or about October 2022, a torrent download of data from the Scitech branch of Libgen was conducted. To the best of Meta's knowledge and information after a reasonable investigation, Meta currently believes that former Meta employee Stephen Roller made a technical decision to conduct this download using BitTorrent, using the ctorrent client as reflected by the EMR logs META_KADREY_DATA_010 ("roller_logs") produced in this action. With respect to both these former employees, Meta states that a "decision" was made only in the sense that they are believed to have carried out the download using torrents. Meta does not presently have information about their state of mind or knowledge at the time, and thus does not know whether they made a "decision" in the sense of having deliberated among possible alternative methods (if any) for the download. Meta is unaware of any other individuals who were involved in decisions to use torrents as a means of downloading with respect to the Lample and Roller downloads.

Beginning on or about Spring 2023, a download of data from the Scimag branch of Libgen was conducted, which was conducted primarily by Nikolay Bashlykov. Mr. Bashlykov made a technical decision to conduct this download via torrents after discussing the issue with the team

after attempts at direct download of that portion of the dataset were unsuccessful (*see, e.g.*, Meta_Kadrey_00204235, Meta_Kadrey_00231275).

Beginning in April 2024, Xiaolan Wang downloaded data from Anna's Archive (which was only available in bulk through torrents) via BitTorrent. The download script believed to have been used was produced at META-KADREY-SC-000212, META-KADREY-SC-000999-1034, which was believed to have been adapted from scripts she inherited from the previous work by Mr. Bashlykov. Ms. Wang made a technical "decision" to use torrents in the limited sense that she utilized a script that used torrents to download data from Anna's Archive, but not in the sense of having deliberated among possible alternative methods (if any) for the download. The acquisition of data from Anna's Archive also underwent an internal legal review process in early 2024, which included in-house lawyers Luc Dahlin and Ahuva Goldstand.

**INTERROGATORY NO. 24:**

IDENTIFY each natural person who made, authorized, or approved any decision to undertake, fund, or approve the acquisition or scanning of physical books in connection with Project Vellum, including any decision to allocate funding therefor.

**RESPONSE TO INTERROGATORY NO. 24:**

Meta incorporates by reference its objections and definitions above, including to the term "IDENTIFY" and "DECISION".

Meta objects to this Interrogatory to the extent that it seeks information outside of Meta's possession, custody, and control.

After a reasonable investigation, Meta identifies the following persons who made DECISIONS related to acquisition or scanning of physical books for Project Vellum: Chris Cox, Nat Friedman, Aparna Ramani, and Susan Li.

Meta's investigation is ongoing and Meta will supplement this Interrogatory as additional responsive information is identified.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 24 (SEPTEMBER 4, 2026):**

Meta incorporates its prior response to this Interrogatory. Meta supplements its response to add Alexandr Wang as a person involved in approving the efforts to physically acquire and scan books as part of Project Vellum.

Dated: September 4, 2026

COOLEY LLP

By: */s/ Phillip E. Morton*
Phillip E. Morton

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
mweinstein@cooley.com
lstameshkin@cooley.com

Bobby A. Ghajar
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Email: bghajar@cooley.com

Phillip E. Morton (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of California. I am employed in Santa Clara County, California. I am over the age of eighteen years, and not a party to the within action. My business address is Cooley LLP, 3175 Hanover Street, Palo Alto, CA 94304. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT META PLATFORMS, INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIFTH SET OF INTERROGATORIES**

(BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

HUESTON HENNIGAN LLP
Moez M. Kaba (#257456)
Michael M. Purpura (#338216)
Lee Linderman (#280743)
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Email: mkaba@hueston.com
Email: mpurpura@hueston.com
Email: llinderman@hueston.com

NEWMEYER & DILLION LLP
Michael B. McClellan (#241570)
Benjamin P. Pugh (#202025)
Jason L. Morris (#295271)
Harlye S. Carlton (#261641)
895 Dove Street, Second Floor
Newport Beach, California 92660
Email: Michael.McClellan@ndlf.com
Email: benjamin.pugh@ndlf.com
Email: Jason.Morris@ndlf.com
Email: Harlye.Carlton@ndlf.com

Executed on September 4, 2026, at Palo Alto, California.

*/s/ Jocelyn McIntosh*
Jocelyn McIntosh