# EXHIBIT E

Array

In the Matter Of:

ENTREPRENEUR MEDIA, LLC

vs

META PLATFORMS, INC.

NIKOLAY BASHLYKOV - HIGHLY CONFIDENTIAL - AEO

August 07, 2026

CERTIFIED COPY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

ENTREPRENEUR MEDIA, LLC, ) Case No.
) 3:25-cv-09579-VC
Plaintiff, )
)
v. )
)
META PLATFORMS, INC., )
)
Defendant. )

CERTIFIED COPY

CONFIDENTIAL

ATTORNEYS' EYES ONLY

DEPOSITION OF NIKOLAY BASHLYKOV

Friday, August 7, 2026

Commencing at 10:05 a.m.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Volume I of the video-recorded deposition of Nikolay Bashlykov, held at the offices of Cooley LLP, 22 Bishopsgate, London, EC2N 4BQ, United Kingdom, before Rhiannon Edwards, accredited court reporter.

MR. MORTON: Object to form, vague, lacks foundation. 11:18:25 11:18:27

A. Um ... so as far as I recall, I was not aware of the formal, um, status. I do recall discussions in the meetings and identifying risks associated with torrenting, such as seeding. 11:18:51 11:18:56 11:19:07 11:19:15

BY MR. LEMOINE: 11:19:38

**Q. Did you receive authorization from your supervisors to torrent scimag?** 11:19:39 11:19:42

MR. MORTON: Object to form, vague. I'd exclude any communication with counsel, if you have any. 11:19:51 11:19:55

A. I was assigned to technical task of evaluation of the dataset. 11:20:03 11:20:10

THE COURT REPORTER: Sorry, can you repeat that? "I was assigned to technical"...? 11:20:11 11:20:11

THE WITNESS: Task of evaluation of the dataset. 11:20:11 11:20:11

The risks were discussed with my managers. I assumed I have the authority to proceed with the task. 11:20:15 11:20:22

BY MR. LEMOINE: 11:20:29

**Q. So you -- you were given the task by who?** 11:20:29

A. Um ... to my best recollection, Melanie Kambadur. It was discussed in the data meeting but I don't recall exact details. 11:20:35 11:20:41 11:20:45

**Q. And you said you assumed that you had** 11:20:46

**authorization. Did you raise any concern before torrenting?** 11:20:53 11:21:04

MR. MORTON: Object to form, vague. 11:21:06

A. Um, I raised risks associated with seeding. It was discussed, as far as I recall, in the meetings and with my manager. Um ... 11:21:07 11:21:21 11:21:24

THE COURT REPORTER: It was or it wasn't discussed? 11:21:35 11:21:37

THE WITNESS: It was. 11:21:39

THE COURT REPORTER: It was discussed. 11:21:39

THE WITNESS: To that extent. 11:21:41

BY MR. LEMOINE: 11:21:43

**Q. Who attended those meetings where you had those conversations?** 11:21:43 11:21:45

A. In terms of job profile, in terms of names of people? What is the question exactly? 11:21:51 11:21:53

**Q. Can you give me the names of who attended those meetings?** 11:22:00 11:22:02

MR. MORTON: Object to form, vague. 11:22:05

A. I cannot recollect from memory, since it was over three years ago. 11:22:07 11:22:10

BY MR. LEMOINE: 11:22:11

**Q. You said you had a conversation with Melanie -- Melanie Kambadur and also your manager, which I understand that it's -- it would be Aurelien** 11:22:16 11:22:18 11:22:22

**Rodriguez?** 11:22:25

A. Correct. 11:22:27

**Q. Did they both attend those meetings?** 11:22:28

MR. MORTON: Object to form, vague, lacks foundation. 11:22:31 11:22:33

A. Um ... again, I don't recollect exactly were they in the meetings or not, but I would assume -- it's partially speculation. But they were part of the broader team and they might have been in those meetings. 11:22:46 11:22:47 11:22:53 11:22:57

MR. MORTON: Are we getting to a break point soon? 11:23:08 11:23:10

MR. LEMOINE: Yeah, I'll finish this. 11:23:12

MR. MORTON: How long? 11:23:14

MR. LEMOINE: I think 10/15 minutes. 11:23:15

MR. MORTON: 10 or -- I was thinking -- we should take a break sooner. So why don't you just wrap up whatever you've got -- 11:23:20 11:23:22 11:23:24

MR. LEMOINE: Sounds good. 11:23:27

MR. MORTON: -- at the moment and then let's do that. 11:23:27 11:23:28

BY MR. LEMOINE: 11:23:34

**Q. Can you please explain, in as much detail as possible, everything that you remember from those meetings?** 11:23:35 11:23:38 11:23:41

MR. MORTON: Object to form, vague. 11:23:43

A. I do not recollect the details from the meetings over three years ago. 11:23:51 11:23:52
BY MR. LEMOINE: 11:23:56
**Q. Do you remember discussing the risk associated with torrenting?** 11:24:00 11:24:01
MR. MORTON: Object to form, vague. 11:24:07
A. I would need to check meeting notes or, like, some -- if there are any. I do not recollect at this point in time the details of those meetings. 11:24:20 11:24:23 11:24:29
BY MR. LEMOINE: 11:24:33
**Q. Do you recollect the issues that you raised?** 11:24:34
MR. MORTON: Object to form, vague, lacks foundation. 11:24:39 11:24:42
A. Um, so to my best knowledge, or recollection rather, the issue of seeding was raised and discussed. 11:25:14 11:25:17
BY MR. LEMOINE: 11:25:28
**Q. And when you said "raised and discussed", what do you mean?** 11:25:28 11:25:32
A. Um, what do I mean in terms of what? 11:25:38
**Q. Why did you bring that issue in those meetings?** 11:25:41 11:25:44
A. Um ... 11:25:44
MR. MORTON: Object to form, vague. 11:25:52
THE WITNESS: I didn't say that I brought that meeting -- that point; I said that it was 11:25:54 11:25:55

discussed. Um ... so one of the risks -- or the risk was identified as seeding because that would assume distributing or -- or potential distributing of documents, which was not the aim or goal of the project. So that risk was discussed and actions were undertaken to mitigate that. 11:25:58 11:26:14 11:26:24 11:26:31 11:26:37 11:26:43

BY MR. LEMOINE: 11:26:55

**Q. Were you involved in similar discussions in relation to Anna's Archive?** 11:26:55 11:26:58

MR. MORTON: Object to form, lacks foundation, vague. 11:27:03 11:27:04

A. So to the best recollection of my memory, I was involved in the group chat where Sam, engineer, asked me about the scripts. I -- my involvement was only giving pointers to the scripts, Python scripts. 11:27:07 11:27:09 11:27:19 11:27:24

MR. MORTON: Why don't we do a break now? 11:27:42

MR. LEMOINE: I was going to say, is that -- 11:27:46

MR. MORTON: Does that sound good? 11:27:47

MR. LEMOINE: Yes. 11:27:49

MR. MORTON: All right. 11:27:49

MR. LEMOINE: Thank you. 11:27:49

THE VIDEOGRAPHER: Going off the record now at 11:27 a.m. 11:27:50 11:27:51

(11:27 a.m.) 11:27:52

(Recess taken.) 11:27:55

(11:41 a.m.) 11:27:55

THE VIDEOGRAPHER: Okay, we're now going back on the record at 11:41 a.m. 11:41:41 11:41:57

BY MR. LEMOINE: 11:42:07

**Q. I just want to go back to something you said. You mentioned that -- in this conversation about seeding that the distribution wasn't the goal. What did you mean by that?** 11:42:07 11:42:10 11:42:12 11:42:19

MR. MORTON: Object to form. 11:42:20

A. So my understanding is that, um, there is a -- a risk of seeding, um, meaning potentially third parties could download data from Meta servers. Um ... so that's essentially what I meant, trying to minimize that risk. 11:42:27 11:42:36 11:42:44 11:42:58 11:43:04

BY MR. LEMOINE: 11:43:06

**Q. So was it something that you thought should be avoided?** 11:43:06 11:43:09

MR. MORTON: Object to form, vague. 11:43:11

A. Um ... um, there's a risk, yes. I think that was ... um ... um ... um, yes, I wanted to -- I mean, from whatever I can recall. But the intention was to avoid -- minimize that risk. 11:43:36 11:43:39 11:43:54 11:44:02

BY MR. LEMOINE: 11:44:11

**Q. So in your opinion, would it be wrong for third parties to download things from Meta's server?** 11:44:11 11:44:19

CERTIFICATE OF REPORTER

I, Rhiannon Edwards, do hereby certify:

That, prior to being examined, the witness named in the foregoing deposition confirmed his testimony would be true under the penalties of perjury;

That the foregoing deposition was taken before me at the time and place herein set forth, at which time the aforesaid proceedings were stenographically recorded by me and thereafter transcribed by me;

That the foregoing transcript, as typed, is a true record of the said proceedings;

And I further certify that I am not interested in the action.

Dated: August 14, 2026

Rhiannon Edwards

RHIANNON EDWARDS